# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE.**      **2. PLEASE TYPE OR PRINT.**      **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| New York State Rifle and Pistol Association, Inc., et al., | Southern District of NY | Judge Sweet |

| | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
|---|---|---|
| Plaintiffs, <br> v. | 2/5/15 | 1:13-cv-2115 |

| The City of New York, et al., <br><br> Defendants. | Date the Notice of Appeal was Filed: <br> 3/4/15 | Is this a Cross Appeal? <br> Yes    ✔ No |
|---|---|---|

| **Attorney(s) for Appellant(s):** <br><br> ✔ Plaintiff <br><br> Defendant | Counsel's Name:        Address:        Telephone No.:        Fax No.:        E-mail: <br><br> Brian Stapleton; 11 Martine Ave., White Plains, New York 10606-1934; (914) 798-5400 (Telephone No.); (914) 798-5401 (Fax No.); bstapleton@goldbergsegalla.com |
|---|---|

| **Attorney(s) for Appellee(s):** <br><br> Plaintiff <br><br> ✔ Defendant | Counsel's Name:        Address:        Telephone No.:        Fax No.:        E-mail: <br><br> Michelle Goldberg-Cahn; 100 Church Street, 5th Floor, New York New York 10007: (212) 356-2199 (Telephone No.); (212) 356-1148 (Fax No.); migoldbe@law.nyc.gov |
|---|---|

| Has Transcript Been Prepared? <br><br> N/A | Approx. Number of Transcript Pages: <br><br> N/A | Number of Exhibits Appended to Transcript: <br><br> N/A | Has this matter been before this Circuit previously?    Yes    ✔ No <br><br> If Yes, provide the following: <br><br> Case Name: <br><br> 2d Cir. Docket No.:            Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A"*:  COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION;  (2) THE RESULT BELOW;  (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND  (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*:  COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

## PART A:  JURISDICTION

| 1. *Federal Jurisdiction* | 2. *Appellate Jurisdiction* |
|---|---|
| U.S. a party            Diversity <br><br> ✔ Federal question        Other (specify): <br>   (U.S. not a party)    _____ | ✔ Final Decision        Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) <br><br> Interlocutory Decision <br> Appealable As of Right        Other (specify): _____ |

**IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

## PART B: DISTRICT COURT DISPOSITION   (Check as many as apply)

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | | 3. Relief |
|---|---|---|---|
| ✔ Pre-trial<br>During trial<br>After trial | Default judgment<br>Dismissal/FRCP 12(b)(1)<br>  lack of subj. matter juris.<br>Dismissal/FRCP 12(b)(6)<br>  failure to state a claim<br>Dismissal/28 U.S.C. § 1915(e)(2)<br>  frivolous complaint<br>Dismissal/28 U.S.C. § 1915(e)(2)<br>  other dismissal | Dismissal/other jurisdiction<br>Dismissal/merit<br>Judgment / Decision of the Court<br>✔ Summary judgment<br>Declaratory judgment<br>Jury verdict<br>Judgment NOV<br>Directed verdict<br>Other (specify): | Damages:<br><br>  Sought: $ _____<br>  Granted: $ _____<br>  Denied: $ _____<br><br>✔ Injunctions:<br>  Preliminary<br>✔ Permanent<br>  Denied |

## PART C: NATURE OF SUIT   (Check as many as apply)

| 1. Federal Statutes | | | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|---|---|
| Antitrust<br>Bankruptcy<br>Banks/Banking<br>Civil Rights<br>Commerce,<br>Energy<br>Commodities<br>✔ Other (specify): violations of the Constitution | Communications<br>Consumer Protection<br>Copyright ☐ Patent<br>Trademark<br>Election<br>Soc. Security<br>Environmental | Freedom of Information Act<br>Immigration<br>Labor<br>OSHA<br>Securities<br>Tax | Admiralty/<br>Maritime<br>Assault /<br>Defamation<br>FELA<br>Products Liability<br>Other (Specify): | Admiralty/<br>Maritime<br>Arbitration<br>Commercial<br>Employment<br>Insurance<br>Negotiable<br>instruments<br>Other Specify | Civil Rights<br>Habeas Corpus<br>Mandamus<br>Parole<br>Vacate Sentence<br>Other |

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| Forfeiture/Penalty<br>Real Property<br>Treaty (specify): _____<br>Other (specify): _____ | Arbitration<br>Attorney Disqualification<br>Class Action<br>Counsel Fees<br>Shareholder Derivative<br>Transfer | ✔ Yes       No<br><br>Will appeal raise a matter of first impression?<br><br>✔ Yes       No |

1. Is any matter relative to this appeal still pending below?      Yes, specify: _____     ✔ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)   Arises from substantially the same case or controversy as this appeal?              Yes   ✔ No

   (B)   Involves an issue that is substantially similar or related to an issue in this appeal?        Yes   ✔ No

If yes, state whether   "A," or   "B," or   both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|

Name of Appellant:

| Date:  3/17/15 | Signature of Counsel of Record:  s/ Brian T. Stapleton |
|---|---|

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1.   Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2.   File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3.   Pay the$505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**<u>PLEASE NOTE:</u>  IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)**

**ADDENDUM "A"**

**Description of the Nature of the Action**

Plaintiffs challenge New York City's regulation – 38 RCNY § 5-23 – which strictly limits a licensee from transporting his firearm. 38 RCNY § 5-23(a)(2) states: "The possession of the handgun for protection is restricted to the inside of the premises which address is specified on the license." Plaintiffs' position is that 38 RCNY § 5-23 violates their rights under the United States Constitution. More specifically, Plaintiffs argue that 38 RCNY § 5-23 violates the Second Amendment by (1) restricting a licensee's ability to possess a handgun in a licensee's second home beyond the borders of New York City, and (2) restricting a licensee from engaging in target practice and participating in shooting competitions. They argue that 38 RCNY § 5-23's restrictions are unconstitutional in light of the holdings in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). Also, Plaintiffs argue that 38 RCNY § 5-23 fails under any applicable standard of scrutiny and that the strict scrutiny analysis applies to determining the constitutionality of 38 RCNY § 5-23.

Plaintiffs argue that 38 RCNY § 5-23 deters them from traveling and spending time outside New York City to participate in target practice and competitive shooting matches. As such, 38 RCNY § 5-23 impinges on Plaintiffs' fundamental constitutional right to travel guaranteed by the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution and the Privileges and Immunities and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution. 38 RCNY § 5-23 also denies Plaintiffs the federal rights set forth in the Firearms Owners Protection Act, 18 U.S.C. § 921 et seq.

Plaintiffs also contend that 38 RCNY § 5-23's restriction on target practice and competitive shooting violates Plaintiffs' freedom of association and freedom of speech protected by the First Amendment. Additionally, Plaintiffs contend that 38 RCNY § 5-23's restrictions on target practice and competitive shooting violates the Dormant Commerce Clause because (1) the regulation sets forth a *de facto* monopoly for in-city target ranges to the exclusion of all out-of-city ranges to handle all target shooting for residents with a Premises License; (2) the burden on interstate commerce is clearly excessive in relation to the putative local benefits; (3) in enacting and enforcing 38 RCNY § 5-23, New York City seeks to regulate and control an activity that takes place wholly outside of the borders of New York City and New York State.

Finally, Plaintiffs argue that, in light of the unconstitutionality of 38 RCNY § 5-23, the district court should have permanently enjoined the implementation and enforcement of 38 RCNY § 5-23 by the New York City Police Department in any manner that prohibits or precludes Plaintiffs from traveling beyond either the borders of New York City or New York State with a licensed handgun to either travel to a second home or to attend a shooting range or competition.

## The District Court's Holding Below/The Result Below

The district court (1) denied Plaintiffs' motion for summary judgment, (2) denied Plaintiffs' motion for a preliminary injunction, and (3) granted Defendants The City of New York and The New York City Police Department License Division's summary judgment motion dismissing the Amended Complaint.

Specifically, the district court concluded that 38 RCNY § 5-23 does not violate the Second Amendment because there is nothing in New York's Penal Law or New York City's Rules preventing such persons from obtaining an appropriate license to possess or use a handgun in the jurisdiction of their second home. Applying an intermediate scrutiny standard, the district

court concluded that the regulations are reasonable and result from the substantial governmental interest in public safety.

The district court also held that 38 RCNY § 5-23 does not violate Plaintiffs' right to travel, reasoning that limited restrictions on Premises License licensees to keep their handguns in their residences, or to and from an authorized small arms range, does not impede, deter, or punish Plaintiffs' right to travel. The district court also reasoned that the rule does not prevent Premises License licensees from traveling outside of New York City but only prevents Plaintiffs from traveling with their handguns. It also concluded that the requirement that Premises License licensees to not travel unrestricted with their firearms throughout or outside of the State does not infringe on any fundamental right. The district court also rejected Plaintiffs' argument that 38 RCNY § 5-23 conflicts with the Firearms Owners' Protection Act. The district court also reasoned that nothing in the rules pertaining to Premises License licenses impedes, deters, or punishes travel.

The district court also concluded that 38 RCNY § 5-23 does not violate the First Amendment, reasoning that New York City's rule does not prevent any of Plaintiffs from obtaining a license to use, possess, or carry a handgun in the states or localities where Plaintiffs seek to engage in target practice or shooting competitions outside of New York City.

The district court held that 38 RCNY § 5-23 does not violate the Dormant Commerce Clause.

Based on the foregoing, the district court denied Plaintiffs' motions for summary judgment and preliminary injunction and granted Defendants' cross motions for summary judgment dismissing the Amended Complaint.

**Notice of Appeal & District Court Docket Sheet**

Plaintiffs provide the Notice of Appeal entered March 3, 2015 and the District Court's docket sheet as Exhibits A & B, respectively.

**The February 4, 2015 District Court Order**

Plaintiffs provide the February 4, 2015 Order of the District Court of the Southern District of New York (Sweet, J.) as Exhibit C.

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)**

**ADDENDUM "B"**

**List of Proposed Issues and Applicable Standard of Review**

Issue 1:    Whether the district court erred in concluding that an intermediate scrutiny analysis applies to challenges of a New York City rule under the Second Amendment?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

The standard of review for a law that infringes upon the Second Amendment, which is a fundamental right, requires application of the strict scrutiny standard. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3036 (2010); *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 33 (1973).

Issue 2:    Whether 38 RCNY § 5-23 impinges on the core rights of a licensee of a Premises License licensee under the Second Amendment?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

The standard of review for a law that infringes upon the Second Amendment, which is a fundamental right, requires application of the strict scrutiny standard. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3036 (2010); *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 33 (1973).

Issue 3:    Whether 38 RCNY § 5-23 violates the Second Amendment where the rule deprives Plaintiffs of their ability to protect themselves in their second home located in New York State?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

The standard of review for a law that infringes upon the Second Amendment, which is a fundamental right, requires application of the strict scrutiny standard. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3036 (2010); *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 33 (1973).

Issue 4:      Did the district court err in concluding that 38 RCNY § 5-23 does not violate the Second Amendment on the basis that although they cannot transport their New York City-licensed handguns to their second New York homes outside of New York City, there is nothing preventing Plaintiffs from obtaining licenses to possess or use a handgun in the jurisdictions of their second home?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

The standard of review for a law that infringes upon the Second Amendment, which is a fundamental right, requires application of the strict scrutiny standard. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3036 (2010); *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 33 (1973).

Issue 5:      Whether 38 RCNY § 5-23's restrictions on target practice and competitive shooting violate  Plaintiffs' fundamental right to travel?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

Issue 6:      Whether 38 RCNY § 5-23's requirement that Premise License licensees not travel unrestricted with their handguns throughout or outside of the New York State are reasonable in time, place, and manner restrictions on the possession and use of a handgun?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

Issue 7:      Whether 38 RCNY § 5-23 conflicts with the Firearms Owners Protection Act where the regulation prohibits the transport of a handgun between New York City and other parts of New York State or other States?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

Issue 8:    Whether 38 RCNY § 5-23 violates Plaintiffs' First Amendment rights by prohibiting Premises License licensees from practicing at ranges and participating in shooting competitions outside New York City boundaries?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

Issue 9:    Whether the district court erred by concluding that practicing at ranges and participating in shooting competitions are not protected the right to expression and association under the First Amendment?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

Issue 10:    Did the district court err by concluding that 38 RCNY § 5-23's restrictions on target practice and competitive shooting do not violate the Dormant Commerce Clause even though the regulation sets forth a *de facto* monopoly for in-city target ranges to the exclusion of all out-of-city ranges to handle all target shooting for residents with a Premises License?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

Issue 11:    Did the district court err by concluding that 38 RCNY § 5-23 did not violate the Dormant Commerce Clause even though the rule prohibits New York City residents from frequenting non-City ranges or participating in non-New York City competitions?

Standard of Review:    The Second Circuit reviews de novo legal conclusions, including its interpretation of federal statutes and determinations regarding their constitutionality. *United States v. Weingarten*, 632 F.3d 60, 63 (2d Cir. 2011).

Issue 12:            Whether Plaintiffs are entitled to permanent injunctive relief?

Standard of Review:  The Second Circuit reviews de novo an award of summary judgment that denies injunctive relief. *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NEW YORK STATE RIFLE AND PISTOL ASSOCIATION, INC., et al., | ) ) ) | |
| Plaintiffs, | ) | Case No.: 1:13-cv-2115-RWS |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF NEW YORK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## NOTICE OF APPEAL

**NOTICE IS HEREBY GIVEN** that The New York State Rifle and Pistol Association, Romolo Colantone, Efrain Alvarez, and Jose Anthony Irizarry, plaintiffs in the above-captioned case, hereby appeal to the United States Court of Appeals for the Second Circuit from the District Court Memorandum & Opinion, entered February 5, 2015 (ECF Doc. No. 56), and Judgment, entered February 9, 2015 (ECF Doc. No.: 57), that denied Plaintiffs' Motions for Summary Judgment and Preliminary Injunction and granted Defendant The City of New York's and The New York City Police Department – License Division's Cross Motions for Summary Judgment Dismissing the Amended Complaint.

Dated: February 3, 2015

Respectfully Submitted,

GOLDBERG SEGALLA, LLP

By:  /s/  Brian T. Stapleton
    Brian T. Stapleton, Esq. (BS 5640)
    11 Martine Avenue, 7th Floor
    White Plains, New York 10606-1934
    (914) 798-5400
    bstapleton@goldbergsegalla.com
    *Counsel For Plaintiffs*

## **CERTIFICATION**

I hereby certify that on February 3, 2015, a copy of the foregoing Plaintiffs' Notice of Appeal was filed electronically  and served by mail upon anyone unable to accept electronic filing.  Notice of this filing  was will be sent by e-mail to the parties described below by operation of the Court's electronic filing  system  or by mail  to anyone unable to accept electronic filing  as indicated on the Notice of Electronic Filing.   Parties may access this filing  through the Court's CM/ECF System.

ZACHARY W. CARTER
Corporation Counsel of the City of New York
By Michelle  Goldberg-Cahn,  Esq. (MG 4490)
***Attorney for Defendants***
100 Church St., 5th Floor
New York, New York 10007
migoldbe@law.nyc.gov

By: ___/s/___Matthew S. Lerner_____
Matthew S. Lerner, Esq. (ML 2020)

**1:13-cv-02115-RWS** The New York State Rifle & Pistol Association, Inc. et al v. The City of New York et al

Robert W. Sweet, presiding
**Date filed:** 03/29/2013
**Date terminated:** 02/09/2015
**Date of last filing:** 03/04/2015

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| | *Filed & Entered:* | 03/04/2015 | Transmission of Notice of Appeal and Docket Sheet to USCA |
| | *Filed & Entered:* | 03/04/2015 | Appeal Record Sent to USCA - Electronic File |
| | *Filed:* *Entered:* | 03/03/2015 03/04/2015 | Appeal Fee Due |
| 58 | *Filed & Entered:* | 03/03/2015 | Notice of Appeal |
| 57 | *Filed & Entered:* | 02/09/2015 | Clerk's Judgment |
| | *Filed & Entered:* | 02/05/2015 | Transmission to Judgments and Orders Clerk |
| 56 | *Filed & Entered:* | 02/05/2015 | Memorandum & Opinion |
| | *Filed:* *Entered:* | 10/08/2014 10/14/2014 | Oral Argument |
| 55 | *Filed & Entered:* | 09/12/2014 | Order on Motion to Adjourn Conference |
| 54 | *Filed & Entered:* *Terminated:* | 09/10/2014 09/12/2014 | Motion to Adjourn Conference |
| 53 | *Filed & Entered:* | 08/29/2014 | Reply Memorandum of Law in Support of Motion |
| 51 | *Filed & Entered:* | 08/15/2014 | Memorandum of Law in Opposition to Motion |
| 52 | *Filed & Entered:* | 08/15/2014 | Counter Statement to Rule 56.1 |
| 50 | *Filed & Entered:* | 08/07/2014 | Order on Motion for Extension of Time to File Response/Reply |
| 49 | *Filed & Entered:* *Terminated:* | 08/06/2014 08/07/2014 | Motion for Extension of Time to File Response/Reply |

| 48 | *Filed & Entered:* | 07/25/2014 | Memo Endorsement |
|---|---|---|---|
|  | *Filed & Entered:* | 07/16/2014 | Notice to Attorney to Re-File Document - Deficient Docket Entry Error |
| 43 | *Filed & Entered:* *Terminated:* | 07/16/2014 02/05/2015 | Motion for Summary Judgment |
| 44 | *Filed & Entered:* | 07/16/2014 | Memorandum of Law in Support of Motion |
| 45 | *Filed & Entered:* | 07/16/2014 | Rule 56.1 Statement |
| 46 | *Filed & Entered:* | 07/16/2014 | Response |
| 47 | *Filed & Entered:* | 07/16/2014 | Certificate of Service Other |
| 39 | *Filed & Entered:* | 07/15/2014 | Letter |
| 40 | *Filed & Entered:* | 07/15/2014 | Notice of Appearance |
| 41 | *Filed & Entered:* | 07/15/2014 | Memo Endorsement |
| 42 | *Filed & Entered:* *Terminated:* | 07/15/2014 07/15/2014 | Motion for Summary Judgment |
| 33 | *Filed & Entered:* *Terminated:* | 06/05/2014 02/05/2015 | Motion for Summary Judgment |
| 34 | *Filed & Entered:* | 06/05/2014 | Declaration in Support of Motion |
| 35 | *Filed & Entered:* | 06/05/2014 | Declaration in Support of Motion |
| 36 | *Filed & Entered:* | 06/05/2014 | Memorandum of Law in Support of Motion |
| 37 | *Filed & Entered:* | 06/05/2014 | Rule 56.1 Statement |
| 38 | *Filed & Entered:* | 06/05/2014 | Memorandum of Law in Opposition to Motion |
| 32 | *Filed & Entered:* | 05/30/2014 | Order on Motion for Extension of Time |
| 31 | *Filed & Entered:* *Terminated:* | 05/28/2014 05/30/2014 | Motion for Extension of Time |

| | *Filed:* | 03/19/2014 | Pretrial Conference - Interim |
|---|---|---|---|
| | *Entered:* | 03/20/2014 | |
| [30](#) | *Filed & Entered:* | 03/06/2014 | Letter |
| | *Filed:* | 03/04/2014 | Set/Reset Hearings |
| | *Entered:* | 03/05/2014 | |
| [29](#) | *Filed:* | 03/04/2014 | Memo Endorsement |
| | *Entered:* | 03/05/2014 | |
| | *Filed & Entered:* | 02/25/2014 | Notice to Attorney to Re-File Document - Event Type Error |
| [28](#) | *Filed & Entered:* | 02/25/2014 | Letter |
| [27](#) | *Filed & Entered:* | 02/24/2014 | Motion for Conference |
| | *Terminated:* | 02/24/2014 | |
| [26](#) | *Filed & Entered:* | 02/18/2014 | Order |
| [25](#) | *Filed & Entered:* | 02/06/2014 | Order |
| [23](#) | *Filed & Entered:* | 10/28/2013 | Order |
| [24](#) | *Filed:* | 09/24/2013 | Internet Citation |
| | *Entered:* | 11/07/2013 | |
| [22](#) | *Filed & Entered:* | 09/20/2013 | Memorandum & Opinion |
| [20](#) | *Filed & Entered:* | 07/02/2013 | Reply Memorandum of Law in Support of Motion |
| [21](#) | *Filed & Entered:* | 07/02/2013 | Motion for Leave to File Excess Pages |
| | *Terminated:* | 09/20/2013 | |
| [19](#) | *Filed:* | 06/28/2013 | Order on Motion for Extension of Time to File Response/Reply |
| | *Entered:* | 07/01/2013 | |
| [18](#) | *Filed & Entered:* | 06/24/2013 | Motion for Extension of Time to File Response/Reply |
| | *Terminated:* | 06/28/2013 | |
| [17](#) | *Filed & Entered:* | 06/19/2013 | Motion for Extension of Time to File Response/Reply |
| | *Terminated:* | 06/28/2013 | |
| [14](#) | *Filed & Entered:* | 06/11/2013 | Declaration in Opposition to Motion |
| [15](#) | *Filed & Entered:* | 06/11/2013 | Declaration in Opposition to Motion |
| [16](#) | *Filed & Entered:* | 06/11/2013 | Memorandum of Law in Opposition to Motion |

| [13](#) | *Filed & Entered:* | 05/29/2013 | Scheduling Order |
|---|---|---|---|
| [12](#) | *Filed & Entered:* | 05/23/2013 | Order |
| | *Filed:* *Entered:* | 05/21/2013 05/23/2013 | Pretrial Conference - Interim |
| [11](#) | *Filed & Entered:* | 05/10/2013 | Order |
| | *Filed & Entered:* | 05/07/2013 | Notice to Attorney to Re-File Document - Deficient Docket Entry Error |
| [8](#) | *Filed & Entered:* *Terminated:* | 05/07/2013 05/07/2013 | Motion for Preliminary Injunction |
| [9](#) | *Filed & Entered:* *Terminated:* | 05/07/2013 02/05/2015 | Motion for Preliminary Injunction |
| [10](#) | *Filed & Entered:* | 05/07/2013 | Memorandum of Law in Support of Motion |
| [7](#) | *Filed:* *Entered:* | 05/01/2013 05/03/2013 | Amended Complaint |
| [4](#) | *Filed & Entered:* | 04/29/2013 | Affidavit of Service Complaints |
| [5](#) | *Filed & Entered:* | 04/29/2013 | Affidavit of Service Complaints |
| [6](#) | *Filed & Entered:* | 04/29/2013 | Affidavit of Service Complaints |
| [3](#) | *Filed & Entered:* | 04/23/2013 | Answer to Complaint |
| [2](#) | *Filed & Entered:* | 04/18/2013 | Notice of Appearance |
| | *Filed:* *Entered:* | 03/29/2013 04/01/2013 | Summons Issued |
| | *Filed:* *Entered:* | 03/29/2013 04/01/2013 | Case Designation |
| | *Filed:* *Entered:* | 03/29/2013 04/01/2013 | Case Designated ECF |
| 1 | *Filed:* *Entered:* | 03/29/2013 04/01/2013 | Complaint |

## PACER Service Center

### Transaction Receipt

03/17/2015 11:31:52

| **PACER** | | | **Client** | |
|---|---|---|---|---|

| Login: | GoldSega:2557674:4465755 | Code: | 20010.0007 |
|---|---|---|---|
| Description: | History/Documents | Search Criteria: | 1:13-cv-02115-RWS |
| Billable Pages: | 2 | Cost: | 0.20 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2|5|15

THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, ROMOLO COLANTONE, EFRAIN
ALVAREZ, and JOSE ANTHONY IRIZARRY,

                           Plaintiffs,              13 Civ. 2115 (RWS)

      -against-                                     OPINION

THE CITY OF NEW YORK and THE NEW YORK CITY
POLICE DEPARTMENT - LICENSE DIVISION,

                           Defendants.

--------------------------------------X

A P P E A R A N C E S :


      Attorneys for Plaintiffs

      GOLDBERG SEGALLA, LLP
      170 Hamilton Avenue
      White Plains, NY 10601
      By:  Brian T. Stapleton, Esq.

      GOLDBERG SEGALLA, LLP
      665 Main Street, Suite 400
      Buffalo, NY 14203
      By:  Christopher Bopst, Esq.
           Matthew S. Lerner, Esq.

      GOLDBERG SEGALLA, LLP
      8 Southwoods Boulevard, Suite 300
      Albany, NY 12211
      By:  Frank J. Ciano, Esq.

Attorneys for Defendants

ZACHARY W. CARTER
CORPORATION COUNSEL OF THE CITY OF NEW YORK
100 Church Street, 5th Floor
New York, NY  10007
By:  Michelle Goldberg-Cahn, Esq.
     Sheryl Neufeld, Esq.
     Benjamin Hillengas, Esq.

**Sweet, D.J.**

Plaintiffs New York State Rifle & Pistol Association
(the "Association"), Romolo Colantone ("Colantone"), Efrain
Alvarez ("Alvarez") and Jose Anthony Irizarry ("Irizarry")
(collectively, "Plaintiffs") have moved for summary judgment
pursuant to Rule 56 of the Federal Rules of Civil Procedure and
for a preliminary injunction pursuant to Rule 65 of the Federal
Rules of Civil Procedure.  Plaintiffs seek a declaration that
restrictions on a Premises Residence license issued by Defendant
the City of New York (the "City") through Defendant the New York
City Police Department License Division (the "License Division")
(collectively the "Defendants") are unconstitutional.
Defendants have cross moved for summary judgment pursuant to
Rule 56, seeking dismissal of Plaintiffs' complaint.  Upon the
facts and conclusions of law set forth below, the Defendants'
cross motion is granted, and the complaint is dismissed.

These motions present the sensitive issue of gun
control in our largest city, an issue critical to the public
safety and the protection of significant constitutional rights.
Handguns are unfortunately not exclusively used for the
legitimate purposes of law enforcement, civilian self-

1

protection, or for sport.  Handguns in this and other large cities are also the instruments with which violent crimes are perpetuated, and whose improper use has led to numerous accidental deaths in public places.  Legislators and members of the executive branch at municipal, state, and federal levels of government have grappled with these problems, and promulgated and enforced laws in the hopes of reducing the deleterious effects of handguns while protecting citizens' constitutionally-protected rights to bear arms.  One such law is Title 38, Chapter Five, Section 23 of Rules of the City of New York ("RCNY").

Plaintiffs seek to partially invalidate 38 RCNY § 5-23, which limits transport of a handgun through the following provision: "To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, in a locked container, the ammunition to be carried separately." Plaintiffs contend that the decisions of the Supreme Court in District of Columbia v. Heller, 554 U.S. 570 (2008), and McDonald v. City of Chicago, Ill., 561 U.S. 742 (2010), render unconstitutional 38 RCNY § 5-23's limitations on transport, specifically, the prohibition against transporting a handgun to

a second residence outside the City, for target price, or for competitive shooting outside the City.

## **Prior Proceedings**

Plaintiffs filed an initial complaint on March 29, 2013 and filed the operative amended complaint on May 1, 2013. On May 7, 2013, Plaintiffs filed a motion for a preliminary injunction, which was stayed by this Court on September 20, 2013 pending the Court of Appeals' decision in Osterweil v. Bartlett, 706 F.3d 139, 140 (2d Cir.), certified question accepted, 20 N.Y.3d 1058 (N.Y. 2013) and certified question answered, 21 N.Y.3d 580 (N.Y. 2013). See generally, New York State Rifle & Pistol Ass'n v. City of New York, 13 CIV. 2115, 2013 WL 5313438 (S.D.N.Y. Sept. 20, 2013). Plaintiffs renewed their motion for a preliminary injunction in February 2014, and the parties filed cross motions for summary judgment on June 6, 2014 and July 16, 2014. The instant motions were heard and marked fully submitted on October 8, 2014.

## **Facts**

The facts have been set forth in Plaintiffs' Local Rule 56.1 Statement of Uncontested Facts, Defendants' Statement

3

of Undisputed Material Facts pursuant to Local Rule 56.1,
Plaintiffs' Local Rule 56.1 Statement in Response to the
Defendants' Rule 56.1 Statement, and Defendants' Responses and
Objections to Plaintiffs' Statement pursuant to Local Rule 56.1.
These facts are not in dispute except as noted below.

New York State law prohibits an individual from
possessing a pistol or revolver without a license.  N.Y. Penal
Law §§ 265.01, 265.20(a)(3).  Violation of this statute is a
Class A Misdemeanor punishable by up to one year in prison, a
$1,000 fine, or both.  N.Y. Penal Law §§ 265.01, 60.01(3),
70.15.  The State of New York specifies certain classes of gun
licenses under Penal Law § 400.00(2).

Defendant, the City of New York, is a domestic
municipal corporation organized and existing under the laws of
the State of New York.  See New York City Charter § 1.  The
License Division reviews applications for Premises Residence
firearms licenses and issues licenses following an investigation
of the applicant.  See Lunetta Dec., ¶¶ 1, 15-27; Penal Law §§
400.00, 265.00(10).

The different firearms licenses and permits issued by
the License Division, along with a description of the license

type are codified in 38 RCNY 5-23 (types of handgun licenses) and 38 RCNY 1-02 (rifle, shotgun, and longarm permits). One of the licenses available for New York City residents to obtain is a Premises License—Residence, which allows an individual to keep a handgun in his or her home. 38 RCNY §§ 5-01, 5-23.

Premises Residence handgun licensees are restricted to possessing the licensed weapon at the specific home address designated on the license. See 38 RCNY § 5-01(a). Premises Residence licensees are also authorized to transport the licensed handgun directly to and from an authorized small arms range/shooting club, secured and unloaded in a locked container. See 38 RCNY §§ 5-01(a); 5-22(a)(14). Title 38 was amended in May 2001 to read as follows:

> (a) Premises License-Residence or Business. This is a restricted handgun license, issued for the protection of a business or residence premises.
>
> (1) The handguns listed on this license may not be removed from the address specified on the license except as otherwise provided in this chapter.
>
> (2) The possession of the handgun for protection is restricted to the inside of the premises which address is specified on the license.

5

(3) To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, and in a locked container, the ammunition to be carried separately.

(4) A licensee may transport his/her handgun(s) directly to and from an authorized area designated by the New York State Fish and Wildlife Law and in compliance with all pertinent hunting regulations, unloaded, in a locked container, the ammunition to be carried separately, after the licensee has requested and received a "Police Department – City of New York Hunting Authorization" Amendment attached to her/his license.

38 RCNY § 5-23.

Pursuant to New York State Penal Law § 400.00(1), "[n]o license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true." New York's Penal Law details the duties of the licensing officer which include, inter alia, determining whether the applicant meets the eligibility requirements set forth under Penal Law § 400.00(1); inspecting mental hygiene records for previous or present mental illness; investigating the truthfulness of the statements in the application; and having the applicant's fingerprints forwarded

6

for review against the records of the New York State Division of Criminal Justice Services and the FBI to ascertain any previous criminal record.  See Penal Law §§ 400.00(1), 400.00(4).  After an investigation, the licensing officer may not approve the application if, inter alia, "good cause exists for the denial of the license."  Penal Law § 400.00(1)(g).

There are currently over 40,000 active licenses that have been issued by the License Division for the possession of handguns in New York City; and over 20,000 active permits for the possession of rifles and shotguns.  The License Division currently processes an average of 3,200 new applications and over 9,000 renewal applications each year for the issuance and renewal of the various types of handgun licenses issued by the License Division.  In addition, the License Division processes an average of 850 applications for rifle and shotgun permits and 5,000 renewal applications per year.  The License Division currently has 79 employees.  It is divided into several different sections and units, and is overseen by a five member Executive Staff, that includes a director, deputy inspector (serving as commanding officer), a captain (serving as executive officer), and a lieutenant and sergeant (serving as Integrity Control Officer and Assistant).  The License Division has an

Incident Section that investigates on average 600 incidents pertaining to handgun licenses per year.  The License Division receives reports from the New York State Division of Criminal Justice System regarding all arrests made within the State of New York for which an arrestee is fingerprinted.  No formal report is forwarded to the License Division for summonses and other arrests, and for incidents for which a detainee is not fingerprinted.  The NYPD Department Manual includes a procedure for NYPD personnel to investigate incidents involving holders of handgun licenses and rifle/shotgun permits to the License Division Incident Section.

Under current New York State Penal Law, there is no "target license" class permitting the transport of an unloaded registered firearm to and from an authorized shooting range or club for regular target shooting purposes.  This class was eliminated in 2001 due to repeated incidents of permit holders not complying with the limitations on the target license.

The NYPD established a procedure for individuals or organizations to apply to the NYPD for special designation to operate a small arms range in New York City.  The application process includes submission of an application for approval as a

8

Small Arms Range in New York City.  The applicant for a license for approval as a Small Arms Range must provide a name and address for the applicant, location for the proposed range, information about whether the proposed range is outdoor or indoors, and if indoors, where in the building it would be located, information about any clubs or organizations the range is associated with, the types of weapons to be used at the range, and other information.  The License Division conducts a background check on applicants for approval as Small Arms Ranges, including consulting with the New York City Department of Buildings for a review of the zoning, property, and land use designation for the proposed site.  Approval letters for authorized Small Arms Ranges include requirements for the appropriate sound absorbent materials, fireproofing, and specifics on how targets and fire booths must be set up to ensure public safety, along with other rules.

There are currently eight NYPD-approved Small Arms Ranges in New York City, exclusive of police or military ranges. Defendants assert that seven of the eight ranges are open to any person possessing a valid NYPD license or permit for a firearm, but Plaintiffs dispute that those ranges are truly open as they require users to become members in order to gain access.  These

9

ranges include the Westside Rifle & Pistol Range on West 20th Street in Manhattan, the Woodhaven Rifle & Pistol Range in Queens, the Bay Ridge Road and Gun Club, Inc. in Brooklyn, Colonial Rifle & Pistol Club in Staten Island, the Richmond Borough Gun Club in Staten Island, and the Olinville Arms in the Bronx.  Defendants further assert that the Richmond Borough Gun Club holds regular shooting competitions and other events. Plaintiffs also dispute this assertion in part noting that the Richmond Borough Gun Club requires membership, thus shooting competitions and other events are available to those members only.  The parties agree that there is at least one NYPD-approved shooting range open to the public within City borders, though Plaintiffs emphasize that only that one exists. Defendants assert that some of the ranges require patrons to pay a fee for use of their range while Plaintiffs contend that all of the ranges charge a fee for use.

Colantone, Alvarez, and Irizarry are all holders of Premises Residence Licenses issued by New York City and subject to the restrictions of 38 RCNY § 5-23.  They each assert that they previously regularly traveled outside of New York City and New York State to attend shooting competitions in order to maintain proficiency in handgun use.  The Defendants dispute the

10

contention that Colantone's, Alvarez's, and Irizarry's affidavits support these assertions.

On May 8, 2012, to confirm that their licenses allowed them to participate in a shooting competition held in New Jersey, Colantone and Alvarez wrote separately to Deputy Inspector Andrew Lunetta of the License Division to inquire about the scope of 38 RCNY § 5-23's restrictions.  Colantone Aff., ¶ 7, Ex. A; Alvarez Aff., ¶ 7, Ex. A.  The Defendants dispute the characterization of Colantone's and Alvarez's letters.  In letters dated May 15, 2012, Deputy Inspector Lunetta advised Colantone and Alvarez that:

> The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner.  Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence License Holders are those located in New York City.
> Premises license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of City of New York designated by the New York State Fish and Wildlife Law for the purpose of hunting: no areas outside of New York State are permissible for this purpose.
> These rules do not apply to New York City issued long gun permits.  Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried

11

separately.

Colantone Aff., Ex B; Alvarez Aff., Ex B.


Colantone's family has owned land in the Catskill
region of New York for the past thirty-two years.  He built a
second family home eight years ago in Hancock, New York.
Colantone's Hancock house is located in a remote area and its
location presents a threat to the safety of Colantone and his
family when they stay at the house.  Colantone and his family
visit the land and second home several times each year.  As a
result of Deputy Inspector Lunetta's letter, Colantone has
refrained from taking his handgun licensed in New York City to
his house in Hancock, New York.


Alvarez and Irizarry have each been advised by out-of-
state ranges that they were not permitted to engage in target
practice or participate in shooting competitions at those ranges
because of New York City's enforcement of 38 RCNY § 5-23.
Consequently, Colantone, Alvarez, and Irizarry all assert that
they have refrained from engaging in target practice or
participating in shooting competitions outside New York City as
a result of 38 RCNY § 5-23.  Defendants dispute the evidence
submitted supports this assertion.

## Applicable Standards

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249).

A fact is "material" only if it will affect the outcome of the suit under applicable law, and such facts "properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Disputes over irrelevant facts will not preclude summary judgment. Id. The goal is to "isolate and

13

dispose of factually unsupported claims." Celotex Corp. v.
Catrett, 477 U.S. 317, 323-24 (1986).  "[I]t ordinarily is
sufficient for the movant to point to a lack of evidence . . .
on an essential element of the non-movant's claim . . . . [T]he
nonmoving party must [then] come forward with admissible
evidence sufficient to raise a genuine issue of fact for trial .
. . ." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d
Cir. 2008) (internal citations omitted); see also Goenaga v.
March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.
1995) (same).  "The evidence of the non-movant is to be
believed, and all justifiable inferences are to be drawn in his
favor." Anderson, 477 U.S. at 255.

        The general purpose of a preliminary injunction is to
avoid irreparable injury to the movant and to preserve the
court's power to render a meaningful decision after a trial on
the merits.  See WarnerVision Entm't Inc. v. Empire of Carolina,
Inc., 101 F.3d 259, 261 (2d Cir. 1996); see also 11A Charles A.
Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ., § 2947 (3d
ed.).  A party seeking a preliminary injunction typically must
establish: (1) either (a) a likelihood of success on the merits,
or (b) sufficiently serious questions going to the merits of its
claims to make them fair ground for litigation, plus a balance

14

of the hardships tipping decidedly in favor of the moving party;
(2) irreparable harm; and (3) that issuance of the injunction
would be in the public interest.  See Oneida Nation of N.Y. v.
Cuomo, 645 F.3d 154, 164 (2d Cir. 2011) (internal quotations and
citations omitted); Red Earth LLC v. United States, 657 F.3d
138, 143 (2d Cir. 2011).  Where "the moving party seeks to stay
governmental action taken in the public interest pursuant to a
statutory or regulatory scheme," as is the case here, a
preliminary injunction may only be granted if the moving party
meets the more rigorous likelihood of success on the merits of
its claim standard.  Plaza Health Labs., Inc. v. Perales, 878
F.2d 577, 580 (2d Cir. 1989).


          The Second Circuit has held that "[v]iolations of
First Amendment rights are commonly considered irreparable
injuries for the purposes of a preliminary injunction."  Bery v.
City of New York, 97 F.3d 689, 693 (2d Cir. 1996), cert. denied,
520 U.S. 1251 (1997).  "In exercising their sound discretion,
courts of equity should pay particular regard for the public
consequences in employing the extraordinary remedy of
injunction."  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312
(1982); see also Million Youth March. Inc. v. Safir, 155 F.3d
124, 125-26 (2d Cir. 1998) (modifying injunction because

15

District Court failed to consider government's interest in
public health, safety and convenience in balance against First
Amendment rights).  In considering an injunction, the Court must
balance the interests and possible injuries to both parties.
See Yakus v. U.S., 321 U.S. 414, 440 (1944).  Whether the relief
sought is in the public interest is a factor to be considered.
Standard & Poor's Corp. v. Commodity Exchange, Inc., 683 F.2d
704, 711 (2d Cir. 1982).

        In concluding that the District of Columbia's outright
ban on the possession of handguns in the home violated the
Second Amendment, the Supreme Court in Heller expressly provided
that certain regulations are "presumptively valid," including
prohibitions on possession by certain categories of people, such
as felons or the mentally ill, prohibitions on possession in
certain places (such as schools and other sensitive places), and
the imposition of "conditions and qualifications on commercial
sale."  554 U.S. at 626-27.  In McDonald v. City of Chicago, 561
U.S. 742, 787 (2010), the Court affirmed these presumptively
lawful prohibitions.  These "presumptively valid" regulations,
presume a licensing scheme.  Indeed, in McDonald, the Supreme
Court emphasized that the Second Amendment "limits, but by no
means eliminates," governmental discretion to regulate activity

16

falling within the scope of the right and that incorporation "does not imperil every law regulating firearms."  561 U.S. 742, 904.

As the Court of Appeals for the Second Circuit noted in Kachalsky v. County of Westchester, the Supreme Court in Heller stressed that while prohibiting handguns in the home is not permissible, "a variety of other regulatory options remain available, including categorical bans on firearm possession in certain public locations."  701 F.3d at 81, 94 (2d Cir. 2012) (citing Heller, 554 U.S. at 626-27 & n.26).  Since Heller, several other courts have upheld registration and licensing requirements, along with certain prohibitions on firearms.  See, e.g., Kachalsky, 701 F.3d 81, 97 (upholding New York State's "proper cause" requirement for license to carry a concealed firearm); United States v. DeCastro, 682 F.3d 160, 168 (2d Cir. 2012) (upholding statute prohibiting transportation into New York of firearm purchased in another state); Heller v. District of Columbia ("Heller II"), 670 F.3d 1244, 1261-64 (D.C. Cir. 2011) (upholding prohibition on possession of ammunition magazines in excess of certain capacity); United States v. Masciandaro, 638 F.3d 458, 473 (4th Cir. 2011), cert. denied, 132 S. Ct. 756 (2011) (upholding statute prohibiting carrying or

17

possession of weapon in motor vehicle in national park); United States. V. Marzzarella, 614 F.3d 85 (3d Cir. 2010), cert. denied, 131 S, Ct. 958 (2011) (upholding prohibition on possession of firearms with obliterated serial numbers because the law did not "severely limit the possession of firearms"); United States v. Skoien, 614 F.3d 638, 645 (7th Cir.2010) (en banc), cert. denied, 131 S. Ct. 1674 (2011) (upholding law prohibiting the possession of firearms by any person convicted of misdemeanor domestic violence crime).

A majority of courts, including the Second Circuit and courts in this Circuit, apply intermediate scrutiny to general challenges under the Second Amendment, even when reviewing statutes or laws that may restrict the possession of handguns in the home. See, e.g., Kwong v. Bloomberg, 723 F.3d 160, 167-68 (2d Cir. 2013), cert. denied, sub nom., Kwong v. DeBlasio, 134 S.Ct. 2696 (June 2, 2014) (applying intermediate scrutiny to fee governing New York City premises residence licenses); Kachalsky, 701 F.3d at 96 (applying intermediate scrutiny to New York's "proper cause" requirement for carry licenses); United States v. Reese, 627 F.3d 792, 800 (10th Cir. 2010), cert. denied, 131 S.Ct. 2476 (2011) (applying intermediate scrutiny to statute prohibiting gun possession - even in the home - for those who

have an outstanding order of protection as opposed to a criminal
conviction); United States v. Skoien, 614 F.3d 638, 641-42 (7th
Cir. 2010) (en banc) (applying intermediate scrutiny to law
prohibiting the possession of firearms by any person convicted
of misdemeanor domestic violence crime); United States v.
Chester, 628 F.3d 673, 677 (4th Cir. 2010) (same); United States
v. Marzzarella, 614 F.3d 85, 97 (3d Cir. 2010) (applying
intermediate scrutiny to law limiting possession of firearms
with obliterated serial number because the law did not "severely
limit the possession of firearms"); United States. v.
Oppedisano, 09-CR-0305, 2010 WL 4961663, at *2 (E.D.N.Y. Nov.
30, 2010) (applying intermediate scrutiny to challenge of
federal statute prohibiting persons convicted of certain crimes
from possessing firearms); New York State Rifle & Pistol Ass'n
v. Cuomo, 990 F.Supp.2d 349, 366 (W.D.N.Y. Dec. 31, 2013)
(applying intermediate scrutiny to New York SAFE Act and
concluding that a mild form of intermediate scrutiny applies to
restrictions posing modest burdens on the right to possess
firearms).  As the Second Circuit recently noted, intermediate
scrutiny is satisfied if the regulation "is substantially
related to the achievement of an important governmental
interest." Kachalsky, 701 F.3d at 96-97.

Plaintiffs contend that strict scrutiny is appropriate.  However, strict scrutiny does not apply here because the challenged rule does not impinge on the "core" of the Second Amendment, as it does not establish or purport to establish a prohibition or ban on the exercise of Plaintiffs' Second Amendment right to possess a handgun in the home for self-defense.  Cf. Heller (ban on guns in the home, weapons must be completely disassembled); Ezell, 651 F.3d 684, 708 (applying more rigorous scrutiny, "if not quite 'strict scrutiny,'" to Chicago's absolute prohibition on firing ranges in the context of law requiring training at a firing range to qualify for a premises gun license).

Plaintiffs contend that the challenged rule "categorically prohibits engaging in target practice or participating in shooting competitions," "effectively prohibits . . . the right to keep and bear arms," and otherwise makes it "impossible" to engage in target practice.  Pl. Mem. at 11-12, 14.  However, the rule does not prevent or prohibit anyone from engaging in target practice or shooting competitions, rather it prohibits transporting the handgun to a range not approved by the City.  The laws struck down in Heller and McDonald, by contrast, were laws that prohibited or banned firearms rather

20

than regulating them.   In Ezell the ordinance was impossible to
satisfy within City limits; a law requiring practice at a firing
range could not be reconciled with a law prohibiting any such
firing ranges from operating within city limits.   651 F.3d at
708 ("The City's firing-range ban is not merely regulatory; it
prohibits the 'law-abiding, responsible citizens' of Chicago
from engaging in target practice in the controlled environment
of a firing range").

Here, there is no ban, prohibition or otherwise, on
firing ranges in New York City.   Although Plaintiffs state that
only one such range exists that is open to the public, there is
nothing in the challenged rule that prohibits public gun ranges
from operating in New York City.   Though Defendants strenuously
dispute Plaintiffs' claim that only one range open to the public
operates in New York City (Lunetta Dec., ¶¶ 39-40), the fact
that few, or even no, such ranges exist is not tantamount to a
ban; the number of firing ranges open to the public is a
function of the market, and not the challenged rule.   See, e.g.,
U.S. Smokeless Tobacco Mfg. Co, v. City of New York, 708 F.3d
428, 436 n.3 (2d Cir. 2013) ("Decision by owners of tobacco bars
not to sell the product is a commercial choice that does not
result from the ordinance itself.").

Unlike the ban on firing ranges which made compliance with the statute impossible in Ezell, the requirement that Premises Residence licensees only transport their firearms to approved ranges (located in New York City) is a regulatory measure which does not prevent people from going to a range to engage in target shooting practice or competitive shooting. The rule "merely regulate[s] rather than restrict[s]" the right to possess a firearm in the home and is a minimal, or at most, modest burden on the right. Ezell, 651 F.3d at 708-09. Premises Residence licensees are authorized to possess an assembled firearm in their home and to transport the weapon to a City-authorized firing range to engage in target practice in a controlled environment. See 38 RCNY §§ 5-01(a), 5-22(a)(14). As such, strict scrutiny is not applied, and intermediate level scrutiny is appropriate in analyzing Second Amendment challenges - even those that touch upon the claimed "core" Second Amendment right to self-defense in the home. See also, Kwong, 763 F.3d at 167-68.

## 38 RCNY § 5-23(a)(3) Does Not Violate the Second Amendment

The Plaintiffs' contention that the challenged rule deprives them of the ability to protect themselves in their

22

second homes outside of New York City does not present a Second
Amendment problem.  The Premises Residence license is only
issued to persons with residences in New York City, and it is
limited only to the specific premise for which it is issued.
See N.Y. Penal Law § 400.00(6); 38 RCNY §§ 5-01(a), 5-02(9), 5-
23(a)(1)-(2).  There is nothing in the Penal Law or RCNY
preventing such persons from obtaining an appropriate license to
possess or utilize a firearm, in the jurisdiction of their
second home.  Following this Court's stay opinion, the New York
Court of Appeals concluded that an applicant who owns a part-
time residence in New York, but is permanently domiciled
elsewhere is eligible for a New York handgun license under Penal
Law § 400.00(3)(a) where the applicant is a resident.  Osterweil
v. Bartlett, 21 N.Y.3d 580, 584 (N.Y. Ct. App. 2013).  Thus, the
Penal Law simply requires one to be a resident, not a
domiciliary, for purposes of eligibility of a firearms license.


     According to Plaintiffs, Premises Residence license
statute violates the Second Amendment's right to bear arms in
two ways: (1) prohibiting transportation of the licensee's
handgun from the authorized residence in the City to another
out-of-City residence; and (2) barring transportation of the
licensee's handgun to neighboring municipalities or states to

23

participate in shooting competitions or for use in target
ranges.  Pls.' Mem. in Supp't 7.  However, these regulations are
reasonable and result from the substantial government interest
in public safety.

Plaintiffs argue that Defendants' reliance on
Osterweil does not alleviate the Second Amendment concern
because, in their view, it is an impermissible burden to have to
have separate firearms for each residence.  Pl. Mem. at 9-10.
However, nothing in the Second Amendment requires municipalities
or states to allow citizens to transport their firearms if they
are owned under a restricted license.  This Court has already
stated that if Plaintiffs are permitted to obtain a firearms
license both in New York City as well as other locations in the
State of New York where they may have other residences, then
"the cogency of Plaintiffs' second home argument suffers
considerably as their complaint could be met with a rejoinder to
simply acquire a handgun license from the county in which the
second home is located and keep a gun in that home for use when
it is being used as a residence."  New York State Rifle, 2013 WL
5313438, at *2.  The Premises Residence license is specific to
the New York City residence and the firearms listed on the
license must be connected to the license.  Those requirements do

24

not generate a constitutional issue.  A gun owner may apply for
a different type of firearm license permitting transportation of
a firearm throughout New York State should he or she qualify.
See, e.g., 38 RCNY § 5-01.

        Intermediate scrutiny requires that the government
interest be important and that the fit between the regulation
and the government's interest be reasonable.  "To withstand
intermediate scrutiny, a statutory classification must be
substantially related to an important governmental objective,"
Clark v. Jeter, 486 U.S. 456, 461 (1988).  Our Circuit has found
that "the fit between the challenged regulation need only be
substantial, 'not perfect.'"  Kachalsky, 701 F.3d at 97 (quoting
Marzzarella, 614 F.3d at 97).

        The Circuit has held that "New York has substantial,
indeed compelling, governmental interests in public safety and
crime prevention."  Kachalsky, 701 F.3d at 97 (citing Schenck v.
Pro-Choice Network, 519 U.S. 357, 376 (1997); Schall v. Martin,
467 U.S. 253, 264 (1984); Hodel v. Virginia Surface Mining &
Reclamation Ass'n, 452 U.S. 264, 300 (1981); and Kuck v.
Danaher, 600 F.3d 159, 166 (2d Cir. 2010)).  The City's interest
here in limiting the permissible transport of dangerous firearms

25

outside of the home is vital.  Lunetta Dec., ¶¶ 2-7.  Indeed,
courts have found that "outside the home, firearms safety
interests often outweigh individual interests in self-defense."
Masciandaro, 638 F.3d at 470.  The Second Circuit in Kachalsky
noted that because of the "dangers posted to public safety,"
there "is a longstanding tradition of states regulating firearm
possession and use," 701 F.3d at 94-94 (collecting statutes from
Founding era), and that, "while the Second Amendment's core
concerns are strongest inside hearth and home, states have long
recognized a countervailing and competing set of concerns with
regard to handgun ownership and use in public."  Id. at 96.

    The restrictions on the transport of firearms for
practice or competition applicable to Premises Residence
licensees set forth in 38 RCNY § 5-23(a)(3) are substantially
related to the City's substantial interest in public safety and
crime prevention.  It is well-established that firearms in the
public present a greater public danger than firearms inside
one's home.  See Kachalsky, 701 F.3d at 94-99.  Permitting
Premises Residence licensees to travel with their firearms to
only approved ranges, or for regulated and approved hunting,
ensures that licensees are not travelling in the public with
their firearms to any place of their choosing.  If holders of

26

Premises Residence licenses believe that they may carry their firearms anywhere in New York State or across state lines, past experience indicates that many licensees will transport firearms in their vehicles, thus eviscerating the restrictions on Premises Residence licenses. The License Division's experience with the now-eliminated target license,[1] and the abuse by target licensees who were caught travelling with their firearms when not on their way to or from an authorized range, supports this interest. Here, by ensuring that Premises Residence licensees only travel with their firearms to authorized ranges in New York City, the City is able to ensure that licensees are only travelling to limited areas with their restricted licenses while affording them the opportunity to maintain their proficiency in the use of their firearms.

Further, the License Division is better able to investigate the credibility of licensees' assertions regarding the purpose for transporting their handguns when the incident

---

[1] There is no provision in the N.Y. Penal Law (§ 400.00(4)) for a target license, whereas the Penal Law expressly provides for a license to possess a firearm in the home. See Penal Law § 400.00(2)(a). The New York State Supreme Court, Appellate Division, First Department upheld the elimination of the target license. De Illy v. Kelly, 6 A.D.3d 217 (App. Div. 2004). There, the Court concluded that although a Premises Residence license is "limited to that licensee's dwelling, we do not view respondent's expansion of that right, to allow transport of such arms to authorized target ranges and hunting areas for proficiency enhancement, as supplanting the statue but merely supplementing it." 6 A.D.3d at 218.

was reported by an NYPD officer, as well as the ability to better police and monitor whether the person was, in fact travelling directly to or from an authorized range. Practice at an authorized range that has been investigated by the NYPD and is required to adhere to certain safety requirements ensures the public safety. The NYPD has the ability to monitor approved ranges, reviews the books of such ranges, and is aware of any incidents that occur at such ranges.

Plaintiffs have noted the exemption in 38 RCNY § 5-23(a)(4) authorizing Premises Residence licensees to transport their handgun directly to or from an area authorized by N.Y. State Fish & Wildlife Law. Pl. Mem. at 16. However, a Premises Residence licensee with a hunting authorization is not permitted to unregulated travel around New York State with their firearms. Pursuant to Article 11, Title 7 of the New York State Environmental Conservation Law ("ECL"), authorization to hunt may be exercised only at the times, places, manner and to the extent as permitted by specific licenses and stamps to hunt specific species. See, e.g., ECL §§ 11-0701, 11-0703. The state law further sets out limitations on the use and possession of firearms. See, e.g., ECL §§ 11-0931, 11-1321. Hunting authorizations only allow the transport of a firearm for hunting

28

that is authorized pursuant to the New York State Fish and
Wildlife Law.  As such, any licensee observed by law enforcement
in New York State to be travelling with a firearm stating that
they were on a direct route to hunting would be required to
produce a copy of the New York City Premises Residence license,
a City hunting authorization, a valid hunting license for the
specific season and area at issue, and have knowledge of many
other rules specific to the game and area (such as weapon types,
ammunition restrictions, time and day restrictions, and game
gender and size restrictions).  An officer anywhere in the state
may ask a person with a weapon about game tags, or many other
specific questions to evaluate the credibility of the assertion
that the person was en route to an area covered by the Fish and
Wildlife Law.  In short, it would be a far more elaborate lie to
justify the illegal transport of firearms under the N.Y. State
Fish & Wildlife Law, than by falsely stating that the gun holder
is en route to a range or shooting competition located anywhere
in the state.

## 38 RCNY § 5-23(a)(3) Does Not Violate Plaintiffs' Right to Travel

Plaintiffs contend that the restriction on Premises

29

Residence licenses impedes their fundamental right to travel.
See Pl. Mem. 20-32.  It is well-settled that the "constitutional
right to travel from one State to another . . . occupies a
position fundamental to the concept of our Federal Union."
Shapiro v. Thompson, 394 U.S. 618 (1969).  This constitutional
protection for interstate travel has been extended, in the
Second Circuit, to intrastate travel as well.  King v. New
Rochelle Municipal Housing Auth., 442 F.2d 646, 648 (2d Cir.)
(1971), cert. denied, 404 U.S. 863 (1971).

      Here, however, Plaintiffs point to nothing that
requires New York City to allow its licensees to transport their
restricted firearms to other states, or to other locales within
New York State.  Limiting restricted Premises Residence
licensees to keep their firearms in their residences, or to and
from an authorized small arms range, does not impede on
Plaintiffs' right to travel.  Courts have found that "'travelers
do not have a constitutional right to the most convenient form
of travel [, and] minor restrictions on travel do not amount to
the denial of a fundamental right.'"  Town of Southhold v. Town
of East Hampton, 477 F.3d 38, 53 (2d Cir. 2 2007) (citations
omitted).  "When a statute or regulation has merely . . . an
effect on travel, it does not raise an issue of constitutional

dimension.  A statute implicates the constitutional right to
travel when it actually deters such travel, or when the
impedance of travel is its primary objective, or when it uses
any classification which serves to penalize the exercise of that
right." Five Borough Bicycle Club v. City of New York, 483 F.
Supp.2d 351, 362-63 (S.D.N.Y. 2007) (quoting Soto-Lopez v. New
York City Civil Serv. Comm'n, 755 F.2d 266, 278 (2d Cir. 1985))
(internal quotations omitted).  Nothing in the rules pertaining
to Premises Residence licenses impedes, deters, or punishes
travel.  While the rule admittedly does not allow for
unrestricted travel with a firearm outside New York City, the
rule does not prevent Premises Residence licensees from
travelling outside of New York City - it simply prevents them
from travelling with their firearm.  In Town of Southhold, the
Second Circuit held that "[t]he fact that the [law] may make
travel less direct for some passengers does not meet the
threshold required for strict scrutiny review . . . something
more than a negligible or minimal impact on the right to travel
is required before strict scrutiny is applied."  477 F.3d at 54
(internal quotations and citations omitted).  The Second Circuit
has recognized that minor restrictions on travel "simply do not
amount to the denial of a fundamental right." Selevan v. New
York Thruway Auth., 71 F.3d 253, 257-58 (2d Cir. 2013); see also

31

Joseph v. Hyman, 659 F.3d 215, 279 (2d Cir. 2011).  Moreover, in

Turley v. New York City Police Dep't, the plaintiff street

musician challenged certain City regulations as violating the

First Amendment, and raised a right to travel allegation arguing

that he cannot afford to buy multiple permits for each day of

performing for different locations.  93 CIV. 8748, 1996 WL

93726, at *1 (S.D.N.Y. Mar. 5, 1996), aff'd in part. rev'd in

part, after trial on other issues, 167 F.3d 757 (2d Cir. 1999).

In Turley, the Court found that "the right to travel is not

violated by police power regulations that impose reasonable

restrictions on the use of streets and sidewalks."  Id. at *7;

see also Lutz v. City of New York, 899 F.2d 255, 270 (3d Cir.

1990) (finding state ordinance outlawing "cruising" was a

reasonable time, place and manner restriction on right to local

travel).


     Here, like the regulations discussed above requiring

sound permits for speech in Turley and Lutz, or the requirement

to pay tolls to commute to work in Selevan, the requirement that

Premises Residence licensees not travel unrestricted with their

firearms throughout or outside of the state does not infringe on

any fundamental right.  Such restrictions are reasonable in

time, place, and manner restrictions on the possession and use

32

of a firearm.

Plaintiffs' argument that 38 RCNY § 5-23(a)(3)
conflicts with the Firearms Owners' Protection Act ("FOPA"), 18
U.S.C. § 9264, is similarly unconvincing.  See Pl. Mem. at 27.
FOPA protects individuals from prosecution for illegally
transporting firearms when the origin or destination of the
transfer is a place where the individual "may lawfully possess
and carry such firearm."  18 U.S.C. § 926A.  In Torraco v. Port
Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010), the
Second Circuit held that FOPA does not create a presumption that
gun owners may travel interstate with their guns to places that
do not permit unlicensed firearm possession.  Similarly, in a
state court challenge invoking FOPA, the Appellate Division held
that "[w]here the licensee is not permitted by the terms of the
license to lawfully carry the firearm at the time he embarks on
a trip to another state, FOPA is inapplicable."  Beach v. Kelly,
52 A.D.3d 436, 437 (App. Div. 2008).  Here, Premises Residence
licensees are not authorized to carry firearms under the terms
of their restricted license, other than in the limited exception
of travel to a New York City authorized range.  Thus, Plaintiffs
do not meet the lawful carry requirement set forth in 18 U.S.C.
§ 926A.

## 38 RCNY § 5-23(a)(3) Does Not Violate The First Amendment

The First Amendment protects the right of individuals to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for redress of grievances, and the exercise of religion.  Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984); Sanitation Recycling Indus. v. City of New York, 107 F.3d 985, 996-97 (2d Cir. 1997).  However, government regulation or conduct that makes it "more difficult for individuals to exercise their freedom of association . . . does not, without more, result in a First Amendment violation."  Fiehting Finest. Inc. v. Bratton, 95 F.3d 224, 228 (1996).  Rather, "[t]o be cognizable, the interference with associational rights must be direct and substantial or significant."  Id. quoting Lyng v. UAW, 485 U.S. 360, 366-67 n. 5 (1988) (internal quotations omitted).  Moreover, the existence of a "chilling effect even in the area of First Amendment rights" does not support a freedom of expressive association claim.  Id. quoting Younger v. Harris, 401 U.S. 37, 57 (1971) (internal quotations omitted).

Plaintiffs have not alleged how engaging in target practice and competitive shooting outside of New York City

34

constitutes expressive matter or free association protected by
the First Amendment.  In order for an activity to fall within
the ambit of the First Amendment's protection of expressive
association, "a group must engage in some form of expression,
whether it be public or private."  Boy Scouts of Am. v. Dale,
530 U.S. 640, 648 (2000).  Plaintiffs have asserted that
practicing at ranges and participating in shooting competitions
is protected expressive or associational conduct.  See Pl. Mem.
at 17-19.  However, asserting that gathering to practice and use
what Plaintiffs deem to be their constitutional rights protected
under the Second Amendment does not serve to create a right to
expression and association protected under the First Amendment.
Courts have viewed with care the implication of First Amendment
rights in the context of the Second Amendment.  See, e.g.,
Kachalsky, 701 F.3d at 91-92 ("it would be . . . imprudent to
assume that the principles and doctrines developed in connection
with the First Amendment apply equally to the Second
[Amendment].");  Plastino v. Koster, 12-CV-1316, 2013 WL 1769088,
at *3 (E.D. Mo. Apr. 24, 2013), appeal dismissed (Oct. 11,
2013); Woolard v. Sheridan, 863 F. Supp.2d 462, 472 (D. Md.
2012), rev'd on other grounds, sub. nom, Woolard v. Gallagher,
712 F.3d 865, 883 fn. 11 (4th Cir. Mar. 21, 2013); Piszczatoski
v. Filko, 840 F. Supp.2d 813, 832 (D.N.J. 2012) (declining to

apply the First Amendment's prior restraint doctrine to a Second
Amendment case).

    The requirement that Premises Residence licensees only
utilize New York City authorized small arms ranges for purposes
of practicing with their restricted firearm does not directly
and substantially interfere with the rights of Plaintiffs to
exercise their right to freely associate.  The requirement
simply affects the place and manner in which Plaintiffs may
engage in target shooting - an activity that is elective.
Although Plaintiffs argue that 38 RCNY § 5-23(a)(3) sets forth a
requirement that Premises Residence licensees practice "[t]o
maintain proficiency in the use of the handgun," nothing in that
rule is compulsory, requiring licensees to practice at a range,
it simply permits it.  Nothing prevents Plaintiffs from
associating with other handgun licensees at ranges in New York
City, or any shooting competitions held therein.  The City's
rule does not prevent any of the Plaintiffs from obtaining a
license to utilize, possess, or carry a handgun in the states or
localities where Plaintiffs seek to engage in target practice or
shooting competitions outside of New York City.

## 38 RCNY § 5-23(a)(3) Does Not Violate The Dormant Commerce Clause

Article I, Section 8, Clause 3 of the United States Constitution provides that Congress shall have power "[t]o regulate Commerce with foreign Nations, and among several States, and with the Indian Tribes." In addition to this express grant of power to Congress, the Commerce Clause contains a negative implication – commonly referred to as the dormant Commerce Clause – "which limits the power of local governments to enact laws affecting interstate commerce." Town of Southold, 477 F.3d at 47. The chief concern of the dormant Commerce Clause is economic protectionism – "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." McBurney v. Young, 133 S. Ct. 1709, 1719 (Apr. 20, 2013) (internal quotations omitted).[2] However, this restriction is not absolute, and "the States retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be

---

[2] The U.S. Supreme Court recently expressed some misgivings about the Dormant Commerce Clause framework, but nevertheless continued to apply it. McBurney, 133 S. Ct. at 1719-1720; see also id. at 1721 (J. Thomas, concurrence) ("I continue to adhere to my view that 'the negative Commerce Clause has no basis in the text of the Constitution, makes little sense, and has proved virtually unworkable in application, and, consequently, cannot serve as a basis for striking down a state statute.'") (quoting Hillside Dairy Inc. v. Lyons, 539 U.S. 59, 68 (2003)).

affected." Maine v. Taylor, 477 U.S. 131, 138 (1986); see also
McBurney, 133 S. Ct. at 1719-20.  Plaintiffs have contended that
38 RCNY § 5-23(a)(3) is unconstitutional because it: (1) amounts
to extraterritorial control of commerce; and (2) imposes a
burden on interstate commerce outweighed by local benefits.

        A law may violate the dormant Commerce Clause in three
ways.  First, if a statute clearly discriminates against
interstate commerce on its face or in effect, it is virtually
invalid per se.  See Town of Southold, 477 F.3d at 47.  Such a
law can withstand judicial scrutiny only if the purpose is
unrelated to economic protectionism.  See McBurney, 133 S. Ct.
at 1719-20; Town of Southold, 477 F.3d at 47; Selevan, 584 F.3d
at 94-95.  Second, when a law regulates evenhandedly to
effectuate a legitimate public interest, and burdens interstate
commerce only incidentally, the balancing test articulated in
Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970) is applied.
Under Pike, the statute will be upheld unless the burden on
interstate Commerce:

        is clearly excessive in relation to the putative local
        benefits.  If a legitimate local purpose is found,
        then the question becomes one of degree.  And the
        extent of the burden that will be tolerated will of
        course depend on the nature of the local interest
        involved, and on whether it could be promoted as well

                                38

with a lesser impact on interstate activities.

Id.  A party challenging a law on either of these two grounds must first demonstrate that the statute has a "disparate impact" on interstate commerce.  See Town of Southold, 477 F.3d at 47. In other words, the statute "must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce."  National Elec. Mfrs.' Ass'n v. Sorrell, 272 F.3d 104, 109 (2d Cir. 2001).  Third, a statute is invalid per se "if it has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question."  Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004).[3]

The extraterritorial aspect of dormant Commerce Clause jurisprudence emerged from Supreme Court price-regulation cases. See Freedom Holdings, 357 F.3d at 219.  The last in this line of cases, Healy v. The Beer Inst., 491 U.S. 324 (1989), sets forth the following three principles to guide an extraterritoriality analysis:

---

[3] The extraterritorial reach of a statute is sometimes analyzed as a type of "disparate impact" under the Pike balancing test rather than as an independent basis for invalidity.  See Freedom Holdings, 357 F.3d at 216, fn.11.  The outcome here is the same under both approaches.

First, the Commerce Clause precludes the application
of a state statute that takes place wholly outside of
the State's borders, whether or not the commerce has
effects within the State, and specifically, a State
may not adopt legislation that has the practical
effect of establishing a scale of prices for use in
other states.  Second, a statute that directly
controls commerce occurring wholly outside the
boundaries of a State exceeds the inherent limits of
the enacting State's authority and is invalid
regardless of whether the statute's extraterritorial
reach was intended by the legislature . . . .  Third,
the practical effect of the statute must be evaluated
not only by considering the consequences of the
statute itself, but also by considering how the
challenged statute may interact with the legitimate
regulatory regimes of other States and what effect
would arise if not one, but many or every, State
adopted similar legislation.

Id. at 336 (internal quotations and citations omitted).

38 RCNY § 5-23(a) differs markedly from the laws at

issue in the price regulation cases.  First, the rule does not

"establish a scale of prices" or affect interstate pricing

decisions.  Second, the Connecticut price affirmation statute

struck down in Healy constituted economic protectionism.  Here,

the rule regarding where restricted licensees may carry their

firearms has nothing to do with economic interests.  Third, the

rule does not directly control commercial activity occurring

wholly outside New York State.  The price regulation statutes

made specific reference to the conduct of out-of-state actors.

Unlike those regulations, the challenged rule does not mention

40

other states for any purpose.  See National Elec. Mfrs.' Ass'n

v. Sorrell, 272 F.3d at 110.  The rule simply provides that

restricted licensees may only deviate from the restriction of

using their firearm in their home in the limited circumstance of

carrying their firearms to authorized ranges, in order to

protect the public safety.[4]  The rule does not prohibit persons

from purchasing firearms or attending shooting competitions.

Like the statute challenged in Brown & Williamson Tobacco Com.

v. Pataki, 320 F.3d 200, 214 (2d Cir. 2003), the rule "neither

impedes nor obstructs the flow of" firearms in interstate

commerce, it regulates the manner in which licensees transport

their firearms.


        At most, Plaintiffs have demonstrated that 38 RCNY §

5-23(a)(3) is a municipal regulation that has minor, indirect

ripple effects outside the City's boundaries.  However, such

effects are without constitutional significance where, as here,

the challenged law does not directly control commerce and out-

of-state entities "remain free to conduct commerce on their own

terms. . . ."  Freedom Holdings, 357 F.3d at 221; see also

---

[4] Plaintiffs' entire extraterritoriality argument rests upon the notion that
Premises Residence licensees are "lawfully licensed to carry firearms,"
which, according to the terms of such license, they are not.  Pl. Mem. at 22
(emphasis added).  Indeed, City residents bearing carry license can certainly
travel with their license outside of the state if they are lawfully permitted
to carry and possess a license in the other jurisdiction.

Instructional Sys., Inc. v. Computer Curriculum Corp., 35 F.3d
813, 825 (3d Cir. 1994) ("[I]t is inevitable that a state's law
. . . will have extraterritorial effects.  The Supreme Court has
never suggested that the dormant Commerce Clause requires
Balkanization, with each state's law stopping at the border.").

In the alternative, Plaintiffs argue that the rule
imposes a burden on commerce incommensurate with the local
benefits, or the Pike balancing test.  See Pl. Mem., at 23.
However, before the balancing test is applied, Plaintiffs must
make a threshold showing of disparate impact.  Town of Southold
v. Town of East Hampton, 477 F.3d 38, 50 (2d Cir. 2007).
Plaintiffs have not met their burden of establishing that the
rule has an impact on commerce.  Further, any purportedly unique
burden on commerce is outweighed by the strength of the local
benefits, and thus, the Pike balancing test is satisfied.
Because the important local interests at stake outweigh any
negligible burden on interstate commerce, and nondiscriminatory
alternatives are not available, 38 RCNY § 5-23(a)(3) is not
unconstitutional under the Pike balancing test.

Plaintiffs contend that the rule's effect on commerce
outweighs its local benefits.  However, the rule is narrowly

drawn and reasonably constructed to accomplish the City's stated public safety goals.  Local laws promoting public safety have a presumption of validity.  See Bibb v. Navajo Freight Lines, 359 U.S. 520, 524 (1959).  Courts have also found that "[c]onsiderable deference must be given to the legislature's policy determinations as to the local benefits of the challenged legislation."  Eric M. Berman, P.C. v. City of New York, 895 F. Supp. 2d 453, 492 (E.D.N.Y. 2012).  These factors militate against partial invalidation of 38 RCNY § 5-23.

**Conclusion**

Based on the conclusions set forth above, the Plaintiffs' motions for summary judgment and preliminary injunction are denied and the Defendants' cross motions for summary judgment dismissing the Amended Complaint is granted.

It is so ordered.

**New York, NY**
**February    , 2015**

_____
**ROBERT W. SWEET**
**U.S.D.J.**

43

public safety goals.  Local laws promoting public safety have a
presumption of validity.  See Bibb v. Navajo Freight Lines, 359
U.S. 520, 524 (1959).  Courts have also found that
"[c]onsiderable deference must be given to the legislature's
policy determinations as to the local benefits of the challenged
legislation."  Eric M. Berman, P.C. v. City of New York, 895 F.
Supp. 2d 453, 492 (E.D.N.Y. 2012).  These factors militate
against partial invalidation of 38 RCNY § 5-23.

**Conclusion**


        Based on the conclusions set forth above, the
Plaintiffs' motions for summary judgment and preliminary
injunction are denied and the Defendants' cross motions for
summary judgment dismissing the Amended Complaint is granted.


        It is so ordered.


**New York, NY**
**February 4, 2015**


                                    _____
                                    ROBERT W. SWEET
                                    U.S.D.J.


43