# No. 15-638

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————————

THE NEW YORK STATE RIFLE & PISTOL ASSOCIATION, INC.,
ROMOLO COLANTONE, EFRAIN ALVAREZ, AND
JOSE ANTHONY IRIZARRY,

*Plaintiffs-Appellants*,

v.

THE CITY OF NEW YORK AND
THE NEW YORK CITY POLICE DEPARTMENT – LICENSE DIVISION,

*Defendants-Appellees*.

———————————

On Appeal from the United States District Court
for the Southern District of New York, No. 1:13-cv-2115

———————————

## JOINT APPENDIX

———————————

BRIAN T. STAPLETON
MATTHEW S. LERNER
GOLDBERG SEGALLA LLP
11 Martine Avenue
Suite 750
White Plains, NY 10606
(914) 798-5400
bstapleton@goldbergsegalla.com

PAUL D. CLEMENT
 *Counsel of Record*
D. ZACHARY HUDSON
ANDREW N. FERGUSON
BANCROFT PLLC
500 New Jersey Avenue NW
7th Floor
Washington, DC 20001
(202) 234-0090
pclement@bancroftpllc.com

*Counsel for Appellants*

June 16, 2015

# TABLE OF CONTENTS

| Date | Document | Pages |
|---|---|---|
|  | Civil Docket, 1:13-cv-02115-RWS | JA1-7 |
| 05/01/13 | Plaintiffs' Amended Complaint | JA8-29 |
| 05/07/13 | Plaintiffs' Declarations and Accompanying Exhibits | JA30-50 |
| 06/05/14 | Declaration of Michelle Goldberg-Cahn and Accompanying Exhibits | JA51-66 |
| 06/05/14 | Declaration of Andrew Lunetta and Accompanying Exhibits | JA67-142 |
| 06/05/14 | Defendants' Statement Pursuant to Rule 56.1 | JA143-149 |
| 07/16/14 | Plaintiffs' Statement Pursuant to Rule 56.1 | JA150-156 |
| 07/16/14 | Plaintiff's Counterstatement Pursuant to Rule 56.1 | JA157-167 |
| 08/15/14 | Defendants' Counterstatement Pursuant to Rule 56.1 | JA168-170 |
| 02/05/15 | District Court Order and Opinion | JA171-216 |
| 03/03/15 | Notice of Appeal | JA217-218 |

CLOSED,APPEAL,ECF

## U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:13–cv–02115–RWS

| | |
|---|---|
| The New York State Rifle &Pistol Association, Inc. et al v. The City of New York et al | Date Filed: 03/29/2013 |
| Assigned to: Judge Robert W. Sweet | Date Terminated: 02/09/2015 |
| Cause: 28:1331cv Fed. Question: Other Civil Rights | Jury Demand: None |
| | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

| Date Filed | # | Docket Text |
|---|---|---|
| 03/29/2013 | 1 | COMPLAINT against The City of New York, The New York City Police Department. (Filing Fee $ 350.00, Receipt Number 465407005544)Document filed by The New York State Rifle &Pistol Association, Inc., Jose Anthony Irizarry, Efrain Alvarez, Romolo Colantone.(jd) (Entered: 04/01/2013) |
| 03/29/2013 | | SUMMONS ISSUED as to The City of New York, The New York City Police Department. (jd) (Entered: 04/01/2013) |
| 03/29/2013 | | Magistrate Judge Michael H. Dolinger is so designated. (jd) (Entered: 04/01/2013) |
| 03/29/2013 | | Case Designated ECF. (jd) (Entered: 04/01/2013) |
| 04/18/2013 | 2 | NOTICE OF APPEARANCE by Michelle L. Goldberg–Cahn on behalf of The City of New York, The New York City Police Department (Goldberg–Cahn, Michelle) (Entered: 04/18/2013) |
| 04/23/2013 | 3 | ANSWER to 1 Complaint,. Document filed by The City of New York, The New York City Police Department.(Goldberg–Cahn, Michelle) (Entered: 04/23/2013) |
| 04/29/2013 | 4 | AFFIDAVIT OF SERVICE of Summons and Complaint,. The New York City Police Department served on 4/3/2013, answer due 4/24/2013. Service was accepted by Eileen Faherty, Esq.. Document filed by The New York State Rifle &Pistol Association, Inc.; Jose Anthony Irizarry; Efrain Alvarez; Romolo Colantone. (Stapleton, Brian) (Entered: 04/29/2013) |
| 04/29/2013 | 5 | AFFIDAVIT OF SERVICE of Summons and Complaint,. Service was accepted by P.A.A. D. Perry – Clerk. Document filed by The New York State Rifle &Pistol Association, Inc., Jose Anthony Irizarry, Efrain Alvarez, Romolo Colantone. (Stapleton, Brian) (Entered: 04/29/2013) |
| 04/29/2013 | 6 | AFFIDAVIT OF SERVICE of Summons and Complaint,. The City of New York served on 4/3/2013, answer due 4/24/2013. Service was accepted by Dmitriy Aronov. Document filed by The New York State Rifle &Pistol Association, Inc.; Jose Anthony Irizarry; Efrain Alvarez; Romolo Colantone. (Stapleton, Brian) (Entered: 04/29/2013) |
| 05/01/2013 | 7 | AMENDED COMPLAINT amending 1 Complaint, against The City of New York, The New York City Police Department.Document filed by The New York State Rifle &Pistol Association, Inc., Jose Anthony Irizarry, Efrain Alvarez, Romolo Colantone. Related document: 1 Complaint, filed by Jose Anthony Irizarry, Romolo Colantone, The New York State Rifle &Pistol Association, Inc., Efrain Alvarez.(mro) (Entered: 05/03/2013) |
| 05/07/2013 | 8 | **FILING ERROR – DEFICIENT DOCKET ENTRY –** MOTION for Preliminary Injunction. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. (Attachments: # 1 Memo of Law in Support of Motion for Prelim Injunction, # 2 Exhibit A: Affidavit of Romolo Colantone, # 3 Exhibit B: Affidavit of Jose Irizarry, # 4 Exhibit C: Affidavit of Efrain Alvarez)(Stapleton, Brian) Modified on 5/7/2013 (db). (Entered: 05/07/2013) |

| 05/07/2013 | | ***NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Brian Thomas Stapleton to RE–FILE Document 8 MOTION for Preliminary Injunction. ERROR(S): Supporting Documents are filed separately, each receiving their own document #. (db) (Entered: 05/07/2013) |
| 05/07/2013 | 9 | MOTION for Preliminary Injunction. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc..(Stapleton, Brian) (Entered: 05/07/2013) |
| 05/07/2013 | 10 | MEMORANDUM OF LAW in Support re: 9 MOTION for Preliminary Injunction.. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. (Attachments: # 1 Exhibit A: Affidavit of Romolo Colantone, # 2 Exhibit B: Affidavit of Jose Irrizarry, # 3 Exhibit C: Affidavit of Efrain Alvarez)(Stapleton, Brian) (Entered: 05/07/2013) |
| 05/10/2013 | 11 | ORDER: Set Deadlines/Hearing as to 9 MOTION for Preliminary Injunction. All motion papers shall be served in accordance with Local Rule 6.1.( Motion Hearing set for 6/5/2013 at 12:00 PM in Courtroom 18C, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet.) (Signed by Judge John F. Keenan, Part I on 5/9/2013) (cd) (Entered: 05/10/2013) |
| 05/21/2013 | | Minute Entry for proceedings held before Judge Robert W. Sweet: Interim Pretrial Conference held on 5/21/2013. (Defendant did not show) (js) (Entered: 05/23/2013) |
| 05/23/2013 | 12 | ORDER: On the assumption that no factual dispute exists between the parties, Plaintiffs' motion for a preliminary injunction will be heard on submission on a date to be determined by counsel. In the event that either party believes that a hearing is necessitated due to the existence of a factual dispute exists, that party should notify the Court. In addition, Defendants' request that their time to answer the amended complaint be stayed until such time that the Court has issued a determination on Plaintiffs' motion for a preliminary injunction is granted. This scheduling order supersedes the previous scheduling order with respect to the argument, but otherwise leaves in place the briefing schedule previously set forth. (Signed by Judge Robert W. Sweet on 5/22/2013) (cd) (Entered: 05/23/2013) |
| 05/29/2013 | 13 | AMENDED SCHEDULING ORDER: In addition, as the parties have reached an agreed upon schedule for the briefing of Plaintiff's motion for a preliminary injunction filed on dated May 7, 2013 and submitted said request to the Court in a letter dated May 14, 2013, the briefing schedule shall be as follows: Defendants' time to oppose or otherwise respond to plaintiffs' motion for a preliminary injunction is extended to June 11, 2013; and Plaintiffs' time to submit reply papers in further support of their motion for a preliminary injunction is extended to June 21, 2013. In addition, Defendants' request that their time or otherwise respond to the Amended Complaint, dated May 3, 2013, is hereby stayed until such a time as the Court has issued a determination on Plaintiffs' motion for preliminary injunction. This scheduling order supersedes the previous scheduling orders, dated May 9, 2013 and May 23, 2013. Responses due by 6/11/2013. Replies due by 6/21/2013. (Signed by Judge Robert W. Sweet on 5/28/2013) (ja) (Entered: 05/29/2013) |
| 06/11/2013 | 14 | DECLARATION of Michelle Goldberg–Cahn in Opposition re: 9 MOTION for Preliminary Injunction.. Document filed by The City of New York, The New York City Police Department. (Attachments: # 1 Exhibit A and B)(Goldberg–Cahn, Michelle) (Entered: 06/11/2013) |
| 06/11/2013 | 15 | DECLARATION of License Division Commanding Officer Andrew Lunetta in Opposition re: 9 MOTION for Preliminary Injunction.. Document filed by The City of New York, The New York City Police Department. (Attachments: # 1 Exhibit A – D, # 2 Exhibit E – K)(Goldberg–Cahn, Michelle) (Entered: 06/11/2013) |
| 06/11/2013 | 16 | MEMORANDUM OF LAW in Opposition re: 9 MOTION for Preliminary Injunction. *Defendants' Memo of Law in Opposition to Prelim Injunction Motion.* Document filed by The City of New York, The New York City Police Department. |

| | | (Goldberg–Cahn, Michelle) (Entered: 06/11/2013) |
|---|---|---|
| 06/19/2013 | 17 | MOTION for Extension of Time to File Response/Reply *to Defendant's Opposition Papers*. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc..(Stapleton, Brian) (Entered: 06/19/2013) |
| 06/24/2013 | 18 | SECOND MOTION for Extension of Time to File Response/Reply *to Defendant's Opposition Papers*. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc..(Stapleton, Brian) (Entered: 06/24/2013) |
| 06/28/2013 | 19 | MEMO ENDORSEMENT granting 17 Motion for Extension of Time to File Response/Reply re 9 MOTION for Preliminary Injunction; granting 18 Motion for Extension of Time to File Response/Reply re 9 MOTION for Preliminary Injunction. ENDORSEMENT: So ordered. Replies due by 7/2/2013. (Signed by Judge Robert W. Sweet on 6/26/2013) (ft) (Entered: 07/01/2013) |
| 07/02/2013 | 20 | REPLY MEMORANDUM OF LAW in Support re: 9 MOTION for Preliminary Injunction.. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. (Attachments: # 1 Exhibit A: Declaration of Christopher Shkreli)(Stapleton, Brian) (Entered: 07/02/2013) |
| 07/02/2013 | 21 | CONSENT MOTION for Leave to File Excess Pages. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc..(Stapleton, Brian) (Entered: 07/02/2013) |
| 09/20/2013 | 22 | OPINION: re: #103601 9 MOTION for Preliminary Injunction filed by Jose Anthony Irizarry, Romolo Colantone, The New York State Rifle &Pistol Association, Inc., Efrain Alvarez. Based on the conclusions set forth above, Plaintiffs' motion for a preliminary injunction is stayed pending the Court of Appeals' decision in Osterweil. (Signed by Judge Robert W. Sweet on 9/18/2013) (cd) Modified on 9/23/2013 (sdi). (Entered: 09/20/2013) |
| 09/24/2013 | 24 | INTERNET CITATION NOTE: Material from decision with Internet citation re: 22 Memorandum &Opinion. (sj) (Entered: 11/07/2013) |
| 10/28/2013 | 23 | ORDER: In view of Osterweil v. Bartlett, No. 167, 2013 WL 5610272 (N. Y. Oct. 15, 2013), the stay in this action is hereby vacated. (Signed by Judge Robert W. Sweet on 10/28/2013) (cd) (Entered: 10/28/2013) |
| 02/06/2014 | 25 | PRETRIAL ORDER: Counsel are directed to appear in courtroom 18C on 3–19–2014 at 4:00 pm for a pretrial conference for the purpose of resolving any outstanding discovery or other issues, and setting a time for trial. And as set forth herein. IT IS SO ORDERED. ( Pretrial Conference set for 3/19/2014 at 04:00 PM in Courtroom 18C, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet.) (Signed by Judge Robert W. Sweet on 2/06/2014) (ama) (Entered: 02/06/2014) |
| 02/18/2014 | 26 | ORDER: The stay having been vacated via order on October 28, 2013 (ECF No. 23), and no further action been taken by the parties, the motion for preliminary junction is marked withdrawn without prejudice for renewal. IT IS SO ORDERED. (Signed by Judge Robert W. Sweet on 2/12/2014) (ama) (Entered: 02/18/2014) |
| 02/24/2014 | 27 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** LETTER MOTION for Conference addressed to Judge Robert W. Sweet from Brian T. Stapleton dated 02/24/2014. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc..(Stapleton, Brian) Modified on 2/25/2014 (db). (Entered: 02/24/2014) |
| 02/25/2014 | | **\*\*\*NOTE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR. Note to Attorney Brian Thomas Stapleton to RE–FILE Document 27 LETTER MOTION for Conference addressed to Judge Robert W. Sweet from Brian T. Stapleton dated 02/24/2014. Use the event type Letter found under the event list Other Documents. (db)** (Entered: 02/25/2014) |

| | | |
|---|---|---|
| 02/25/2014 | 28 | LETTER addressed to Judge Robert W. Sweet from Brian T. Stapleton dated February 24, 2014 re: Request That Plaintiffs Motion for Preliminary Injunction Be Renewed. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc..(Stapleton, Brian) (Entered: 02/25/2014) |
| 03/04/2014 | 29 | MEMO ENDORSEMENT on re: 28 LETTER addressed to Judge Robert W. Sweet from Brian T. Stapleton dated February 24, 2014 re: Request That Plaintiff's Motion for Preliminary Injunction be Renewed. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc. ENDORSEMENT: So ordered. (Signed by Judge Robert W. Sweet on 2/28/2014) (rjm) (Entered: 03/05/2014) |
| 03/04/2014 | | Reset Hearings: Pretrial Conference set for 3/19/2014 at 04:00 PM in Courtroom 18C, U.S. Courthouse, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet. (rjm) (Entered: 03/05/2014) |
| 03/06/2014 | 30 | LETTER addressed to Judge Robert W. Sweet from Michelle Goldberg−Cahn dated March 6, 2014 re: NYSRPA v City of NY. Document filed by The City of New York, The New York City Police Department.(Goldberg−Cahn, Michelle) (Entered: 03/06/2014) |
| 03/19/2014 | | Minute Entry for proceedings held before Judge Robert W. Sweet: Interim Pretrial Conference held on 3/19/2014. Motion returnable 9/17/14 at 12:00 p.m. (Argument) (Chan, Tsz) (Entered: 03/20/2014) |
| 05/28/2014 | 31 | LETTER MOTION for Extension of Time *to File Motion and Adjust Briefing Schedule Upwards* addressed to Judge Robert W. Sweet from Michelle Goldberg−Cahn dated 05/28/2014., LETTER MOTION for Leave to File Excess Pages addressed to Judge Robert W. Sweet from Michelle Goldberg−Cahn dated 05/28/2014. Document filed by The City of New York, The New York City Police Department.(Goldberg−Cahn, Michelle) (Entered: 05/28/2014) |
| 05/30/2014 | 32 | ORDER granting 31 Letter Motion for Extension of Time. ( Cross Motions due by 7/15/2014., Reply due by 8/22/2014., Responses due by 8/8/2014); granting 31 Letter Motion for Leave to File Excess Pages. So ordered. (Signed by Judge Robert W. Sweet on 5/29/2014) (lmb) (Entered: 05/30/2014) |
| 06/05/2014 | 33 | CROSS MOTION for Summary Judgment . Document filed by The City of New York, The New York City Police Department. Responses due by 7/31/2014 Return Date set for 9/17/2014 at 12:00 PM.(Goldberg−Cahn, Michelle) (Entered: 06/05/2014) |
| 06/05/2014 | 34 | DECLARATION of Michelle Goldberg−Cahn in Support re: 33 CROSS MOTION for Summary Judgment .. Document filed by The City of New York, The New York City Police Department. (Attachments: # 1 Exhibit A through C)(Goldberg−Cahn, Michelle) (Entered: 06/05/2014) |
| 06/05/2014 | 35 | DECLARATION of NYPD Inspector Andrew Lunetta in Support re: 33 CROSS MOTION for Summary Judgment .. Document filed by The City of New York, The New York City Police Department. (Attachments: # 1 Exhibit A and B, # 2 Exhibit C through I)(Goldberg−Cahn, Michelle) (Entered: 06/05/2014) |
| 06/05/2014 | 36 | MEMORANDUM OF LAW in Support re: 33 CROSS MOTION for Summary Judgment . *and in Opposition to Plaintiffs' Motion for Preliminary Injunction*. Document filed by The City of New York, The New York City Police Department. (Goldberg−Cahn, Michelle) (Entered: 06/05/2014) |
| 06/05/2014 | 37 | RULE 56.1 STATEMENT. Document filed by The City of New York, The New York City Police Department. (Goldberg−Cahn, Michelle) (Entered: 06/05/2014) |
| 06/05/2014 | 38 | SECOND MEMORANDUM OF LAW in Opposition re: 9 MOTION for Preliminary Injunction. . Document filed by The City of New York, The New York City Police Department. (Goldberg−Cahn, Michelle) (Entered: 06/05/2014) |
| 07/15/2014 | 39 | LETTER addressed to Judge Robert W. Sweet from Christopher Bopst dated July 15, 2014 re: Enlargement of Page Limit for Memorandum of Law. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State |

| | | Rifle &Pistol Association, Inc..(Bopst, Christopher) (Entered: 07/15/2014) |
|---|---|---|
| 07/15/2014 | 40 | NOTICE OF APPEARANCE by Christopher Bopst on behalf of Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. (Bopst, Christopher) (Entered: 07/15/2014) |
| 07/15/2014 | 41 | MEMO ENDORSEMENT on re: 39 Letter, filed by Jose Anthony Irizarry, Romolo Colantone, The New York State Rifle &Pistol Association, Inc., Efrain Alvarez. ENDORSEMENT: So ordered (Signed by Judge Robert W. Sweet on 7/15/2014) (kgo) (Entered: 07/15/2014) |
| 07/15/2014 | 42 | **FILING ERROR – DEFICIENT DOCKET ENTRY** – MOTION for Summary Judgment . Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. Responses due by 8/8/2014 Return Date set for 9/17/2014 at 12:00 PM. (Attachments: # 1 Response to Defendants' Rule 56 Statement, # 2 Plaintiffs' Rule 56 Statement, # 3 Memorandum of Law, # 4 Certificate of Service)(Bopst, Christopher) Modified on 7/16/2014 (db). (Entered: 07/15/2014) |
| 07/16/2014 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Christopher Bopst to RE-FILE Document 42 MOTION for Summary Judgment . ERROR(S): Supporting Documents are filed separately, each receiving their own document #. Supporting Documents are found under the Event Type – Replies, Opposition and Supporting Documents; Rule 56.1 Statement is found under – Other Answers. First refile Motion. (db)** (Entered: 07/16/2014) |
| 07/16/2014 | 43 | CROSS MOTION for Summary Judgment *(Re-Filed)*. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. Responses due by 8/8/2014 Return Date set for 9/17/2014 at 12:00 PM.(Bopst, Christopher) (Entered: 07/16/2014) |
| 07/16/2014 | 44 | MEMORANDUM OF LAW in Support re: 42 MOTION for Summary Judgment ., 43 CROSS MOTION for Summary Judgment *(Re-Filed)*. . Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. (Bopst, Christopher) (Entered: 07/16/2014) |
| 07/16/2014 | 45 | RULE 56.1 STATEMENT. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. (Bopst, Christopher) (Entered: 07/16/2014) |
| 07/16/2014 | 46 | RESPONSE *to Defendants' Rule 56.1 Statement*. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. (Bopst, Christopher) (Entered: 07/16/2014) |
| 07/16/2014 | 47 | CERTIFICATE OF SERVICE OF NOTICE OF CROSS-MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS CROSS-MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION AND IN OPPOSITION TO DEFENDANTS CROSS-MOTION FOR SUMMARY JUDGMENT; PLAINTIFFS STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(a); and PLAINTIFFS LOCAL RULE 56.1(b) STATEMENT IN RESPONSE TO DEFENDANTS RULE 56.1(a) STATEMENT served on Michael A. Cardozo, Corporation Counsel of the City of New York, by Michelle Goldberg-Cahn, Esq. (MG 4490) on July 15, 2014. Service was accepted by ECF FILED. Service was made by ECF FILED. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. (Bopst, Christopher) (Entered: 07/16/2014) |
| 07/25/2014 | 48 | MEMO ENDORSEMENT on re: 39 Letter, filed by Jose Anthony Irizarry, Romolo Colantone, The New York State Rifle &Pistol Association, Inc., Efrain Alvarez. ENDORSEMENT: So ordered. (Signed by Judge Robert W. Sweet on 7/15/2014) (rjm) (Entered: 07/25/2014) |
| 08/06/2014 | 49 | LETTER MOTION for Extension of Time to File Response/Reply *from August 8, 2014 to August 15, 2014 on Consent* addressed to Judge Robert W. Sweet from Michelle Goldberg-Cahn dated August 6, 2014. Document filed by The City of |

| | | New York, The New York City Police Department. Return Date set for 9/17/2014 at 12:00 PM.(Goldberg–Cahn, Michelle) (Entered: 08/06/2014) |
|---|---|---|
| 08/07/2014 | 50 | MEMO ENDORSED ORDER granting 49 Letter Motion for Extension of Time to File Response/Reply. ENDORSEMENT: SO ORDERED. Responses due by 8/15/2014. Replies due by 8/29/2014. (Signed by Judge Robert W. Sweet on 8/7/2014) (ajs) (Entered: 08/07/2014) |
| 08/15/2014 | 51 | MEMORANDUM OF LAW in Opposition re: 33 CROSS MOTION for Summary Judgment ., 43 CROSS MOTION for Summary Judgment *(Re–Filed)*. *Opposition to Plaintiffs Cross Motion and Preliminary Injunction Motion and Reply in Further Support of Defendants' Cross Motion for Summary Judgment*. Document filed by The City of New York, The New York City Police Department. (Goldberg–Cahn, Michelle) (Entered: 08/15/2014) |
| 08/15/2014 | 52 | COUNTER STATEMENT TO 45 Rule 56.1 Statement. Document filed by The City of New York, The New York City Police Department. (Goldberg–Cahn, Michelle) (Entered: 08/15/2014) |
| 08/29/2014 | 53 | REPLY MEMORANDUM OF LAW in Support re: 43 CROSS MOTION for Summary Judgment *(Re–Filed)*. . Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. (Attachments: # 1 Certificate of Service)(Bopst, Christopher) (Entered: 08/29/2014) |
| 09/10/2014 | 54 | LETTER MOTION to Adjourn Conference addressed to Judge Robert W. Sweet from Brian T. Stapleton dated September 10, 2014. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc..(Stapleton, Brian) (Entered: 09/10/2014) |
| 09/12/2014 | 55 | MEMO ENDORSED ORDER granting 54 Letter Motion to Adjourn Conference. ENDORSEMENT: October 8th. So ordered. (Signed by Judge Robert W. Sweet on 9/11/2014) (ajs) (Entered: 09/12/2014) |
| 10/08/2014 | | Minute Entry for proceedings held before Judge Robert W. Sweet: Oral Argument held on 10/8/2014 re: 33 CROSS MOTION for Summary Judgment . filed by The City of New York, The New York City Police Department, 43 CROSS MOTION for Summary Judgment *(Re–Filed)*. filed by Jose Anthony Irizarry, Romolo Colantone, The New York State Rifle &Pistol Association, Inc., Efrain Alvarez. (sc) (Entered: 10/14/2014) |
| 02/05/2015 | 56 | OPINION #105204 re: 9 MOTION for Preliminary Injunction. filed by Jose Anthony Irizarry, Romolo Colantone, The New York State Rifle &Pistol Association, Inc., Efrain Alvarez, 33 CROSS MOTION for Summary Judgment . filed by The City of New York, The New York City Police Department, 43 CROSS MOTION for Summary Judgment *(Re–Filed)*. filed by Jose Anthony Irizarry, Romolo Colantone, The New York State Rifle &Pistol Association, Inc., Efrain Alvarez. Based on the conclusions set forth above, the Plaintiffs' motions for summary judgment and preliminary injunction are denied and the Defendants' cross motions for summary judgment dismissing the Amended Complaint is granted. It is so ordered. (See Order.) (Signed by Judge Robert W. Sweet on 2/4/2015) (ajs) Modified on 2/10/2015 (soh). (Entered: 02/05/2015) |
| 02/05/2015 | | Transmission to Judgments and Orders Clerk. Transmitted re: 56 Memorandum &Opinion, to the Judgments and Orders Clerk. (ajs) (Entered: 02/05/2015) |
| 02/09/2015 | 57 | CLERK'S JUDGMENT: That for the reasons stated in the Court's Opinion dated February 4, 2015, Plaintiffs' motion for summary judgment and preliminary injunction are denied and the Defendants' cross–motion for summary judgment dismissing the Amended Complaint is granted. (Signed by Clerk of Court Ruby Krajick on 2/9/2015) (Attachments: # 1 Notice of Right to Appeal, # 2 Notice of Right to Appeal)(dt) (Entered: 02/09/2015) |
| 03/03/2015 | 58 | NOTICE OF APPEAL from 57 Clerk's Judgment, 56 Memorandum &Opinion,,,,. Document filed by Efrain Alvarez, Romolo Colantone, Jose Anthony Irizarry, The New York State Rifle &Pistol Association, Inc.. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Lerner, Matthew) |

| | | |
|---|---|---|
| | | (Entered: 03/03/2015) |
| 03/03/2015 | | Appeal Fee Due: for 58 Notice of Appeal. Appeal fee due by 3/17/2015. (tp) (Entered: 03/04/2015) |
| 03/04/2015 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 58 Notice of Appeal. (tp) (Entered: 03/04/2015) |
| 03/04/2015 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files *(ONLY)* for 58 Notice of Appeal, filed by Jose Anthony Irizarry, Romolo Colantone, The New York State Rifle &Pistol Association, Inc., Efrain Alvarez were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/04/2015) |
| 03/17/2015 | | Appeal Fee Payment: for 58 Notice of Appeal,. Filing fee $ 505.00, receipt number 0208−10709367. (Lerner, Matthew) (Entered: 03/17/2015) |

**JA7**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK STATE RIFLE                )
& PISTOL ASSOCIATION, ROMOLO            )    Case Number: 1:13-cv-2115-RWS
COLANTONE, EFRAIN ALVAREZ, and          )
JOSE ANTHONY IRIZARRY,                  )
                                        )    **AMENDED**
                        Plaintiffs,     )    **COMPLAINT**
        -against-                       )
                                        )
THE CITY OF NEW YORK,                   )
THE NEW YORK CITY POLICE,               )
DEPARTMENT LICENSE DIVISION,            )
                                        )
                        Defendants,     )
_____)

RECEIVED
MAY 01 2013
U.S.D.C.
WP

### AMENDED COMPLAINT

**COME NOW** the Plaintiffs, THE NEW YORK STATE RIFLE & PISTOL

ASSOCIATION, ROMOLO COLANTONE, EFRAIN ALVAREZ and JOSE ANTHONY

IRIZARRY, by and through their undersigned counsel, and complain of the Defendants as follows:

### THE PARTIES

1.      Plaintiff Romolo Colantone is a natural person and a citizen of the United States

residing in Staten Island, New York.  Mr. Colantone is the holder of a Premises Residence firearms

license issued by the City of New York.

2.      Plaintiff Efrain Alvarez is a natural person and a citizen of the United States residing

in Bronx County, New York.  Mr. Alvarez is the holder of a Premises Residence firearms license

issued by the City of New York.  Mr. Alvarez also holds non-resident firearm permits issued by the

states of New Hampshire, Connecticut, Florida, Virginia, and Utah.

3.      Plaintiff Jose Anthony ("Tony") Irizarry is a natural person and a citizen of the

United States residing in Bronx County, New York.  Mr. Irizarry is the holder of a Premises

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

1

**JA8**

Residence firearms license issued by the City of New York.  Mr. Irizarry also holds non-resident firearm permits issued by the states of Pennsylvania and Utah.

4.      Plaintiff THE NEW YORK STATE RIFLE AND PISTOL ASSOCIATION ("NYSRPA") is a New York not-for-profit corporation having its primary place of business at 90 South Swan Street in Albany, NY.  The NYSRPA is New York state's largest and the nation's oldest firearms advocacy organization. Since 1871 the NYSRPA has been dedicated to the preservation of Second Amendment rights, promotion of firearm safety, education and training, and the shooting sports. Members of the NYSRPA participate in numerous rifle and pistol matches within and without the City of New York on an annual basis.  The NYSRPA brings this action on behalf of itself and its members.

5.      Defendant CITY OF NEW YORK is a municipal entity organized under the Constitution and laws of the State of New York.

6.      Defendant NEW YORK CITY POLICE DEPARTMENT LICENSE DIVISION is a sub-division of the CITY OF NEW YORK.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983.

8.      Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

### About the NYC Permit Restriction

9.      Under New York law, lawful possession of a firearm within one's home or place of business requires a permit. Penal Law §§ 265.01, 265.20(a)(3), 400.   In the absence of a permit, possession of a firearm within one's home or place of business is a Class A Misdemeanor

punishable by up to one (1) year in prison, a $1,000 fine, or both. Penal Law §§ 265.01, 60.01(30), 70.15.

10.     New York City ("NYC") residents who wish to possess a firearm must first obtain a license from the New York City Police Department ("NYCPD").  There are several different types of licenses that can be obtained in NYC: premises (residence or business), carry business, limited carry business, carry guard / gun custodian, and special carry (special carry business and special carry guard / gun custodian).  Applicants for any of these licenses must complete a detailed application form and undergo an interview with a licensing officer.  NYC firearms licenses must be periodically renewed and are subject to revocation for various reasons (including violations of the terms of the license itself).  It is the responsibility of the NYCPD's License Division to issue, renew, monitor, and revoke firearm permits for New York City residents.

**About the Plaintiffs**

11.     Plaintiff Romolo Colantone applied for and received a NYC firearms license approximately thirty three (33) years ago, in the year 1979.  At that time, the license was known as a "target" license.  Mr. Colantone's license was regularly renewed, and is now known as a Premises Residence license.

12.     Mr. Colantone regularly traveled outside of both New York City and New York State to attend regional indoor and outdoor competitive shooting events, such as the NRA Sectional Championships (paper target) in Roslyn, New York and Old Bridge, New Jersey, and the Steel Challenge Championships (steel target) in Old Bridge, New Jersey.

13.     Mr. Colantone's family has owned land in the Catskills region of New York for thirty two (32) years.  Eight (8) years ago, Mr. Colantone built a second family home in Hancock, New York.  Mr. Colantone and his family visit their land and second home several times each year.

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

They enjoy hunting and fishing during in-season, and also spend summer vacations on the property. The Colantone's Hancock house is located in a remote area, and as such presents a threat to the safety of Mr. Colantone and his family while there.

14.     Mr. Alvarez applied for and received a NYC firearms license approximately twenty five (25) years ago.  At that time, the license was known as a "target" license.  Mr. Alvarez's license was regularly renewed, and is now known as a Premises Residence license.

15.     Mr.  Alvarez regularly traveled outside of both New York City and New York State to attend regional indoor and outdoor competitive shooting events such as the NRA Sectional Championships (paper target) in Roslyn, New York and Old Bridge, New Jersey, the Steel Challenge Championships (steel target) in Old Bridge, New Jersey.

16.     Mr. Irizarry applied for and received a NYC Premises Residence firearms license in the year 2004.

17.     Mr.  Irizarry regularly traveled outside of both New York City and New York State to attend regional indoor and outdoor competitive shooting events, such as the NRA Sectional Championships (paper target) in Roslyn, New York and Old Bridge, New Jersey, the Steel Challenge Championships (steel target) in Old Bridge, New Jersey.

**About 38 RCNY § 5-23**

18.     On or about May 31st, 2001, Title 38 of the Rules of the City of New York was amended to read in pertinent part as follows:

> *§5-23   Types of Handgun Licenses.*
>
> *(a)     **Premises License-Residence or Business.** This is a restricted handgun license, issued for the protection of a business or residence premises.*

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

4

**JA11**

*(1)   The handguns listed on this license may not be removed from the address specified on the license except as otherwise provided in this chapter.*

*(2)   The possession of the handgun for protection is restricted to the inside of the premises which address is specified on the license.*

*(3)  To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, and in a locked container, the ammunition to be carried separately.*

*(4)  A licensee may transport his/her handgun(s) directly to and from an authorized area designated by the New York State Fish and Wildlife Law and in compliance with all pertinent hunting regulations, unloaded, in a locked container, the ammunition to be carried separately, after the licensee has requested and received a "Police Department – City of New York Hunting Authorization" Amendment attached to her/his license.*

19.    On May 8th, 2012 plaintiff Romolo Colantone wrote to Deputy Inspector Andrew Lunetta of the NYCPD License Division and inquired of his ability under the terms of his NYC Premises Residence license to participate in the 2012 World Class Steel Northeast Regional Championship, to be held at the Old Bridge Rifle & Pistol Club in Old Bridge, New Jersey on June 1st, 2012. (A copy of Mr. Colantone's 05/08/12 letter is attached hereto as Exhibit A).

20.    In a letter dated May 15th, 2012, Deputy Inspector Lunetta advised Mr. Colantone that:

*The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner. Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence License Holders are those located in New York City.*

*Premises license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of City of New York designated by the New York State Fish and Wildlife Law for the purpose of hunting: no areas outside of New York State are permissible for this purpose.*

> *These rules do not apply to New York City issued long gun permits. Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried separately.*

(A copy of Deputy Inspector Lunetta's 05/15/12 letter is attached hereto as <u>Exhibit B</u>).

## About the Impact of the Licensing Restriction on the Plaintiffs and the Public

21.     As mentioned above, it was Mr. Colantone's intention to attend the Steel Challenge regional shooting competition in Old Bridge, NJ on June 1st, 2012.   However, in direct response to Deputy Inspector Lunetta's May 15th, 2012 letter, Mr. Colantone did not attend the Old Bridge competition.  Mr. Colantone has refrained from attending any shooting events with his handgun that take place outside the City of New York since May 15th, 2012, for fear of the revocation of his Premises Residence license, and also for fear of arrest, criminal prosecution and imprisonment.

22.     For these same reasons, Mr. Colantone has also refrained from taking his handgun to his Hancock home for protection since receiving Deputy Inspector Lunetta's May 15th, 2012 letter.

23     Efrain Alvarez intended to attend the Steel Challenge regional shooting competition on Old Bridge, NJ on June 1st, 2012, as well as the IDPA Postal Matches hosted by the Metacon Gun Club in Simsbury, CT.   However, Mr. Alvarez was advised by the hosts of the Old Bridge competition that he was not allowed to attend at and compete at future Old Bridge competitions because the enforcement of  38 RCNY § 5-23 by the New York City Police Department made his attendance illegal.

24.     Tony Irizarry intended to attend the Steel Challenge regional shooting competition on Old Bridge, NJ on June 1st, 2012.  However, Mr. Irizarry was advised by the hosts of the Old Bridge competition that he was not allowed to attend at and compete at future Old Bridge

competitions because the enforcement of 38 RCNY § 5-23 by the New York City Police Department made his attendance illegal.

25.     As a direct and proximate result, Efrain Alvarez and Tony Irizarry did not attend the Old Bridge or Simsbury competitions.   Mr. Alvarez and Mr. Irizarry have refrained from attending any shooting events that take place outside the City of New York since June of 2012, for fear of the revocation of their Premises Residence licenses, and also for fear of arrest, criminal prosecution, and imprisonment.

**About the Benefits of Shooting Sports & the Frequency of Shooting Competitions**

26.     Familiarity with firearms, and proficiency in their use, are a pre-requisite to the safe and responsible use of firearms for private and public self-defense, and the defense of one's home.

27.     Proficiency with firearms promotes public safety.  Gun owners trained in and familiar with the operations of their guns are less likely to be involved in accidental shootings, and more likely to successfully use their firearms in self-defense in case of need.

28.     Recreational and competitive sport shooting are traditional uses of firearms in the United States.  Recreational and competitive sport shooting events promote, foster and further individual proficiency in and familiarity with the safe and responsible use of firearms.

29.     The promotion of civilian marksmanship has been a priority of the federal government throughout American history, beginning with the Second Militia Act of 1792 and continuing through today with the modern implementation of the Civilian Marksmanship Program through the federally-charted Corporation for the Promotion of Rifle Practice and Firearms Safety, 36 U.S.C. § 4701, et seq.

30.     Target shooting builds understanding and respect for firearms, and teaches patience, discipline, and hand-eye coordination skills.  Shooting sports and hunting are rated among the safest

forms of recreation.  Some 40 million people of all ages safely participate in these activities across the United States each year.

31.     Gun ranges, and recreational and competitive shooting events open to the public exist in every American state.

32.     The sport of competitive target shooting is defined in large part by travel.  It is the nature and tradition of shooting competitions for a match or championship to be "hosted" by a range or gun club, and to be attended by numerous competitors from within the region.

33.     There are hundreds of indoor and outdoor competitive shooting events held across the United States each year.  In the Northeast, some of these include the Crossman Northeast Field Target Championships (held in Bloomfield, NY); the Schutzenfest Sporting Clays and Top Shot Competition (held each year in North Tonawanda, NY); the SCTP Mid-Atlantic Regional Olympic Trap Championships (held each year in Dalmatia, PA); and the World Class Steel Regional Championships (held each year in either Roslyn, NY or Old Bridge, NJ).

34.     Defendant City of New York recognizes the value of firearms training and proficiency, as evidenced by 38 RCNY § 5-23(a)(3)'s stated purpose of maintaining "proficiency with the handgun."  In addition, 38 RCNY § 5-22(14) (captioned "licensee responsibilities") states that "the licensee should endeavor to engage in periodic handgun practice at an authorized small arms range/shooting club." Id.

35.     Despite the fundamental importance of training and practice as a pre-requisite to the safe and responsible use of a firearm, only one (1) shooting range that is open to the public exists within the borders of New York City: the West Side Pistol & Rifle Range ("WSPRR") located at 20 West 20th Street in Manhattan.  New visitors to the WSPRR are required to schedule appointments

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

8

**JA15**

at least five (5) days in advance of visiting the range, and must undergo a separate criminal background check prior to gaining entry to the facility.

36.     The WSPRR does not hold any form of competitive shooting matches on a regular basis.

37.     New York City residents who wish to abide by 38 RCNY § 5-23, but who are not able to obtain practice time at the WSPRR are faced with the choice of either not practicing safe handgun skills under any circumstances, or otherwise applying for membership in a private gun club located within New York City's borders.  Membership in such clubs is a privilege, not a right, and is in no way guaranteed.  In addition, obtaining membership in such club entails the paying of application fees, membership fees, and regular dues to the club.

38.     In this manner, 38 RCNY § 5-23 imposes a financial burden on the exercise of a fundamental constitutional right, and forces New York City residents to associate with certain groups of individuals solely for the purposes of exercising a fundamental constitutional right.

## COUNT I

### RIGHT TO KEEP AND BEAR ARMS
### U.S. CONSTITUTION, AMENDMENTS II AND XIV
### 42 U.S.C. § 1983

39.     Paragraphs 1 though 38 are hereby incorporated as if fully repeated herein.

40.     The Second Amendment, which applies against the City of New York and the NYCPD License Division by operation of the Fourteenth Amendment, secures the plaintiffs' individual and fundamental "core" right to possess and carry a firearm for the purposes of public and private defense, and the defense of hearth and home.

41.     The safe, responsible and meaningful exercise of the Second Amendment right by an individual requires unrestricted access to gun ranges and shooting events in order to practice and

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

9

JA16

perfect safe gun handling skills.  The Second Amendment secures the right to operate firearms at a range for the purposes of learning about firearms, gaining proficiency with firearms, and obtaining any and all training required as a condition of firearms ownership, recreation, and competition.

42.     38 RCNY § 5-23 impermissibly restricts a New York City resident's exercise of the Second Amendment right by completely prohibiting that resident from practicing safe gun handling at a target range or shooting event that is located beyond the borders of NYC.

43.     By limiting New York City residents to attending shooting events within New York City borders, when in reality no shooting events take place within New York City borders, 38 RCNY § 5-23 effectuates a total ban on a New York City resident's ability to attend shooting events.

44.     By prohibiting attendance at shooting events, and by limiting New York City residents such as Romolo Colantone, Efrain Alvarez, and Tony Irizarry to practicing at the single gun range open to the public within the City of New York, 38 RCNY § 5-23 defeats their ability to practice, hone and perfect safe gun handling skills.

45.     38 RCNY § 5-23 impedes gun ownership itself and frustrates its own stated goal of obtaining "proficiency with the handgun" by unreasonably limiting, and effectively barring, the plaintiffs' access to the useful information and experience inherently necessary to the exercise of Second Amendment rights.

46.     By prohibiting New York City residents like Romolo Colantone from transporting duly licensed and lawfully possessed firearms to second homes for purposes of the defense of person, home and property, 38 RCNY § 5-23 violates the plaintiffs' fundamental and "core" Second Amendment right to possess handguns for the defense of hearth and home.

47.     The defendants have no compelling interest in prohibiting New York City residents from practicing at shooting ranges or recreational or competitive shooting events located outside the borders of New York City, or from possessing handguns to defend their homes, persons and property.  Even assuming, *arguendo*, that such a compelling interest exists, 38 RCNY § 5-23 is not the least restrictive means of achieving that interest.

48.     The defendants do not have an important or substantial governmental interest in prohibiting New York City residents from practicing at shooting ranges or recreational or competitive shooting events located outside the borders of New York City, or from possessing handguns to defend their homes, persons and property.  Even assuming, *arguendo*, that such a compelling interest exists, 38 RCNY § 5-23 is not the least restrictive means of achieving that interest.

49.     In the foregoing ways, and for the foregoing reasons, 38 RCNY § 5-23 is unreasonably and unconstitutionally restrictive, and improperly infringes upon the exercise of the plaintiffs' "core" Second Amendment right.

50.     By enacting and enforcing 38 RCNY § 5-23 in violation of the plaintiffs' constitutional rights under the Second Amendment, the defendants have caused the plaintiffs irreparable harm.

51.     By enacting and enforcing 38 RCNY § 5-23 the defendants, acting under the color of law, have deprived New York City residents, including the plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the U.S. Constitution. Plaintiffs are thereby damaged in violation of 42 U.S.C. § 1983.

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

11

**JA18**

52.     Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of the defendants' unconstitutional customs, policies and practices.

## COUNT II

### RIGHT TO INTERSTATE AND INTRASTATE TRAVEL
### U.S. CONSTITUTION, ARTICLE IV, § 2 and AMENDMENT XIV
### 18 U.S.C. § 926A, 42 U.S.C. § 1983

53.     Paragraphs 1 though 52 are hereby incorporated as if fully repeated herein.

54.     The U.S. Constitution protects a citizen's fundamental right to travel within the United States.  This fundamental constitutional right has, at times, been called "the right to free movement."

55.     The fundamental constitutional right to free movement finds its origin in both the Privileges and Immunities Clause of Article IV, § 2 of the U.S. Constitution, and the Privileges and Immunities and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution.

56.     U.S. citizens also possess a fundamental constitutional right to travel freely within one's own state.

57.     Individuals who lawfully possess firearms have a federal statutory right to travel both interstate and intrastate with those firearms under 18 U.S.C. § 926A ("the Firearms Owners Protections Act").

58.     By prohibiting New York City residents such as the plaintiffs from attending at shooting ranges or shooting events located beyond the borders of New York City, 38 RCNY § 5-23 violates the plaintiffs' fundamental constitutional rights to interstate and intrastate travel, and also their federal statutory rights to lawfully travel with firearms under the Firearms Owners Protections Act.

59.     The defendants have no compelling interest in prohibiting New York City residents from exercising their fundamental rights to intrastate travel or interstate travel, or in prohibiting New York City residents from lawfully traveling with their firearms beyond the borders of New York City.  Even assuming, *arguendo*, that such a compelling interest exists, 38 RCNY § 5-23 is not the least restrictive means of achieving such interest.

60.     The defendants do not have an important or substantial governmental interest in prohibiting New York City residents from exercising their fundamental rights to intrastate travel or interstate travel, or in prohibiting New York City residents from lawfully traveling with their firearms beyond the borders of New York City.  Even assuming, *arguendo*, that such an important or substantial governmental interest exists, 38 RCNY § 5-23 is not substantially related to achieving this interest.

61.     In the foregoing ways, and for the foregoing reasons, 38 RCNY § 5-23 is unreasonably and unconstitutionally restrictive, and improperly infringes upon the plaintiffs' exercise of the constitutional right to interstate travel and intrastate travel, and the plaintiffs' statutory right to travel with legally possessed firearms.

62.     By enacting and enforcing 38 RCNY § 5-23 in violation of the plaintiffs' rights constitutional right to interstate travel and intrastate travel, and the plaintiffs' statutory right to travel with legally possessed firearms, the defendants have caused the plaintiffs irreparable harm.

63.     By enacting and enforcing 38 RCNY§ 5-23 the defendants, acting under the color of law, have deprived New York City residents, including the plaintiffs, of their constitutional right to interstate travel and intrastate travel in violation of the Privileges and Immunities Clause of Article IV, § 2 of the U.S. Constitution, and the Privileges and Immunities and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution,  and their statutory right to travel with legally

possessed firearms under the Firearms Owners Protections Act.  Plaintiffs are thereby damaged in

violation of 42 U.S.C. § 1983.

64.     Plaintiffs are therefore entitled to declaratory and preliminary and permanent

injunctive relief against the continued enforcement and maintenance of the defendants'

unconstitutional customs, policies and practices.

## COUNT III

**FREE SPEECH**
**U.S. CONSTITUTION, AMENDMENTS I and XIV**
**42 U.S.C. § 1983**

65.     Paragraphs 1 though 64 are hereby incorporated as if fully repeated herein.

66.     The First Amendment, which applies against the defendant City of New York and

New York City Police Department by operation of the Fourteenth Amendment, secures the

plaintiffs' fundamental right to freedom of association, and also the right to receive education and

instruction in the use of firearms, including the right to receive the training recognized by the

defendants as a prerequisite to owning firearms.

67.     By enacting and enforcing a rule that prohibits the plaintiffs' right to travel to and

attend at shooting ranges and shooting competitions outside the City of New York, and by forcing

New York City residents to join private gun clubs (and incur the fees and expenses related to such

private memberships) in order to exercise a fundamental constitutional right, the defendants  have

violated the plaintiffs' right to free speech and freedom of association in violation of the First

Amendment to the U.S. Constitution.

68.     The defendants have no compelling interest in prohibiting New York City residents

from traveling to extra-territorial gun ranges, from participating in extra-territorial competitive

shooting events, and forcing  New York City residents to join private gun clubs (and incur the fees

and expenses related to such private memberships) in order to exercise a fundamental constitutional right.  Even assuming, *arguendo*, that such a compelling interest exists, 38 RCNY § 5-23 is not the least restrictive means of achieving such interest.

69.     The defendants do not have an important or substantial governmental interest in prohibiting New York City residents from traveling to extra-territorial gun ranges, in prohibiting New York City residents from participating in extra-territorial competitive shooting events, and in forcing New York City residents to join private gun clubs (and incur the fees and expenses related to such private memberships) in order to exercise a fundamental constitutional right.  Even assuming, *arguendo*, that such an important or substantial interest exists, 38 RCNY § 5-23 is not substantially related to achieving such interest.

70.     In the foregoing ways, and for the foregoing reasons, 38 RCNY § 5-23 is unreasonably and unconstitutionally restrictive, and improperly infringes upon the plaintiffs' exercise of the constitutional right to free speech and freedom of association.

71.     By enacting and enforcing 38 RCNY § 5-23 in violation of the plaintiffs' right to free speech and freedom of association in violation of the First Amendment to the U.S. Constitution, the defendants have causes the plaintiffs irreparable harm.

72.     By enacting and enforcing 38 RCNY§ 5-23 the defendants, acting under the color of law, have deprived New York City residents, including the plaintiffs, of their constitutional right to free speech and freedom of association in violation of the First Amendment to the U.S. Constitution.  Plaintiffs are thereby damaged in violation of 42 U.S.C. § 1983.

73.     Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of the defendants' unconstitutional customs, policies and practices.

<u>**COUNT IV**</u>

**COMMERCE CLAUSE**
**U.S. CONSTITUTION, ARTICLE I, § 8, CLAUSE 3**
**42 U.S.C. § 1983**

74.     Paragraphs 1 though 73 are hereby incorporated as if fully repeated herein.

75.     The Commerce Clause provides that "the Congress shall have Power . . . to regulate Commerce . . . among the several States." Art. I, § 8, cl. 3. Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a "negative" aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.

76.     The Framers granted Congress plenary authority over interstate commerce in order to avoid economic Balkanization amongst the States.  The constitutional principle that drives resistance to economic protectionism is that the economic unit in the United States is the nation itself.  It is the nation alone has the gamut of powers necessary to control of the economy.  A corollary to this principle is that the states are not separable economic units.

77.     Restricting NYC residents to using only those firing ranges that exist within NYC borders does nothing to promote proficiency in the use of firearms, enhance awareness of firearms safety principles, or encourage the safe and responsible use of firearms.

78.     The defendants have no evidence showing that the physical facilities of the gun ranges within NYC borders firearms are safer than the facilities of gun ranges that exist outside of NYC borders.  Similarly, the defendants lack any proof  that the safety training principles utilized by NYC gun ranges are so advanced and/or unique that (when compared to those utilized by non-NYC ranges) requiring a NYC resident to practice firearms safety at a NYC gun range produces greater firearms proficiency and/or greater awareness of firearms safety in NYC residents.  The

defendants have no proof that requiring NYC residents to use only NYC gun ranges has reduced (or even impacted) the incidence of intentional or accidental gun violence within NYC borders. Enacting and enforcing 38 RCNY § 5-23 therefore produces no putative local benefits to NYC residents and serves no legitimate local public interest.

79.     In enacting and enforcing  38 RCNY § 5-23 the defendants seek to regulate and control an activity that takes place wholly outside of the borders of New York City and New York State: attendance at non-NYC approved gun ranges and participation in competitive sport shooting events beyond NYC's borders. The Commerce Clause prohibits the application of a statute or regulation to commerce that occurs wholly beyond a municipality's or state's borders.

80.     Gun ranges that operate beyond NYC borders welcome NYC residents who are lawfully licensed to carry firearms. The sponsors of competitive shooting events that occur in other states do the same.  The issues of whether a NYS resident who is legally permitted to carry a firearm in NYC can practice target shooting at, e.g., a Yonkers gun range, or can attend a competitive shooting event in, e.g., Old Bridge, NJ are properly resolved by the local legislatures of Yonkers or Old Bridge, or the state legislature of New Jersey.  The City of New York has no say in such matters. As such, the enactment and enforcement of 38 RCNY § 5-23 exceeds the inherent limits of the defendants' authority and is invalid regardless of whether § 5-23's extraterritorial reach was intended by the City of New York.

81.     To the extent that the legislative bodies of municipalities and states beyond the borders of NYC or NYS have decided that NYS residents who legally possess firearms *are* welcome to attend local gun ranges and shooting events, the enactment and enforcement of 38 RCNY § 5-23 by the defendants impermissibly interferes with these legitimate local legislative decisions.   This interference violates the Commerce Clause.

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

17

JA24

82.     The defendants have no compelling interest in prohibiting New York City residents from traveling to extra-territorial gun ranges and prohibiting them from participating in extra-territorial competitive shooting events.  Even assuming, *arguendo*, that such a compelling interest exists, 38 RCNY § 5-23 is not the least restrictive means of achieving such interest.

83.     The defendants do not have an important or substantial governmental interest in prohibiting New York City residents from traveling to extra-territorial gun ranges, or in prohibiting New York City residents from participating in extra-territorial competitive shooting events.   Even assuming, *arguendo*, that such an important or substantial interest exists, 38 RCNY § 5-23 is not substantially related to achieving such interest.

84.     By enacting and enforcing a rule that prohibits the plaintiffs' right to travel to and attend at shooting ranges and shooting competitions outside the City of New York and the State of New York, the defendants have violated the plaintiffs' constitutional rights under the Commerce Clause and have caused the plaintiffs irreparable harm.

85.     By enacting and enforcing 38 RCNY§ 5-23 the defendants, acting under the color of law, have deprived New York City residents, including the plaintiffs, of their rights under the Commerce Clause in violation of Article I, § 8, clause 3 of the U.S. Constitution.  Plaintiffs are thereby damaged in violation of 42 U.S.C. § 1983.

86.     Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of the defendants' unconstitutional customs, policies and practices.

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

**JA25**

## PRAYER FOR RELIEF

Plaintiffs request that judgment be entered in their favor and against the Defendants as follows:

1.      An order preliminarily and permanently enjoining the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 38 RCNY § 5-23's prohibition from traveling beyond the borders of the City of New York to attend at a gun range, shooting competition, or to use a lawfully possessed and licensed firearm for the purposes of defending one's home, person, and/or property;

2.      Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

3.      Declaratory relief consistent with the injunction;

4.      Costs of suit; and

5.      Any other such further relief as the Court deems just and proper.

Dated:  New York, New York
        May 1, 2013

GOLDBERG SEGALLA LLP

By: _____
Brian T. Stapleton, Esq.
Matthew S. Lerner, Esq.
*Attorneys for Plaintiffs*
11 Martine Avenue, Suite 750
White Plains, New York 10606-1934
(914) 798-5400
bstapleton@goldbergsegalla.com
mlerner@goldbergsegalla.com

# Exhibit A



POLICE DEPARTMENT

**Commanding Officer, License Division**
**One Police Plaza, Rm. 110A**
**New York, NY  10038**
Tel:  (646) 610-5560
Fax:  (646) 610-6399

May 15, 2012

Mr. Romolo Colantone
129 Robinson Avenue
Staten Island, NY  10312-06213

Dear Mr. Colantone:

This is in response to your question about whether participation in a handgun competition in New Jersey would be in compliance with the terms and conditions of your New York City Premise Residence license. With the exception noted below, New York City Premises Residence licenses are only valid in the City of New York.

The following sections from the Rules of the City of New York regarding Premise Residence licenses relate to your question:

38 RCNY § 5-23 (a) (3) To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, in a locked container, the ammunition to be carried separately.

38 RCNY § 5-23 (a) (4) A licensee may transport her/his handgun(s) directly to and from an authorized area designated by the New York State Fish and Wildlife Law and in compliance with all pertinent hunting regulations, unloaded, in a locked container, the ammunition to be carried separately, after the licensee has requested and received a "Police Department -- City of New York Hunting Authorization" Amendment attached to her/his license.

The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner. Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence license holders are those located in New York City.

Premise license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of the City of New

York designated by the New York State Fish and Wildlife Law for the purpose of hunting; no areas outside of New York State are permissible for this purpose.

These rules do not apply to New York City issued long gun permits. Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried separately.

I hope that this information is helpful to you.

Very truly yours,

Andrew Lunetta
Deputy Inspector

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK STATE RIFLE AND PISTOL )
ASSOCIATION, INC., et al., )
               )
       Plaintiffs, )  Case No.: 1:13-cv-2115-RWS
               )
     v. )    **AFFIDAVIT**
               )
THE CITY OF NEW YORK, et al., )
               )
       Defendants. )
_____ )

STATE OF NEW YORK    )
           ) SS.:
COUNTY OF RICHMOND   )

     **ROMOLO COLANTONE** being duly sworn, hereby states the following

pursuant to penalties of perjury:

     1.    I am over the age of eighteen (18) and believe in the nature of an oath.

     2.    I am a natural person and a citizen of the United States, residing in

Richmond County, New York.

     3.    I am a holder of a Premises Residence firearms license issued by the City

of New York. I applied for this license approximately thirty-three (33) years ago, in the

year 1979. At that time, the license was known as a "target" license. My license was

regularly renewed, and is now known as a Premises Residence license. I also hold a non-

resident firearm permits issued by the state of Utah.

     4.    There are numerous shooting competitions outside of both New York City

and New York State. These are regularly-held regional indoor and outdoor competitive

shooting events, such as the NRA Sectional Championships (paper target) in Roslyn,

New York and Old Bridge, New Jersey and the Steel Challenge Championships (steel

1

**JA31**

target) in Old Bridge, New Jersey. There are no shooting competitions that are held within the city limits of New York City on a regular basis.

5.     These competitions provide me with an important way to practice shooting my handgun and become more proficient with it.

6.     Last year, I intended to attend the 2012 World Class Steel Northeast Regional Championship, to be held at the Old Bridge Rifle & Pistol Club in Old Bridge, New Jersey on June 1, 2012. ("The Old Bridge Competition").   However, the hosts of the Old Bridge competition advised me beforehand that I was not allowed to attend and compete at the Old Bridge competition because the enforcement of 38 RCNY § 5-23 by the New York City Police Department ("NYCPD") made attendance with my handgun "illegal."

7.     In order to obtain greater clarification, on May 8, 2012 I wrote to the NYCPD License Division and inquired of my ability under the terms of my NYC Premises Residence license to participate in the Old Bridge competition.  (A copy of my 05/08/12 letter is attached hereto as Exhibit A).

8.     In a letter dated May 15, 2012, Deputy Inspector Andrew Lunetta of the NYC PD Licensing Division advised me that:

> The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner.   Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence License Holders are those located in New York City.
>
> Premises license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of City of New York designated by the New York State Fish and Wildlife Law for the purpose of

2

> *hunting; no areas outside of New York State are permissible for this purpose.*
>
> *These rules do not apply to New York City issued long gun permits. Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried separately.*

(A copy of Deputy Inspector Lunetta's 05/15/12 letter is attached hereto as <u>Exhibit B</u>).

9.      In direct response to Deputy Inspector Lunetta's May 15, 2012 letter, I did not attend the Old Bridge competition with my handgun.

10.      I have refrained from attending any shooting events with my handgun that take place outside of the City of New York since June 2012. I fear that my Premises Residence license will be revoked or I will be arrested, criminally prosecuted, and imprisoned if I attend any such events with my handgun outside of the City of New York.

11.      In addition, my family has owned land in the Catskills region of New York for thirty two (32) years. Eight (8) years ago, I built a second family home in Hancock, New York. My family and I visit this land and second home several times each year. We enjoy hunting and fishing during in-season, and also spend summer vacations on the property. The Colantone Hancock house is located in a remote area, and as such presents a threat to the safety of myself and my family while there.

12.      In direct response to Deputy Inspector Lunetta's May 15, 2012 letter, I have refrained from taking my handgun to my Hancock home for protection since May 15th, 2012.

3

**JA33**

13.     But for the license revocation and possibility of criminal penalties under the enforcement of 38 RCNY § 5-23, I would continue to participate in shooting competitions with my handgun outside the boundaries of New York City, such as the NRA Sectional Championships (paper target) in Roslyn, New York and Old Bridge, New Jersey and the Steel Challenge regional shooting competition in Old Bridge, New Jersey.

14.     But for the license revocation and possibility of criminal penalties under the enforcement of 38 RCNY § 5-23, I would take my handgun to my Hancock home for the protection of my person, loved ones and property.

15.     I have reviewed the foregoing statements and believe them to be true and accurate, based upon my own information and belief.


/s/ ROMOLO COLANTONE


Sworn to before me this
_30_ day of April 2013

Notary Public

JOANNE CONIGLIO
Notary Public - State of New York
No.
Qualified in ____ County 01CO4991925
Commission Expires 2/10/14

358879.1

4

**JA34**

# **Exhibit A to Colantone Affidavit**

May 8, 2012

Romolo Colantone
129 Robinson Avenue
Staten Island, New York 10312-6213
**NYPD Handgun Lic. # 100019056**

Deputy Inspector Andrew Lunetta
Commanding Officer, License Division
City of New York Police Department
One Police Plaza, Room 110A
New York, New York 10038

Re:   **Participation in Handgun
Competitions Outside New York
City**

Dear Deputy Inspector Lunetta:

For most of my life I have participated in various shooting competitions and events.  I have always ensured my compliance with all laws and requirements pertaining to the ownership, transport, and use of firearms.  When I was issued my NYPD Handgun License it specifically listed "Target" use.  Since the renewing my License around 2001 it is a Residence Premises License.  It has been my understanding that the Premises License still permitted my use of handguns at any range providing the firearms were transported in accordance with New York City and other laws and regulations.

I am registered to participate on June 1, 2012 in the 2012 World Class Steel Northeast Regional Championship (brochure attached).  This event will be held at the Old Bridge Rifle & Pistol Club in Old Bridge New Jersey.  The state of New Jersey permits participation of licensed non-resident gun owners in such matches.  Can you please clarify if my participation in this event will be in compliance with terms/restrictions of my NYPD Premise License.

Thank you.

Sincerely,

Romolo Colantone

**JA36**

# Exhibit B to Colantone Affidavit



POLICE DEPARTMENT

**Commanding Officer, License Division**
**One Police Plaza, Rm. 110A**
**New York, NY 10038**
**Tel: (646) 610-5560**
**Fax: (646) 610-6399**

May 15, 2012

Mr. Romolo Colantone
129 Robinson Avenue
Staten Island, NY 10312-06213

Dear Mr. Colantone:

This is in response to your question about whether participation in a handgun competition in New Jersey would be in compliance with the terms and conditions of your New York City Premise Residence license. With the exception noted below, New York City Premises Residence licenses are only valid in the City of New York.

The following sections from the Rules of the City of New York regarding Premise Residence licenses relate to your question:

38 RCNY § 5-23 (a) (3) To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, in a locked container, the ammunition to be carried separately.

38 RCNY § 5-23 (a) (4) A licensee may transport her/his handgun(s) directly to and from an authorized area designated by the New York State Fish and Wildlife Law and in compliance with all pertinent hunting regulations, unloaded, in a locked container, the ammunition to be carried separately, after the licensee has requested and received a "Police Department -- City of New York Hunting Authorization" Amendment attached to her/his license.

The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner. Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence license holders are those located in New York City.

Premise license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of the City of New

COURTESY • PROFESSIONALISM • RESPECT
Website: http://nyc.gov/nypd

**JA38**

York designated by the New York State Fish and Wildlife Law for the purpose of hunting; no areas outside of New York State are permissible for this purpose.

These rules do not apply to New York City issued long gun permits. Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried separately.

I hope that this information is helpful to you.

Very truly yours,

Andrew Lunetta
Deputy Inspector

**JA39**

# <u>EXHIBIT B</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THE NEW YORK STATE RIFLE AND PISTOL ASSOCIATION, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:13-cv-2115-RWS |
| v. | ) ) | **AFFIDAVIT** |
| THE CITY OF NEW YORK, et al., | ) ) | |
| Defendants. | ) ) | |

STATE OF NEW YORK          )
                                              ) SS.:
COUNTY OF BRONX          )

**JOSE ANTHONY IRIZARRY** being duly sworn, hereby states the following

pursuant to penalties of perjury:

1.       I am over the age of eighteen (18) and believe in the nature of an oath.

2.       I am a natural person and a citizen of the United States, residing in Bronx

County, New York.

3.       I am a holder of a Premises Residence firearms license issued by the City

of New York. I applied for and received this license in the year 2004.

4.       I also hold a non-resident firearm permits issued by the states of

Pennsylvania and Utah.

5.       There are numerous shooting competitions outside of both New York City

and New York State.  These are regularly-held regional indoor and outdoor competitive

shooting events, such as the NRA Sectional Championships (paper target) in Roslyn,

New York and Old Bridge, New Jersey and the Steel Challenge Championships (steel

target) in Old Bridge, New Jersey. There are no shooting competitions that are held within the city limits of New York City on a regular basis.

6.     These competitions provide me with an important way to practice shooting my handgun and become more proficient with it.

7.     Last year, I intended to attend the 2012 World Class Steel Northeast Regional Championship, to be held at the Old Bridge Rifle & Pistol Club in Old Bridge, New Jersey on June 1, 2012. ("The Old Bridge Competition").   However, the hosts of the Old Bridge Competition advised beforehand that NYC residents were not allowed to attend at and compete at future Old Bridge Competitions because the enforcement of 38 RCNY § 5-23 by the New York City Police Department ("NYC PD") made their attendance at this event with handguns illegal.

8.     I understand that the NYCPD is now telling firearm license holders that they can no longer travel outside of the borders of New York City with their handguns to attend competitive shooting matches like the Old Bridge Competition, and that the only competitions firearm license holders may attend with their handguns are those that are held in New York City.

9.     In direct response to the aforementioned NYC PD communication, I have refrained from attending any shooting events with my handgun that take place outside of the City of New York since June 2012.  I fear that my Premises Residence license will be revoked or I will be arrested, criminally prosecuted, and imprisoned if I attend any such events with my handgun outside of the City of New York.

10.     But for the license revocation and possibility of criminal penalties under the enforcement of 38 RCNY § 5-23, I would  participate in shooting competitions with

my handgun outside the boundaries of New York City, such as the NRA Sectional Championships (paper target) in Roslyn, New York and Old Bridge, New Jersey and the Steel Challenge regional shooting competition in Old Bridge, New Jersey.

11.    I have reviewed the foregoing statements and believe them to be true and accurate, based upon my own information and belief.

/s/ JOSE ANTHONY IRIZARRY

Sworn to before me this
26 day of April 2013

Notary Public



358878.1

3

**JA43**

# EXHIBIT C

DTE
1350.0009
ER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK STATE RIFLE AND PISTOL ASSOCIATION, INC., et al.,   ) ) ) | |
| Plaintiffs,   ) ) | Case No.: 1:13-cv-2115-RWS |
| v.   ) ) | **AFFIDAVIT** |
| THE CITY OF NEW YORK, et al.,   ) ) | |
| Defendants.   ) ) | |

STATE OF NEW YORK    )
                ) SS.:
COUNTY OF BRONX    )

      **EFRAIN ALVAREZ** being duly sworn, hereby states the following pursuant to penalties of perjury:

      1.     I am over the age of eighteen (18) and believe in the nature of an oath.

      2.     I am a natural person and a citizen of the United States, residing in Bronx County, New York.

      3.     I am a holder of a Premises Residence firearms license issued by the City of New York. I applied for and received this license approximately twenty five (25) years ago. At that time, the license was known as a "target" license.  My license was regularly renewed, and is now known as a Premises Residence license.

      4.     I also hold a non-resident firearm permits issued by the states of New Hampshire, Connecticut, Florida, Virginia, and Utah.

      5.     There are numerous shooting competitions outside of both New York City and New York State.  These are regularly-held regional indoor and outdoor competitive shooting events, such as the NRA Sectional Championships (paper target) in Roslyn,

New York and Old Bridge, New Jersey and the Steel Challenge Championships (steel target) in Old Bridge, New Jersey. There are no shooting competitions that are held within the city limits of New York City on a regular basis.

6.      These competitions provide me with an important way to practice shooting my handgun and become more proficient with it.

7.      Last year, I intended to attend the 2012 World Class Steel Northeast Regional Championship, to be held at the Old Bridge Rifle & Pistol Club in Old Bridge, New Jersey on June 1st, 2012. ("The Old Bridge Competition").   However, the hosts of the Old Bridge Competition advised beforehand that NYC residents were not allowed to attend at and compete at future Old Bridge Competitions because the enforcement of 38 RCNY § 5-23 by the New York City Police Department ("NYC PD") made their attendance at this event with handguns illegal.

8.      I then wrote to the NYC PD to inquire about my ability to travel outside of the New York City limits.  On July 31st, 2012, I received a letter from NYC PD Deputy Inspector Anderw Lunetta indicating that I could no longer travel outside of the borders of New York City with my handguns to attend competitive shooting matches, and that the only competitions firearm license I could attend with were those that are held in New York City. (A copy of this letter is attached as Exhibit A).

9.      In direct response to the aforementioned NYC PD communication, I have refrained from attending any shooting events with my handgun that take place outside of the City of New York since June 2012.  I fear that my Premises Residence license will be revoked or I will be arrested, criminally prosecuted, and imprisoned if I attend any such events with my handgun outside of the City of New York.

10.     But for the license revocation and possibility of criminal penalties under the enforcement of 38 RCNY § 5-23, I would participate in shooting competitions with my handgun outside the boundaries of New York City, such as the NRA Sectional Championships (paper target) in Roslyn, New York and Old Bridge, New Jersey and the Steel Challenge regional shooting competition in Old Bridge, New Jersey.

11.     I have reviewed the foregoing statements and believe them to be true and accurate, based upon my own information and belief.

/s/   EFRAIN ALVAREZ

Sworn to before me this
25 day of April 2013

Notary Public

**Melvin O. Hernandez**
**Notary Public State of New York**
**No. 01HE6274372**
**Qualified in Bronx County**
**Comission Exp 01/07/2017**

358877.1

# **Exhibit A to Alvarez Affidavit**



POLICE DEPARTMENT

**Commanding Officer, License Division**
**One Police Plaza, Rm. 110A**
**New York, NY 10038**
**Tel:  (646) 610-5560**
**Fax: (646) 610-6399**

July 31, 2012

Mr. Efrain Alvarez
1641 Andrews Avenue #3C
Bronx, NY  10453

Dear Mr. Alvarez:

This is in response to your question regarding the ability of a holder of a New York City Premise Residence license to travel to and from a competitive sanctioned shooting match on Long Island or in a neighboring state.  The answer is that the holder of a Premise Residence license cannot do so with a handgun listed on that license.

The Penal Law crime of Criminal Possession of a Weapon contains an exemption (as cited in your letter NYS PL § 265.20 (13)) for out of state residents to participate in an organized competitive pistol match or league competition subject to certain conditions. There is no such exemption for New York State residents.  NYC licenses are governed by the Rules of the City of New York, and there is no provision allowing Premise Residence license holders to travel with their handgun out of the City.  Additionally, the Federal transportation rules only apply to licenses that authorize carrying the firearm in both states, and case law has confirmed that holders of a NYC Premise Residence license are not covered by the Federal transportation statute.

The following sections from the Rules of the City of New York regarding Premise Residence licenses relate to your question:

38 RCNY § 5-23 (a) (3) To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, in a locked container, the ammunition to be carried separately.

38 RCNY § 5-23 (a) (4) A licensee may transport her/his handgun(s) directly to and from an authorized area designated by the New York State Fish and Wildlife Law and in compliance with all pertinent hunting regulations, unloaded, in a locked container, the ammunition to be carried separately, after the licensee has requested and received a "Police Department -- City of New York Hunting Authorization" Amendment attached to her/his license.

*Copy PD*

COURTESY  ·  PROFESSIONALISM  ·  RESPECT
Website: http://nyc.gov/nypd

The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner.  Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence license holders are those located in New York City.

Premise license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of the City of New York designated by the New York State Fish and Wildlife Law for the purpose of hunting; no areas outside of New York State are permissible for this purpose.

These rules do not apply to New York City issued long gun permits. Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried separately.

I hope that this information is helpful to you.

Very truly yours,

Andrew Lunetta
Deputy Inspector

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, ROMOLO COLANTONE, EFRAIN
ALVAREZ, and JOSE ANTHONY IRIZARRY,

                                           Plaintiffs,

                        -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT LICENSE DIVISION,

                                   Defendants.

-------------------------------------------------------------------- X

**DECLARATION OF
MICHELLE
GOLDBERG-CAHN**

13 CV 2115 (RWS)
ECF Case

      **MICHELLE GOLDBERG-CAHN**, declares under the penalty of perjury,

pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct:

          1.     I am an Assistant Corporation Counsel in the office of MICHAEL A.

CARDOZO, Corporation Counsel of the City of New York, attorney for defendants the City of

New York and the New York City Police Department License Division ("License Division"). I

submit this declaration in opposition to plaintiffs' motion for a preliminary injunction, and to

place certain documents on the record of this motion.

          2.     Annexed for this Court's consideration are the following documents:

- A copy of Title 38 of the Rules of the City of New York ("RCNY"), chapter
  5, section 23 (38 RCNY § 5-23) printed from the LEXIS legal publishing
  company is annexed hereto as Exhibit "A." The historical note under the rule
  reflects that § 5-23(a) was amended by publication in the *City Record* on May
  31, 2001. Exhibit "A."

- A copy of the relevant page from the May 31, 2001 *City Record* reflecting the Statement of Basis and Purpose of the rule changes promulgated by the License Division, is annexed hereto as Exhibit "B."

Dated:      New York, New York
            June 5, 2014

                                        _____
                                        MICHELLE GOLDBERG-CAHN

**JA52**

# EXHIBIT

# A



Rules of the City of New York

Copyright 2013 New York Legal Publishing Corporation a New York Corporation
All Rights Reserved

***** Current through August 2012 ****

*38 RCNY 5-23*

New York

RULES OF THE CITY OF NEW YORK

Title 38 Police Department

CHAPTER 5 HANDGUN LICENSES*1

SUBCHAPTER B LICENSEE RESPONSIBILITIES

§5-23 Types of Handgun Licenses.

(a) **Premises License-Residence or Business.** This is a restricted handgun license, issued for the protection of a business or residence premises.

(1) The handguns listed on this license may not be removed from the address specified on the license except as otherwise provided in this chapter.

(2) The possession of the handgun for protection is restricted to the inside of the premises which address is specified on the license.

(3) To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, in a locked container, the ammunition to be carried separately.

(4) A licensee may transport her/his handgun(s) directly to and from an authorized area designated by the New York State Fish and Wildlife Law and in compliance with all pertinent hunting regulations, unloaded, in a locked container, the ammunition to be carried separately, after the licensee has requested and received a "Police Department-City of New York Hunting Authorization" Amendment attached to her/his license.

(b) **Carry Business License.** This is an unrestricted class of license which permits the carrying of a handgun concealed on the person.

(c) **Limited Carry Business License.** This is a restricted handgun license which permits the licensee to carry a handgun listed on the license concealed on the person to and from specific locations during the specific days and times set forth on the license. Proper cause, as defined in §5-03, shall need to be shown only for that specific time frame that

the applicant needs to carry a handgun concealed on her/his person. At all other times the handgun shall be safeguarded at the specific address indicated on the license and secured unloaded in a locked container.

(d) **Carry Guard License/Gun Custodian License.** These are restricted types of carry licenses, valid when the holder is actually engaged in a work assignment as a security guard or gun custodian.

(e) **Special Licenses.** Special licenses are issued according to the provisions of §400.00 of the New York State Penal Law, to persons in possession of a valid County License. The revocation, cancellation, suspension or surrender of her/his County License automatically renders her/his New York City license void. The holder of a Special License shall carry her/his County License at all times when possessing a handgun pursuant to such Special License.

(1) **Special Carry Business.** This is a class of special license permitting the carrying of a concealed handgun on the person while the licensee is in New York City.

(2) **Special Carry Guard License/Gun Custodian License.** These are restricted types of Special Carry Licenses. The handgun listed on the license may only be carried concealed on the licensee's person while the licensee is actively on duty and engaged in the work assignment which formed the basis for the issuance of the license. The licensee may only transport the handgun concealed on her/his person when travelling directly to and from home to a work assignment.

**HISTORICAL NOTE**

 Section amended City Record May 31, 2001 eff. June 30, 2001. [See T38 Chapter 1 footnote] 

**DERIVATION**

Section amended City Record Apr. 12, 1993 eff. May 12, 1993.

Section amended in part City Record Aug. 2, 1991 eff. Sept. 1, 1991.

Section in original publication July 1, 1991.

Subd. (b) par (1) amended City Record Sept. 23, 1994 eff. Oct. 23, 1994. This subd. (b) was repealed

by City Record May 31, 2001 amendment.

**CASE NOTES**

\xB6 1. The Police Department's creation of the new premises license, which permits the transport of firearms to authorized target ranges and hunting areas did not exceed the jurisdiction of the department. Penal Law §400.00; the state's enabling statute, did not pre-empt all regulations in this field. De Illy v. Kelly, 6 A.D.3d 217, 775 N.Y.S.2d 256 (1st Dept. 2004).

**FOOTNOTES**

1

[Footnote 1]: * Chapter amended City Record May 31, 2001 eff. June 30, 2001, see footnote to T38 Chapter 1.

# EXHIBIT

# B

requesting person that such authorization has or has not been granted.

(c) In addition to any other applicable penalties, the Police Commissioner may deny an application submitted pursuant to this chapter if the applicant has previously failed to comply with the provisions of this chapter.

### § 16-04 Surrender of Firearms Not Authorized For Transportation or Delivery[.] Any person who transports or delivers [firearms] weapons without obtaining authorization pursuant to the requirements of [the] this chapter shall be liable for the penalties set forth in Article 265 of the New York State Penal Law and the New York City Administrative Code, and shall further be directed by any member of the Police Department to [either] surrender the [firearms] weapons to the Police Department [or immediately return such firearms to the sender]. In addition, the property being transported, as well as the means of transport, may be seized and forfeited pursuant to law.

### § 16-05 Required Security Measures for Weapons Shipments in Transit Any person, corporation, partnership, or other business entity using a vehicle to transport weapons within or through the City of New York shall, at a minimum, employ the following security measures while such weapons are in transit:

(a) All weapons shall be transported unloaded.

(b) All weapons shall be placed in one or more containers located within the vehicle used for transportation of the weapons. Such containers shall be constructed of materials of such a sturdy character that when the container is closed and locked, it cannot be forced open by hand alone, or sliced open with a common tool such as a knife or box cutter.

(c) The above referenced container(s) shall be securely fastened, with a combination or key locking device, to the interior body structure of the transporting vehicle, in such a manner that the containers cannot be manually removed without releasing the locks.

(d) Such containers, while in transit and carrying weapons, shall be closed and locked with a heavy-duty combination or key-type lock.

(e) Ammunition shall not be stored in the same container as weapons.

(f) At all times other than loading and unloading, the cargo area of the transporting vehicle in which all of the above referenced containers shall be stored shall be closed and locked with a heavy-duty combination or key-type lock.

(g) The driver of the transporting vehicle shall carry a manifest which declares the number and types of weapons being transported, and the intended point of delivery. Such manifest shall not be considered valid unless it shall have written upon it the permission/social number issued by the New York City Police Department License Division.

(h) [1]  The Police Commissioner may require, as a condition of the authorization to transport or deliver weapons, that shipments of weapons which will be off-loaded from one means of transportation and subsequently on-loaded to the same means or another means of transportation within the city of New York, be escorted by a uniformed member of the New York City Police Department, from the time of on-loading until such point that the shipment has left the jurisdictional boundaries of the City of New York.

[2] [If the Police Commissioner elects to impose the escort requirement as a condition of the authorization to transport or deliver weapons, the applicant shall notify the Commanding Officer, License Division, of the day, date, estimated time and place of on-loading of the shipment in the second means of transportation. The escort requirements shall be deemed waived if the escort is not present at the place within the City of New York where the weapons will be on-loaded within thirty minutes of the shipment's estimated time of on-loading and departure.

### § 16-06 Requirement to Report Theft, Loss or Misdelivery

(a) Any person, firm, corporation, or other business entity who has received permission to transport weapons pursuant to the provisions of this chapter, and who suffers a loss or theft of any part of her/his weapons shipment while it is located within New York City, shall forthwith report such loss or theft to the nearest Police Department facility and shall comply with all reasonable requests for assistance by police officers who investigate the circumstances of the loss or theft.

(b) Any person, firm, corporation or other business entity who has received permission to transport weapons pursuant to the provisions of this chapter, and who knows or reasonably should know that any part of her/his weapons shipment was delivered to a person other than the person designated as the recipient of the shipment, shall forthwith report such misdelivery to the New York City Police Department's Operations Unit, or (212) 374-5580.

---

Note:   References within this chapter to masculine shall be construed to include the feminine or a neuter. References in the singular shall be presumed to include the plural.

### STATEMENT OF BASIS AND PURPOSE

The Police Commissioner is responsible for the licensing and regulation of handguns, rifles, shotguns and other weapons in New York City, including activities such as possessing, carrying, selling, manufacturing, transporting or repairing such weapons. In addition, the Police Commissioner is authorized to designate individuals as "Special Patrolmen" pursuant to Section 14-106 of the New York City Administrative Code. The administrative arm of the Police Department which fulfills these functions at his direction is the New York City Police Department's License Division.

Since early 1997, the License Division has undergone extensive review and analysis. This continuous effort to improve the quality and timeliness of the application and renewal process, the investigation of incidents, the determination of fitness, and the safe transport of weapons through New York City has resulted in significant policy changes and organizational improvements under the present rules and practices. However, it became clear that in the interest of consistency, fairness, and efficiency, a close examination and restructuring of Chapters 1, 2, 3, 4, 5, 13, 15 (Subchapter B), and 16 of Title 38 of the Rules of the City of New York was equally necessary.

Chapters 1 through 5, regarding licensing and possession of handguns and rifles/shotguns, as well as the licensing of dealers in weapons (including air pistols and air rifles), have been amended to be internally consistent in application, renewal, and suspension/revocation procedures. The amendments incorporate recent changes to the law, such as federal and state law prohibitions against possession of firearms by perpetrators of domestic violence, as well as local laws regarding the possession and use of safety locking devices and the establishment of domestic partnership registration in New York City. The amendments clarify and streamline the application and review process, clarify the conditions of the issuance of a license including the obligation to observe applicable laws and rules, and set forth consistent procedures for the appeal of revocation or suspension of a license or permit. Specifically with respect to handgun licensing, the amendments eliminate as a separate category the "Target" handgun license, clarify the requirements for particular categories of handgun licenses, and require inspection of all handguns with each renewal of the license.

Chapter 13, "Special Patrolmen," has been similarly amended to streamline and clarify application, renewal, and suspension/revocation procedures, including criteria to be considered when evaluating whether employers demonstrate sufficient need for the appointment of special patrolmen.

Subchapter B of Chapter 15, governing hearings conducted by the License Division, has been amended to conform the hearing process to the License Division rules as amended herein, as well as to clarify and streamline the hearing and disposition process.

Chapter 16 is amended to strengthen the already existing rules regarding the transport of weapons in New York City. The amendments clarify the definitions of applicable terms, strengthen notification requirements and security requirements when weapons are transported in and through New York City, and provide an appropriate procedure when a weapons shipment destined for a location outside of New York City is unexpectedly delayed in New York City. The chapter is also amended to exempt shipments of five or fewer between licensed dealers within New York City from the operation of these rules.

In response to public comment on the proposed rule amendments and additional review by members of the Police Department, modifications have been made to rules contained in Chapters 1, 2, 3, 4, 5, 13, and 16, which include: addition of a provision requiring license or permit applicants to notify the License Division in the event that their circumstances change during the pendency of the application; restoration of the thirty-day period within which to request a hearing following suspension or revocation of a license or permit, rather than the ten-day period originally provided; addition of a provision requiring that a licensee or permittee whose license was suspended or revoked due to their location being the subject of an order of protection must wait until the order of protection is expired or voided in order to request a hearing; and modification of a requirement in Chapter 5 providing that licensees may, rather than shall, be required to produce all handguns possessed for inspection upon renewal of a handgun license.

Consistent with the recent City of New York State Penal Law and the New York City Administrative Code, and pursuant to the powers of the Police Commissioner

---

under sections 434(b) and 1043 of the New York City Charter, Title 10 of the New York City Administrative Code, and Articles 265 and 400 of the New York State Penal Law, the Police Department is now acting to amend its rules to create a comprehensive and reasonable regulatory scheme for the licensing and regulation of deadly weapons in New York City, and for the appropriate designation of Special Patrolmen.

### TAXI AND LIMOUSINE SERVICES
■ NOTICE

#### Notice of Final Publication

Notice is hereby given in accordance with Section 1043(b) of the Charter of New York, that the Taxi and Limousine Commission hereby amends the Taxicab Owners Rules to adjust the Flat Rate of Fare between Kennedy Airport and Manhattan.

The Taxi and Limousine Commission ("TLC") is promulgating such regulations pursuant to the authority vested in the TLC under Charter Sections 2303(a) and (b); and 2304; and under Section 19-503 of the Administrative Code of the City of New York.

A public hearing in connection with these proposed regulations was held on May 24, 2001, by the NYC Taxi and Limousine Commission at 40 Rector Street, New York, NY 10006.

Section 1. Title 35 of the Rules of the City of New York ("RCNY"), Chapter 1, Taxicab Owners Rules, Section 1-59, Flat Fares from Kennedy Airport to Manhattan, subdivisions (a) and (b), is amended to read as follows:

*Italics indicate new material.*
[ ] Brackets indicate deleted material.

Section 1-59 Flat Rates From Kennedy Airport to Manhattan

(a) Notwithstanding the rate of fare set forth in Sections 1-70 (a) and (b), the fare for trips beginning at Kennedy Airport with a Manhattan destination shall be a flat rate of *Thirty-Five Dollars ($35)* [Thirty Dollars ($30)], plus any tolls.

(1) The night surcharge set forth in Rule 1-70 (b) shall not be added to this flat rate.

(2) The taximeter shall reflect that this trip is a flat fare.

(3) (b) If passengers request multiple stops, the fare shall be as follows: the first stop to Manhattan is paid in accordance with subdivision (a) of this section; the meter is then turned on for a separate trip at the rate of fare as set forth in Section 1-70, and the total on the meter is paid at the last stop by the remaining passenger. [For example, if three passengers request stops at 42nd St., 18th St. and 4th St., then [$30] $35 will be collected at 42nd St. and the meter will be turned on. When the second passenger exits at 18th St., the meter remains on, and so money is paid to the driver. The passenger dropped off at 4th St. must pay the fare on the meter.]

### Statement of Basis and Purpose

The regulations promulgated herein by the New York City Taxi and Limousine Commission ("TLC") are authorized under Section 2303(a) of the Charter of the City of New York, which empowers the TLC to regulate and supervise the business and industry of transportation of persons by licensed vehicles for-hire in the City. Section 2303(b) of such Charter, authorizing the TLC to enact rules and regulations relating to standards and conditions of service which are reasonably designed to carry out its purposes; Section 2304(b) of such Charter, authorizing the Commission to establish rates of fare for taxicabs; and Section 19-503 of the Administrative Code of the City of New York, authorizing the TLC to promulgate rules and regulations necessary to exercise authority conferred upon it by the Charter.

The regulations promulgated herein raise the Flat Fare rate for a trip from Kennedy Airport to Manhattan from the present rate of $30, to a rate of $35, exclusive of tolls. The $30 flat fare rate has been in effect since April 29, 1996.

The Commission adopted the JFK flat fare rate in 1996 to provide passengers with a consistent and uniform fare that approximated the average cost of a metered trip from Kennedy Airport to typical destinations in Manhattan, taking into account differences in traffic conditions and other variables such as the selection of a faster, but longer alternative route by drivers or passengers. The flat fare was also adopted in 1996 to prevent overcharging of passengers by drivers. The purpose of this increase in the flat fare rate by $5 per trip is to more closely approximate the average cost of a metered trip between Kennedy Airport and various locations in Manhattan, based upon average distance and time traveled. Since 1996, the Commission has conducted analyses of sample trips from Kennedy Airport to various destinations in midtown, lower and upper Manhattan. The results of these studies demonstrate that the average recorded meter charge for trips to midtown Manhattan was approximately $30. However, fares for trips to destinations in lower Manhattan averaged in excess of $35, while fares for trips to destinations in the northern end of Manhattan were approximately $35.

Lower Manhattan has developed in recent years into a primary residential and commercial area. In 1970, the Community Planning District comprising lower Manhattan (generally below the City Hall area) had a population of approximately 6,000 persons. By 1990, the population had increased to in excess of 25,000, and preliminary census data for the year 2000 indicates that more than 30,000 people now live in lower Manhattan — a five-fold increase in thirty years. This demographic change has significantly impacted upon the use of taxicabs to destinations in lower Manhattan.

# EXHIBIT

# C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, ROMOLO COLANTONE, EFRAIN
ALVAREZ, and JOSE ANTHONY IRIZARRY,

                           Plaintiffs,          13 Civ. 2115(RWS)

       -against-                                OPINION


THE CITY OF NEW YORK and THE NEW YORK CITY
POLICE DEPARTMENT - LICENSE DIVISION,

                           Defendants.

------------------------------------X

A P P E A R A N C E S:

       Attorneys for Plaintiffs

       GOLDBERG SEGALLA, LLP
       11 Martine Avenue, Suite 750
       White Plains, NY 10606
       By:  Brian T. Stapleton, Esq.


       Attorneys for Defendants

       MICHAEL A. CARDOZO
       CORPORATION COUNSEL OF THE CITY OF NEW YORK
       100 Church Street, 5th Floor
       New York, NY 10007
       By:  Gabrielle Taussig, Esq.
            Michelle Goldberg-Kahn, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/20/13

Sweet, D.J.

Plaintiffs New York State Rifle & Pistol Association

("NYSRPA"), Romolo Colantone ("Colantone"), Efain Alvarez

("Alvarez") and Jose Anthony Irizarry ("Irizarry" and,

collectively, "Plaintiffs") have moved for a preliminary

injunction enjoining the enforcement of 38 RCNY § 5-23(a) ("§5-

23"), a regulation promulgated by defendant the City of New York

that governs the use of handguns by individuals who have been

granted a handgun license by defendant the New York City Police

Department – License Division (the "NYPD License Division").

For the reasons set forth below, the motion is stayed

pending a decision by the New York Court of Appeals in Osterweil

v. Bartlett, see 20 N.Y.3d 1058 (2013).

**The Motion Is Stayed**

Section 5-23(a) provides that with respect to the type

of handgun license known as a "premises license"

> (3) To maintain proficiency in the use of
> the handgun, the licensee may transport
> his/her handgun(s) directly to and from an
> authorized small arms range/shooting club,

1

**JA60**

> unloaded, in a locked container, the
> ammunition to be carried separately.
>
> (4) A licensee may transport his/her
> handgun(s) directly to and from an
> authorized area designated by the New York
> State Fish and Wildlife Law and in
> compliance with all pertinent hunting
> regulations, unloaded, in a locked
> container, the ammunition to be carried
> separately, after the licensee has requested
> and received a "Police Department - City of
> New York Hunting Authorization" Amendment
> attached to her/his license.

38 RCNY § 5-23(a)(3) & (4).  This language has been construed by
the NYPD License Division to mean that the holder of a premises
license who possesses a handgun located in his New York City
residence is prohibited by law from transporting that handgun
outside the borders of New York City except for the purpose of
hunting.  See Affidavit of Romolo Colantone ("Colantone Aff.")
¶¶ 8, 11-12 & Exs. A & B.

Plaintiffs have contended that §5-23 violates their
right to bear arms under the Second Amendment because, *inter
alia*, it effectively precludes them from using a handgun to
protect themselves and their families if and when they reside at
a secondary residence that is located outside of New York City.
See Memorandum in Support of Plaintiffs' Motion for a
Preliminary Injunction ("Pl. Mem.") at 10-12.  According to

2

**JA61**

Plaintiffs, because §5-23 prohibits them from transporting a

handgun outside of New York City for any reason other than

hunting, the regulation makes it illegal for a duly licensed New

York City resident to transport his handgun from his primary

residence in New York City to a second home that is located

outside of New York City.

The strength of Plaintiffs' argument is dependent in

large part upon the construction of New York Penal Law § 400.00

("§400.00"), which is the New York State law governing firearm

licenses.  Subsection (a)(3) of §400.00 provides that an

application for a license to carry a firearm

> shall be made and renewed, in the case of a
> license to carry or possess a pistol or
> revolver, to the licensing officer in the
> city or county, as the case may be, where
> the applicant resides, is principally
> employed or has his principal place of
> business as merchant or storekeeper.

N.Y. Penal L. § 400.00(a)(3) (emphasis added).  If the

underlined language – and particularly the word "resides" – is

understood literally, and therefore read as permitting an

individual to apply for a handgun license with the licensing

officer of the city or county in which he has a residence, the

3

cogency of Plaintiffs' second-home argument suffers considerably, as their complaint could be met with a rejoinder to simply acquire a handgun license from the county in which the second home is located, and keep a gun in that home for use when it is being used as a residence. <u>See</u> Memorandum in Reply and Further Support of Plaintiffs' Motion for a Preliminary Injunction ("Pl. Reply") at 6 & n. 6.

However, if the underlined language above is understood as creating a domicile requirement – <i>i,e.</i>, mandating that an individual may only apply for a handgun license in the city or county in which his <i>primary</i> residence is located – the combined effect of §400.00(a)(3) and §5-23 would be to preclude an individual whose primary residence is in New York City from applying for a handgun license from any licensing authority other than the NYPD License Division, which as noted above only grants licenses that are subject to the restrictions set forth in §5-23, including the prohibition on transporting a handgun outside of the city limits for reasons other than hunting. Accordingly, reading a domicile requirement into §400.00(a)(3) would essentially render it impossible for a resident of New York City to lawfully exercise what the Supreme Court has held to be the "core" right protected by the Second Amendment – "the

4

right to self-defense in the home." Osterweil v. Bartlett, 706

F.3d 139, 141 (2d Cir. 2013) (citing District of Columbia v.

Heller, 554 U.S. 570 (2008)).  Under this statutory rubric, the

regulation at issue in this case would demand a far more

rigorous level of judicial scrutiny than would be employed if

the requirement were merely residential in nature.


    The question of whether §400.00(a)(3) implicates an

individual's domicile or residence has been certified by the

Second Circuit to the New York Court of Appeals,[1] see Osterweil,

706 F.3d at 140-45, and the New York Court of Appeals has

accepted the certified question, see Osterweil v. Bartlett, 20

---

[1] The precise question that has been certified to the Court of
Appeals is as follows:

> Is an applicant who owns a part-time
> residence in New York but makes his
> permanent domicile elsewhere eligible for a
> New York handgun license in the city or
> county where his part-time residence is
> located?

Osterweil, 706 F.3d at 145.  While the circumstances in
Osterweil that gave rise to this question are different than
those present in the instant case, as the plaintiff there is
domiciled in another state, see id. at 140, rather than (as
here) in a different licensing jurisdiction, it appears likely
that the Court of Appeals' response to the question will entail
a determination of the question that is relevant to the instant
case, namely whether or not §400.00(a)(3) permits an individual
to apply for a handgun license in the city or county where he
merely has a residence, even if he is not domiciled in that
licensing jurisdiction.

5

N.Y.3d 1058 (2013), and the matter is scheduled for oral

argument on September 12, 2013.[2]


      Since the Court of Appeals' determination of this

question is likely to have a material effect upon the analysis

of the instant motion, and since argument on the question is

scheduled for the near future, it is appropriate to stay the

motion pending a decision from the Court of Appeals in

Osterweil.  See Cobalt Multifamily Investors I, LLC v. Shapiro,

857 F. Supp. 2d 419, 423-24 (S.D.N.Y. 2012) (finding that

grounds for a stay existed where the Second Circuit certified a

series of questions to the New York Court of Appeals in an

unrelated case, and the answers to those questions "would impact

adjudication of the claims pending in this litigation"); Salcedo

v. Phillips, No. 04 Civ. 7964 (PAC) (GWG), 2007 WL 3097208, at

*1 (S.D.N.Y. Oct. 22, 2007) (same); cf. In re CBI Holding Co.,

Inc., No. 01 Civ. 0131 (KMW), 2010 WL 2287013, at **5-6 (denying

motion to stay despite pending question to the Court of Appeals

since it was unclear that the Court of Appeals' determination

would in fact impact the case, and additionally "[t]he Court

---

[2] See Court of Appeals, State of New York - Certified Questions
(500.27), http://www.nycourts.gov/ctapps/certquest.htm (last
visited August 19, 2013).

6

cannot determine when the New York Court of Appeals is likely to
rule on the Certified Questions).

## Conclusion

Based on the conclusions set forth above, Plaintiffs'
motion for a preliminary injunction is stayed pending the Court
of Appeals' decision in Osterweil.

It is so ordered.

New York, NY

~~August~~ September 18 /2013

ROBERT W. SWEET
U.S.D.J.

7

**JA66**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X

THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, ROMOLO COLANTONE, EFRAIN
ALVAREZ, and JOSE ANTHONY IRIZARRY,

                                        Plaintiffs,

                     -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT LICENSE DIVISION,

                                     Defendants.

------------------------------------------------------------------------- X

**DECLARATION OF**
**ANDREW LUNETTA**

13 CV 2115 (RWS)
ECF Case

        **ANDREW LUNETTA**, declares under the penalty of perjury, pursuant to 28

U.S.C. § 1746, that the foregoing is true and correct:

            1.      I am the Commanding Officer of the New York City Police Department

License Division ("License Division"), at 1 Police Plaza, New York, New York. I hold the rank

of Inspector. I am also an attorney licensed to practice law in New York. I am in my 28th year

as a uniformed member of the NYPD where I have worked in various legal, investigative, and

enforcement assignments. I have been the Commanding Officer of the License Division for

more than six years. I submit this declaration in opposition to plaintiffs' motion for a

preliminary injunction and in support of defendants' cross-motion for summary judgment. I

submit this declaration to describe how the specific restriction at issue in this case, set forth in

Title 38 of the Rules of the City of New York ("RCNY") § 5-23(a)(3), relates to the obligation of

the New York City Police Department ("NYPD") to monitor all active handgun license holders

in the City of New York (over 40,000) and to explain how the specific restriction is necessary to

address the public safety concerns that inherently arise when a handgun is removed from a

premise and taken onto public streets. I also submit this declaration to explain the procedures employed by the License Division for applications for Premises Residence and Carry Business handgun licenses and investigations of both applicants and active licensees, to explain the procedures employed by the License Division for the review and determination of applications for approved firearms ranges in New York City, and to put in specific facts about authorized firearm ranges in New York City. This declaration is based on my personal knowledge, my review of the city's records and conversations with employees, officers, and agents of the City.

**Enforcing the Restriction on Premises Residence Licenses**

2.      My experience with incident investigations in the License Division and all patrol and criminal investigations as a uniformed member of the NYPD has shown me that license holders in a public setting are just as susceptible as anyone else to stressful situations, including ones where it would be better to not have the presence of a firearm included. These include, driving situations that sometimes lead to or have the potential to lead to road rage incidents, the stress and injury of traffic accidents, crowd situations, demonstrations, family disputes, all other types of disputes between individuals, being a victim of a crime or harassment, and any other stress-inducing circumstance outside of the home. Premise license holders have not demonstrated proper cause to carry a concealed handgun in public. Clearly, there is less public danger if Premises Residence license holders do not bring their firearms into the public domain.

3.      Experience has also revealed that license holders with restricted licenses do not always transport their firearms in a locked box carrying ammunition separately, as required by NYPD rules. There is no requirement that the locked box be in the trunk of the vehicle or other inaccessible compartment. There is a real danger that the firearm will only be

2

placed in a locked box when police interaction becomes imminent to avoid detecting the violation of the rules governing the transportation of firearms.  In addition, a worse danger exists that the firearm will be readily accessible when a travelling holder of a restricted premises license becomes involved in certain stress-inducing circumstances.

   4. Premises license holders have not demonstrated proper cause to carry a concealed firearm in public.  There is less risk to public safety if premises license holders bring their firearms into the public domain less frequently and the restriction may be more effectively monitored and enforced.

   5. The general government interest in this case is public safety.[1]  The interest is maintained by limiting handgun access in public places.  The holder of a premise or other restricted handgun license who possesses their handgun in public is exempt from certain crimes related to that possession.  See Penal Law § 265.20(a)(3).  Also, misdemeanor charges under Penal Law § 400.00 are typically not pursued by prosecutors as the result of case law.[2]  Thus, only regulatory measures proscribe the carrying of a handgun in public in violation of a restricted license.  Unless these rules can be effectively monitored and enforced, and are not easily ignored or susceptible to being violated, public safety will be compromised.  Moreover, should New York City Premises Residence license holders be allowed to transport their firearms anywhere outside of the City for target practice or shooting competition, it would circumvent the

---

[1] The government interest of public safety relating to limiting handgun access in public places was also at issue in Kachalsky v. County of Westchester, 701 F.3d 81 (2d Cir. N.Y. 2012).

[2] For example, in People v. Thompson, 92 N.Y.2d 957; 705 N.E.2d 1200; 683 N.Y.S.2d 159 (1998), the Court of Appeals affirmed that no crime took place when the holder of a restricted license drove a vehicle with his firearm and ammunition in an unlocked and unlockable pouch placed on the passenger seat.  The Court concluded that the appropriate remedy for this clear Continued...

proper cause requirement for issuance of a carry license and make it too easy for them to possess a licensed firearm while traveling in public, and then if discovered create an explanation about traveling for target practice or shooting competition.

6.     If ranges anywhere in the State were authorized by New York City, then the perception that this simple deception could be effective would be reasonable.  This perception, coupled with a desire to possess guns outside the home, would make it more likely that Premises Residence licensees would travel with their firearms where not authorized.  The point is not only that an officer in another jurisdiction would be less able to uncover the lie because it could relate to any range in the State, but that the lie would more likely be made in the first instance.  Expanding authorized ranges to anywhere in the state would make it difficult, if not impossible, to monitor and enforce the restriction on guns outside the home.

7.     When target practice and shooting competitions are limited to locations in New York City the ability to create such a fiction is limited.  An NYPD officer on patrol can more easily determine whether the person is transporting the handgun *directly* to or from an authorized range within the City as well as compliance with the other provisions of 38 RCNY § 5-23(a)(3).  This affects the perception about the likelihood of the lie being effective, and makes it less likely to be attempted.  The License Division can investigate the credibility of assertions made after the fact more effectively for incidents in New York City.  This would not be the case if ranges outside the New York City were authorized.  Law enforcement officers outside the City would not be in a position to determine if the person were transporting the handgun directly to or from any range outside the City because the license holder could pick

---

violation of provisions governing his license was an administrative remedy within the regulatory framework.

4

from any number of distant ranges and make assertions about his/her chosen route.  Nor would the reporting back from out-of-City law enforcement to the License Division be effective in this context for monitoring the activity and enforcing the general restriction on a Premises Residence license.

      8.    Because hunting is a highly regulated activity requiring specific authorizations, law enforcement can easily identify those operating outside these specific regulations.  A hunting authorization is not carte blanche permission to premises license holders to travel about New York State wherever and whenever they feel like it with their firearms.  Law enforcement officers throughout the State are sensitive to the many precise hunting rules and requirements.  The Premises Residence license holder must have a valid hunting license to get the hunting authorization as an amendment to their license.  The hunting authorization is only effective to allow transport and carry for hunting that is authorized pursuant to the New York State Fish and Wildlife Law (as stated on the authorization card).  Law enforcement officers anywhere in the State could require the license holder to produce the New York City premise license, the separate hunting authorization card, a valid hunting license for the present season and area at issue, and knowledge of and compliance with many other rules that are specific to the game and area, such as weapon types, ammunition restrictions, game gender and size restrictions, time and day restrictions, dress restrictions, etc.  Thus, there is no credible risk of creating a perception that the Premises Residence license holder can carry his/her guns and then just claim they were going hunting if stopped.  An officer anywhere in the State could ask about game tags or myriad other specifics to test the credibility of the assertion.  Furthermore, an assertion about hunting designed to justify possession of a handgun on a New York City license that is found to lack credibility is likely to be reported back to the NYPD License Division.

5

9.      The temptation and inclination to carry a handgun in public in violation of the restriction on a premise license is a real concern.  Since the elimination of the Target license in 2001, investigations have revealed a large volume and pattern of premises license holders who are found in possession of their handguns in violation of the restrictions on their license.  Given the volume and nature of these incidents, it is reasonable to conclude that many additional instances of carrying firearms by licensees with restricted licenses in violation of the restrictions do not come to the attention of the License Division.  Public safety compels that these restrictions be effectively monitored and enforced, and that the perception of effective monitoring be supported.

10.     The existing regulation fully allows Premises Residence license holders to protect their premises, practice and compete in New York City, and is closely tied to the government interest in enhancing public safety by limiting handgun possession in the public arena to those who have demonstrated "proper cause" to qualify for a carry license.

**The License Division**

11.     The Police Commissioner delegated his authority to the License Division to oversee the issuance and suspension of firearms licenses and permits.  Currently there are over 40,000 active licenses that have been issued by the NYPD License Division for the possession of handguns in New York City; and over 20,000 active permits for the possession of rifles and shotguns.

12.     The License Division currently processes an average of 3200 new applications and 9000 renewal applications for handgun licenses per year.  The Rifle and Shotgun Section processes an average of 850 new applications and 5000 renewal applications for rifle and shotgun permits per year.

6

13.    The License Division is divided into several different sections and units, and is overseen by a five member Executive Staff, that includes a director, inspector (myself, as commanding officer), a deputy inspector (as executive officer), and two lieutenants.

14.    The License Division has sections of staff established for various tasks. For example, there is an Intake Section, New Applications Section, Carry Guard Section, Retired Law Enforcement Section, Rifle/Shotgun Section, Issuing Section, Incident Section, Cancellation Section, Renewal Section, and Administrative Hearing Section.   On average, the License Division's Incident Section has investigated 600 incidents of its handgun licensees per year and the Rifle/Shotgun Section another 150 incidents of rifle and shotgun permit holders.

**Applications for Premises Residence Handgun Licenses**

15.    As with all handgun licenses processed by the License Division, when applicants apply for a Premises Residence license, they complete an application form that they submit to the License Division with photograph identification, and are fingerprinted.  A copy of the Handgun License Application and Instruction Packet is annexed hereto as Exhibit "A."

16.    The License Division's Handgun License Application Packet includes instructions on the handgun license application, a listing of the types of licenses for handguns issued by the License Division, an affidavit of familiarity with the handgun licensing laws to be signed by the applicant, an acknowledgement of the person agreeing to safeguard firearms, a pre-license exemption form, a list of persons prohibited from possessing firearms, copies of certain local law provisions, and an affidavit of co-habitants.  See Exhibit "A."

17.    In order to process an application for a Premises Residence license, each application is assigned for investigation.  As is evident from the application itself, each applicant is asked questions about the applicant's citizenship, name change history, arrest and criminal

7

**JA73**

conviction history, outstanding warrants, domestic violence history, the history of the issuance of Orders of Protection by or against the applicant, history of mental illness and related treatment, military service history, residence history including proof of current residence, driving history, licensing history, history of lost or stolen firearms, as well as any medical conditions that may affect an applicant's ability to safely possess or use a handgun. See Exhibit "A."

18.     License Division staff investigate each applicant and review applications for completeness and accuracy, as well as to determine many state eligibility requirements, such as verifying that all statements in an application are true, that the applicant possesses "good moral character," and that "no good cause exists for denial." Follow up may include reaching out to various federal, state, and city agencies for information about the applicant's history, making requests for additional documentation to support statements made in the application, reviewing the New York State Division of Criminal Justice System ("DCJS") fingerprint response, mental health checks, and requesting further information regarding any arrests or convictions reported therein, and interviewing the applicant. Third parties may be interviewed to obtain relevant information.

19.     When an investigator completes the investigation, the recommendation is forwarded to the unit supervisor who reviews the findings, and if complete, forwards the recommendation to the Commanding Officer of the License Division, or the Executive Officer on his behalf. The Commanding Officer then issues a decision with respect to the issuance of all handgun license applications. Disapprovals are subject to administrative appeal, which includes a written appeal to the supervisory head of the License Division (currently, the Director of the License Division), which results in a final agency determination.

20.     Licenses are valid for a three year period, and expire on the licensee's birthday.   Prior to the conclusion of that period, a licensee seeking to renew a Premises Residence handgun license (and all other handgun licenses) must submit a renewal application to the License Division.  The License Division then conducts an investigation into the information contained in the renewal application; and investigates whether there were any incidents that occurred during the license period that may affect the applicant's license renewal.

**Application for a Carry Business License**

21.     Applicants for a Carry Business license use the same application form as that used by persons applying for the Premises Residence license. However, unlike the Premises Residence license, New York State Penal Law section 400.00(2)(f) requires applicants for the Carry Business license to demonstrate that "proper cause" exists to justify the issuance of a concealed carry license. In order to establish the existence of proper cause, the applicant must show that he/she has a need to carry a concealed firearm which is distinguishable from that of the general public, for example, the applicant carries large sums of cash or valuables on a regular basis or is exposed to extraordinary personal danger in daily life. Applicants who qualify for a New York City Carry Business license are authorized by the Penal Law to have and carry concealed firearms (with limited exceptions) anywhere in the State of New York.

22.     The plaintiffs in this action seek to enlarge the statutory time and place restrictions imposed on Premises Residence licenses by the New York State Penal Law in order to allow them to transport their firearms to any small arms range outside the City of New York for target shooting. Such an extension would greatly expand the restrictions imposed by the Penal Law and in so doing would have a negative impact on public safety.

**Incident Investigations of Active License Holders**

23.     All licensees are required by 38 RCNY § 5-30 to report incidents which may affect their license, including all arrests wherever it occurred.  The License Division's Incident Section reviews the facts and circumstances regarding all incidents and makes recommendations as to whether to suspend or revoke a particular license.  The License Division also receives reports from DCJS regarding all arrests made within the State of New York for which an arrestee is fingerprinted.

24.     No formal report is forwarded to the License Division for summonses and other arrests and incidents for which a detainee is not fingerprinted.  With respect to arrests made outside the State of New York or by the federal government, the License Division may be, but is not always, notified of an arrest by the arresting jurisdiction.

25.     The NYPD Department Manual (Patrol Guide Procedure 212-118) includes a procedure for NYPD personnel to investigate and report incidents involving holders of handgun licenses and rifle/shotgun permits to the License Division Incident Section.  Among other things, the procedure directs that if the holder has a Premises Residence license, the investigating supervisor must ascertain whether the handgun was possessed at the premise listed on the license at the time of the incident.  If the licensee claims to have been traveling to or from an authorized range, the investigating supervisor must ascertain whether the handgun was unloaded in a locked container with ammunition carried separately, and whether the licensee was traveling directly to or from the range.  A copy of Patrol Guide Procedure No. 212-118, is annexed hereto as Exhibit "B."

26.     The procedure also includes a list of the type of incidents involving holders of a handgun license or rifle/shotgun permit that require an investigation be conducted

and reporting to the License Division Incident Section.  The list, which is contained in the "Additional Data" section, includes the following: "Violating terms, conditions, or rules relating to the license/permit (including but not limited to carrying a firearm in public with a Premises Residence license, transporting a firearm on a Premises Residence license for use at an authorized range that is not unloaded in a locked box, and exceeding time or place restrictions on a Limited Carry license)."  Exhibit "B."

### History and Elimination of the New York City Target License

27.      Although not specifically authorized by New York State Penal Law § 400.00, up until 2001, the License Division had issued a class of licenses called the "target license" to New York City residents.  The Target License was eliminated for various reasons, including harmonizing the classifications of licensure in New York City with those specifically authorized by the Penal Law.  The Target License was a category of firearm licenses issued only by the Police Department (under the theory that it was a conditional "carry license") and permitted the transport of a registered firearm, unloaded, to and from an authorized shooting range or club for regular recreational target shooting purposes.

28.      One of the chief reasons that the Target License was eliminated in 2001 was the history of incidents experienced by the License Division of non-compliance with the limitations of the Target License.  Over many years, myriad examples were reported to the License Division of licensees bearing Target Licenses travelling with their firearms when it was clear that they were not on the way to or from an authorized range.  Examples included, licensees travelling with loaded firearms, licensees found with firearms nowhere near the vicinity of an authorized range, licensees taking their firearms on airplanes, and licensees travelling with their firearms during hours where no authorized range was open.

29.     The License Division revoked many pistol licenses with target endorsement, such as that of Rafael Lugo, who was found to have violated 38 RCNY § 5-01(b) when his briefcase containing the pistol was reported stolen during a street robbery and there was no evidence to support Mr. Lugo's testimony that he was on his way to an authorized range.  See Matter of Lugo v. Safir, 272 A.D.2d 216 (1st Dep't 2000).  A copy of this decision is annexed hereto as Exhibit "C."

30.     Over the years, there were several reported cases where licensees who held only Target licenses, or Premises Residence licenses with target endorsement, were charged with criminal possession of a weapon when found with their firearms while not en route to a range.  However, Courts struggled to precisely define the restrictions associated with the target licenses.  Although the Courts found that the defendants were engaged in activity in violation of the terms and conditions of their licenses, the Courts concluded that it was unclear if the defendants could be charged with criminal possession of a weapon without a license.  See, e.g., People v. Thompson, 92 N.Y.2d 957 (1998); People v. Ocasio, 108 Misc.2d 211 (2d Dep't 1981); People v. Lap, 150 Misc.2d 724 (N.Y. Crim. Ct., N.Y. County 1991); People v. Schumann, 133 Misc.2d 499 (N.Y. Crim. Ct., Bronx County 1986).  Copies of these cases are collectively annexed hereto as Exhibit "D."

31.     The Police Commissioner through the License Division is best situated to evaluate the safety concerns with respect to different kinds of licenses.  The abuses of the Target License led the Police Commissioner to promulgate rules that eliminated that license and converted existing Target Licenses into Premises Residence licenses, which allow for the same

benefit, the transport of a firearm (locked and unloaded) to an authorized range.[3]  See 38 RCNY § 5-23(a)(3).

**Obtaining Approval as a New York City Authorized Range**

32.     In accordance with Administrative Code § 10-131(c), it is unlawful for anyone to discharge firearms in New York City anywhere other than places specifically designated by the New York City Police Commissioner.  As such, the New York City Police Department ("NYPD") has established a procedure for individuals or organizations to apply to the NYPD for a special designation to operate a small arms range in New York City.

33.     Persons/entities interested in obtaining a designation by the Police Commissioner to operate an authorized small arms range, must submit an application to the NYPD for designation as an approved Small Arms Range in New York City.  A copy of the application form, along with the detailed requirements all approved Small Arms Ranges must follow in New York City set forth on the back of the application form, is annexed hereto as Exhibit "E."

34.     On the application, the applicant must provide a name and residence for the applicant, a location for the proposed range, information about whether the proposed range is for an outdoor or indoor range and if indoor, where within a building the range would be located, information about any clubs or organizations the range is associated with, the type of weapons for which authorization is being sought, and other information.  See Exhibit "E."

---

[3] The rule also eliminated Special Target licenses.  These were target licenses issued to persons who resided in other New York counties outside of New York City to target shoot in New York City.  Those licenses were not replaced.

35.    A background check is conducted for each applicant, and all persons/officers associated with any organizational or corporate entity applicant. In addition, for each application, the NYPD consults with the New York City Department of Buildings ("DOB") for a complete review of the zoning, property and land use designations for the proposed site. For a full description of the process governing applicants for designation as Small Arms Ranges, a copy of NYPD Administrative Guide Procedure No. 321-09, issued June 1, 2005, is annexed hereto as Exhibit "F."

36.    Each application goes through a several step review and approval process, starting with the Commanding Officer of the local police precinct, to the License Division, the Borough Commander, the Commanding Officer of the Firearms and Tactics Section of the NYPD Police Academy, the Chief of the Department, the Deputy Commissioner, Legal Matters, and finally, designated by the Police Commissioner. As with all licenses issued by the NYPD public safety is the primary concern during the review. See Exhibit "F."

37.    The NYPD has specific requirements in place governing authorized Small Arms Ranges, including requirements that indoor facilities have appropriate sound absorbent materials in place to contain the noise, and specifics on how targets and firing booths must be set up to ensure the safety of patrons and employees of the authorized range. See Exhibit "E." In addition, the Administrative Guide sets forth specific requirements governing operators of authorized Small Arms Ranges, that are to be explicitly listed in their approval letter, including: all ranges must keep a roster of the names and addresses of all persons using the range with the date and time noted, all ranges must follow all federal and New York City Fire Department laws pertaining to the storage and possession of ammunition and power, all ranges must allow only those with valid licenses to discharge weapons at their ranges, all ranges must keep their record,

**JA80**

books, and membership rosters available for immediate inspection by NYPD officials, and all ranges must prominently display their designation letters. See Exhibit "F."

38.     Once an individual or entity has received a designation as an approved Small Arms Range in New York City, their designation may be suspended or revoked at any time for failure to comply with the terms of the designation, violation of any laws or rules, or any incidents which occur at the authorized range.

**Authorized Ranges in New York City**

39.     Currently, there are eight NYPD approved Small Arms Ranges in New York City (not including police or military ranges).    In April 2014, I directed police officers assigned to the License Division to make inquiries to the ranges in New York City about their policies.  A listing of all designated New York City ranges is annexed hereto as Exhibit "G."

40.     Currently, seven of the eight ranges are available to anyone possessing a valid license or permit.  Six public ranges ask for membership, but are fully available for any member of the public to join, if they pay the membership fee (much like a membership in a health club/gym).    They are: (1) Westside Rifle & Pistol Range on West 20th Street in Manhattan; (2) Woodhaven Rifle & Pistol Range in Woodhaven, Queens; (3) Seneca Sporting Range, Inc. located in Ridgewood, Queens; (4) Bay Ridge Road & Gun Club, Inc., located in Bay Ridge, Brooklyn, (5) Colonial Rifle & Pistol Club, located in Staten Island; and (6) the Richmond Borough Gun Club, located in Staten Island.  Olinville Arms, located in the Bronx is available to the public for shooting (for a fee), and does not require membership.[4]

---

[4] Olinville Arms, Inc. had been temporarily closed due to a fire, however, it has recently re-opened and is available to the public. See printout from Olinville Arms' website, annexed hereto as Exhibit "H."

41.   It should be noted that each of the NYPD-approved Small Arms Ranges are commercial enterprises that are free to make their own determinations about how they will accept payment for their services, and to change the method at any time according to their business judgment.  By analogy, commercial gym facilities are available for anyone to join, and each gym typically makes a business judgment as to whether to require membership.

42.   I understand that plaintiffs allege that no authorized New York City Small Arms Range hold any competitive shooting events.  However, we are aware that at least some New York City designated ranges do hold regular shooting competitions and other events. Specifically, the Richmond Borough Gun Club, located at 4775 Arthur Kill Road in Staten Island (of which plaintiff Romolo Colantone was President, at least as of the time plaintiffs' filed this action) notes on its website that it has weekly shooting events.  Copies of printouts from relevant pages of the Richmond Borough Gun Club's website (www.richmondborogc.org) are collectively annexed hereto as Exhibit "I."  In particular the website states that:  "[v]arious rifle and pistol matches are held each week" at the range.  Id.  The website refers to regular steel challenge plate matches and bullseye matches, which are pistol and rifle shooting competitions (some of which are governed by rules of the National Rifle Association).  Id.  In addition, the website states that non-members of the gun club may access the range at certain times and to compete in certain competitions.  Id.

Dated:  New York, New York
         May 29, 2014

ANDREW LUNETTA

16

# EXHIBIT

# A



**INSTRUCTIONS TO HANDGUN LICENSE APPLICANTS**
PD 643-115 (Rev. 05-12)

POLICE DEPARTMENT
CITY OF NEW YORK
HANDGUN LICENSE APPLICATION SECTION
LICENSE DIVISION ROOM 110A

### INSTRUCTIONS TO ALL HANDGUN LICENSE APPLICANTS

The attached application MUST be typewritten and signed. Only the original application will be accepted. DO NOT SUBMIT A PHOTOCOPY. The application must be completely filled out and presented by you personally at the License Division.

At the time you submit your application, you must furnish the items listed below that are applicable to you. You must submit original copies of certificates, licenses, etc. In addition, a legible photocopy of each item submitted must accompany the original or certified copy. (A copy certified by the issuing agency as true and complete is also acceptable in lieu of the original.) Your application will not be accepted without producing the required documents.

1.  **Fees.** Two (2) separate fees are required. These are payable by certified check, bank check, money order or credit card. All fees are non-refundable.
    – $340.00 - Made payable to New York City Police Department
    – $ 91.50 - Made payable to New York City Police Department

2.  **Photographs.** Two (2) recent color photographs of yourself. They should measure 1½ x 1½ inches and show you from the chest up. Do not wear any article of clothing or adornment that obscures your facial features.

3.  **Birth Certificate.** In lieu of your birth certificate, some other proof of your birth date, e.g., a military record, U.S. passport or baptismal certificate, must be submitted.

4.  **Proof of Citizenship/Alien Registration.** If you were born outside the United States, you must submit your naturalization papers or evidence of citizenship if derived from your parents. All other applicants born outside the United States must submit their Alien Registration Card. If you have lived in this country less than 7 years you must submit a good conduct certificate from your country of origin.

5.  **Military Discharge.** If you served in the armed forces of the United States, you must submit your separation papers (DD 214) and your discharge.

6.  **Proof of Residence.** You must submit proof of your present address. Proof may consist of, but is not limited to, a real estate tax bill, ownership shares in a cooperative or condominium, or a lease. You may also be requested to supply further documentation, i.e., a **New York State** Driver's License, a **New York State** Income Tax Return, a Utility Bill, etc.

7.  A.) **Arrest Information:** If you were ever arrested, indicted or summonsed (other than parking violations) for any reason you must answer Yes to question-23 and submit a certificate of disposition showing the offense and the disposition. Also, you must submit a detailed statement describing the circumstances surrounding each arrest. **YOU MUST DO THIS EVEN IF:** the case was dismissed, the record sealed or the case nullified by operation of law. The New York State Division of Criminal Justice Services will report to us every instance involving the arrest of an applicant. **DO NOT** rely on anyone's representation that you need not list a previous arrest because it was sealed. If you were ever convicted or pleaded guilty to a felony, or a serious offense as defined in Penal Law Section 265.00(17), an original Certificate of Relief from Disabilities must be submitted.
    B.) **Summons Information:** If you have received a summons for other than a parking violation you must answer Yes to question-23. You must list the violation and disposition for each summons received.
    C.) **Order of Protection:** If you have ever had an Order of Protection or Restraining Order issued against you, or issued on your behalf against anyone, you must list the following information: Court of Issuance; Complainant's or Respondent/Defendant's name, including address and phone number; Complainant's or Respondent/Defendant's relationship to you; Reason for issuance of Order of Protection or Restraining Order.

8.  **Proof of Business Ownership.** If you are making application for a License in connection with a business, you must submit proof of ownership for that business. Such proof must clearly state the names of the owner(s) or, if a corporation, the names of the corporate officers. A corporation must submit its corporate book including filing receipt, certificate of incorporation and minutes of the corporate meeting reflecting current corporate officers; others must provide their business certificate or partnership agreement, whichever is applicable. If the business requires a license or permit from any government agency, e.g. alcohol or firearms sales, gunsmith, private investigation and guard agencies, you must submit the license or permit or a certified copy thereof. You must submit proof of address for the business. Proof may consist of a utility bill, not more than 60 days old, in the name of the business or a lease in the name of the business.

9.  **Letter of Necessity.** All applicants for a carry license and those seeking a premise license for use in connection with their employment MUST complete the Letter of Necessity found on page 3 of the application. NO SUBSTITUTES WILL BE ACCEPTED.

10. You must bring your original social security card when you apply.

If you have any questions concerning your application, please call (646) 610-5551. Applications must be submitted in person at the License Division, One Police Plaza Room 110, New York, NY or the Rifle/Shotgun Section, 120-55 Queens Blvd. Rm. B11, Kew Gardens, NY. The License Division's hours of operation are: Monday between the hours of 8:30 a.m. to 8:00 p.m. or Tuesday thru Friday between the hours of 8:30 a.m. to 4:00 p.m. Applicants must arrive early enough for processing to be completed by the close of business.

http://nyc.gov/html/nypd/html/permits/handgun_licensing_application.shtml

**JA84**

# HANDGUN LICENSE APPLICATION

**POLICE DEPARTMENT • CITY OF NEW YORK**

PD 643-041 (Rev. 11-10)

  **LICENSE DIVISION**
**1 POLICE PLAZA**
**NEW YORK, N.Y. 10038** 

| Photo taken within 30 days prior to date of application.<br><br>FRONT VIEW<br>1½ x 1½<br>Square | | OFFICIAL USE ONLY |
|---|---|---|
| | | NYSID NUMBER |

All applications must be typewritten. <u>DO NOT MAKE ENTRIES IN SHADED AREAS.</u> Necessary fee must accompany application. Make Bank Check, Certified Check or Money Order payable to the Police Department, City of New York. Payment may also be made by credit card. Not refundable if application is disapproved. (Administrative Code Sec. 10-131)

## SECTION A
### TO BE ANSWERED BY <u>ALL</u> APPLICANTS

☐ CARRY BUSINESS   ☐ CARRY GUARD/SECURITY   ☐ RETIRED POLICE OFFICER
☐ LIMITED CARRY   ☐ GUN CUSTODIAN   ☐ PREMISES (Indicate ☐ Residence  ☐ Business)
☐ SPECIAL (out of city validation.) CARRY

| LICENSE NUMBER (Renewal Applicant) | YEAR | Do you possess any other NYC Handgun Lic.? If YES TYPE        LIC. NO. | ☐ Complaint No. |
|---|---|---|---|
| | | | ☐ Lost |
| | | | ☐ Mutilated |

| 1. Last Name | First Name | M.I. | Maiden Name/Alias | Corp Code | Cust Code |
|---|---|---|---|---|---|

| 2. Legal Address (Street No.) | Apt. # | City or Town | State | Zip Code |
|---|---|---|---|---|

| 3 ☐ Citizen ☐ Alien | Alien Registration Number | Social Security Number | Res. Pct. | OCC Code | Total Guns Code |
|---|---|---|---|---|---|

| Home Phone No. | Cell Phone No. | Email Address |
|---|---|---|

| 4. Place of Birth - City, State, Country | Age | Date of Birth | Hgt. (inches) | Wgt. | Sex | Color of Hair | Color of Eyes |
|---|---|---|---|---|---|---|---|

## EMPLOYMENT INFORMATION

| 5. Name of Business | Type of Business | Bus. Pct. |
|---|---|---|

| 6. Business Address (Street No.) | City or Town | State | Zip Code |
|---|---|---|---|

| 7. Bus. Telephone No./Day | Occupation (Owner - Employee - Gun Custodian) | How many other persons in this business have N.Y.C. Handgun Licenses? |
|---|---|---|

8. If applicable, list name, job title and license number of company gun custodian

## VALIDATION OF OUT OF CITY LICENSE (Special Handgun License ONLY)

| 9. Basic License Number | Issued By | County | Date Issued | Expiration Date |
|---|---|---|---|---|

## LIST HANDGUNS FOR THIS APPLICATION ONLY

10. **(ORIGINAL APPLICANT LEAVE BLANK)**

| | MAKE | MODEL | GUN SERIAL NUMBER | CALIBER | TYPE<br>R Revolver<br>A Automatic | OWNER<br>E Employer<br>S Self | MAKE CODE |
|---|---|---|---|---|---|---|---|
| 001 | | | | | | | |
| 002 | | | | | | | |

| | OFFICIAL USE ONLY Right Thumb |
|---|---|
| ### NOTICE<br>Pursuant to Penal Law Section 400.00(5), the name and address of any person to whom an application for any license has been granted, shall be a public record. | |
| | SIGNATURE OF PERSON PRINTED |

## SECTION B

**Applicants must answer questions 10 through 24. Additionally questions 29 through 31 must be answered chronologically and in detail. If you have answered YES to question(s) 10 through 28 you MUST use the HANDGUN LICENSE APPLICATION ADDENDUM (PD 643-041A ) to explain such answer(s) in complete detail. A FALSE STATEMENT SHALL BE GROUNDS FOR DENIAL OF A N.Y.C. HANDGUN LICENSE**

### HAVE YOU EVER...

10. Had or ever applied for a Handgun License issued by any Licensing Authority in N.Y.S.? ........................ ☐ Yes   ☐ No

11. Been discharged from any employment? .................................................................................................. ☐ Yes   ☐ No

12. Used narcotics or tranquilizers? List doctor's name, address, telephone number, in explanation. ........... ☐ Yes   ☐ No

13. Been subpoenaed to, or testified at, a hearing or inquiry conducted by any executive, legislative or judicial body? ...................................................................................................................... ☐ Yes   ☐ No

14. Been denied appointment in a civil service system, Federal, State, Local? .......................................... ☐ Yes   ☐ No

15. Served in the armed forces of this or any other country? ....................................................................... ☐ Yes   ☐ No

16. Received a discharge other than honorable? ......................................................................................... ☐ Yes   ☐ No

17. Been rejected for military service? ......................................................................................................... ☐ Yes   ☐ No

18. Are you presently engaged in any other employment, business or profession where a need for a firearm exists? ...................................................................................................................................... ☐ Yes   ☐ No

19. Had or applied for any type of license or permit issued to you by any City, State or Federal agency? ...... ☐ Yes   ☐ No

20. Has any corporation or partnership of which you are an officer, director, or partner, ever applied for or been issued a license or permit issued by the Police Dept? Give type, year, license number, in explanation. .......... ☐ Yes   ☐ No

20a. Has any officer, director or partner ever applied for or been issued a license or permit issued by the Police Department? Give type, year, license number, in explanation. ............................................... ☐ Yes   ☐ No

21. Suffered from mental illness, or due to mental illness received treatment, been admitted to a hospital or institution, or taken medication? List Doctor's/Institutions, Name, Address, Phone #, in explanation .. ☐ Yes   ☐ No

22. Have you ever suffered from any disability or condition that may affect your ability to safely possess or use a handgun? List Doctor's Name, Address, Phone #, in explanation. .............................. ☐ Yes   ☐ No

    **NOTE:** The following conditions must be listed: Epilepsy, Diabetes, Fainting Spells, Blackouts, Temporary Loss of Memory or any Nervous Disorder.

**Before answering questions number 23 thru 26, read paragraph 7 of the instructions completely.**

23. Been arrested, indicted, or summonsed for **ANY** offense other than Parking Violations, in **ANY** jurisdiction, federal, state, local or foreign? You must include cases that were dismissed and/or the record sealed. List the following: date, time, charge(s),disposition, court and police agency. (False statements are grounds for disapproval). ................................................................................... ☐ Yes   ☐ No

24. Have you ever, or do you now have an Order of Protection issued against you? ....................................... ☐ Yes   ☐ No

25. Have you ever, or do you now have an Order of Protection issued by you against a member of your household, or any family member? ...................................................................................................... ☐ Yes   ☐ No

26. Have you ever, or do you now have an Order of Protection issued by you against a person other than a member of your housold or family? ...................................................................................................... ☐ Yes   ☐ No

If you have answered yes to questions 24 - 26, you must indicate the following information:

    a. Court of Issuance

    b. Date of Issuance

    c. Complainant's Name, Address and Telephone Number

    d. Complainant's relationship to you

    e. Reason for issuance of Order of Protection

27. Have the police ever responded to a domestic incident in which you were involved? ............................... ☐ Yes   ☐ No

28. Used any variation in spelling of your name or any other name used? (Alias), explain. ............................ ☐ Yes   ☐ No

| FROM | TO | LIST ALL PLACES OF RESIDENCE FOR PAST FIVE (5) YEARS | PRECINCT |
|------|-----|-----------------------------------------------------|----------|
| (MONTH AND YEAR) | | RESIDENCE (Include State, County, Zip Code and Apt. No.) | |
| 29. | PRESENT | | |

| FROM | TO | LIST ALL PLACES OF EMPLOYMENT FOR PAST FIVE (5) YEARS | OCCUPATION | PRECINCT |
|------|-----|------------------------------------------------------|------------|----------|
| (MONTH AND YEAR) | | BUSINESS NAME AND ADDRESS (Include State, County, Zip Code and Apt. No.) | | |
| | PRESENT | | | |

30. How and where will handgun(s) be safeguarded when not in use? (Location outside of N.Y. State is unacceptable).

31. Give name, address, relation and telephone number of person who will safeguard handgun(s) in case of applicant's death or disability. Must be a N.Y. State resident.

The undersigned affirms that the statements made and answers given herein are accurate and complete, and hereby authorizes the New York City Police Department, License Division to make appropriate inquiries in connection with processing this application. **False written statements in this document are punishable** under Section 210.45 of the New York Penal Law (making a punishable false written statement) and also will be sufficient cause for denial of an application, license or permit by the New York City Police Department, License Division.

Date _____   Signature _____

| INVESTIGATING OFFICER'S SIGNATURE | DATE | TAX REGISTRY NO. | ☐ APPROVAL ☐ DISAPPROVAL and REASON |
|-----------------------------------|------|------------------|-------------------------------------|
| SUPERVISOR'S SIGNATURE | DATE | TAX REGISTRY NO. | ☐ APPROVAL ☐ DISAPPROVAL and REASON |
| C.O. INVEST. SECTION SIGNATURE | DATE | TAX REGISTRY NO. | ☐ APPROVAL ☐ DISAPPROVAL and REASON |
| C.O. LICENSE DIVISION SIGNATURE | DATE | TAX REGISTRY NO. | ☐ APPROVAL ☐ DISAPPROVAL and REASON |

## ADDITIONAL INSTRUCTIONS FOR CARRY LICENSE APPLICANTS

### LETTER OF NECESSITY

All applicants for a carry license for use in connection with a business or profession must answer the following questions in the space provided. If additional space is necessary continue your letter on reverse side. In ALL CASES the form provided must be used.

1. A detailed description of the applicant's employment and an explanation of why the employment requires the carrying of a concealed handgun.

2. A statement acknowledging that the handgun may only be carried during the course of and strictly in connection with the applicant's job, business or occupational requirements, as described herein.

3. A statement explaining the manner in which the gun will be safeguarded by the employer and/or applicant when not being used.

4. A statement indicating that the applicant has been trained or will receive training in the use and safety of a handgun.

5. A statement acknowledging that the applicant's employer, or, if self employed, the applicant, is aware of its or his or her responsibility to properly dispose of the handgun and return the license to the License Division upon the termination of the applicant's employment or the cessation of business.

6. A statement indicating that the applicant, and if other than self employed, a corporate officer, general partner, or proprietor, has read and is familiar with the provisions of Penal Law Articles 35 (use of deadly force), 265 (criminal possession and use of a firearm) and 400 (responsibilities of a handgun licensee).

The Letter of Necessity is part of this application. Any false statement is an offense punishable as a Class A Misdemeanor pursuant to to Section 210.45 of the New York State Penal Law.

The undersigned affirms that the statements made and answers given herein are accurate and complete, and hereby authorizes the New York City Police Department, License Division to make appropriate inquiries in connection with processing this application. **False written statements in this document are punishable** under Section 210.45 of the New York Penal Law (making a punishable false written statement) and also will be sufficient cause for denial of an application, license or permit by the New York City Police Department, License Division.

Date _____   Signature _____

### ADDITIONAL DOCUMENTATION TO BE PRESENTED AT PERSONAL INTERVIEW

At the time of your interview, you must also furnish the following documents, as they apply to you:

1.  The two (2) most recent copies of the business's sales tax report (ST 100) submitted to the State of New York and Federal Tax Return submitted for the previous year. If the business is solely a wholesale operation, a copy of the Federal tax return submitted for the previous tax year must be submitted. All tax forms must bear notarized signatures.

2.  When requested by your investigator, your personal income tax return for the previous tax year.

3.  Daily bank deposit slips and corresponding bank statements for the six months preceding the date of your interview. (Photocopies will not be accepted.)

4.  A statement from your bank setting forth the total amount of your payroll and the total amount of payroll checks cashed during the three months immediately preceding the date of your interview.

5.  If you were the victim of a crime which occurred during the course of your business or professional activities during the previous two years, you must provide the complaint report number, date and the precinct of occurrence.

At the time of your interview, your investigating officer will advise you if any additional forms or documents are required.

### NOTICE TO ALL APPLICANTS:

While the application is pending, the applicant shall make an immediate report to the License Division, Applicant Section at (646) 610-5551, of any of the following occurrences:

1.  Arrest, indictment, or conviction in any jurisdiction; summons other than traffic infraction; suspension or ineligibility order issued pursuant to section 530.14 of the New York State Criminal Procedure Law or Section 842-a of the New York State Family Court Act.

2.  Change of business or residence address.

3.  Change of business, occupation or employment.

4.  Any change in the circumstances cited by the applicant in their application.

5.  Receipt of psychiatric treatment or treatment for alcoholism or drug abuse, or the presence or occurence of any disability or condition that may affect the ability to safely possess or use a handgun.

6.  Applicant is or becomes the subject or recipient of an Order of Protection or a Temporary Order of Protection.

The applicant may be required to provide additional documentation for any of the above occurrences to License Division personnel.



**HANDGUN LICENSE APPLICATION
ADDENDUM**
PD 643-041A (11-10)

This form is to be used to provide a detailed explanation for any "yes" answers to questions 10 through 28 on the **HANDGUN LICENSE APPLICATION (PD 643-041)**. This form may be reproduced if necessary.

| Question Number | Detailed Explanation |
| --- | --- |
| | |

The undersigned affirms that the statements made and answers given herein are accurate and complete, and hereby authorizes the New York City Police Department, License Division to make appropriate inquiries in connection with processing this application. **False written statements in this document are punishable** under Section 210.45 of the New York Penal Law (making a punishable false written statement) and also will be sufficient cause for denial of an application, license or permit by the New York City Police Department, License Division.

Date _____ Signature _____

NEW YORK CITY CHARTER
CHAPTER 18-C: PUBLIC SAFETY*

*NYC Charter § 460*

§ 460 Gun-free school safety zones.

a. It shall be a crime for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone.

b. Subdivision a of this section shall not apply where the firearm is:

(i) possessed and kept in such individual's home in a school zone, provided that such individual is licensed or permitted to possess such firearm; or

(ii) possessed and kept at such individual's business in a school zone, provided that such individual is licensed or permitted to possess such firearm.

c. Affirmative defenses to the crime established in subdivision a shall include possession of a firearm:

(i) carried for personal safety between such individual's business, home, or bank in a school zone, provided that such individual is licensed or permitted to possess such firearm for such purpose;

(ii) just purchased or obtained by such individual and being transported that same day for the first time to such individual's home or business in a school zone where it will be stored, provided that such individual is licensed or permitted to possess such firearm;

(iii) carried between a police department facility for inspection and an individual's business, home, bank, or point of purchase in a school zone, provided that such individual is licensed or permitted to possess such firearm;

(iv) carried by licensed or permitted individuals and being transported to or from an authorized target practice facility;

(v) carried between a gunsmith for demonstrably needed repairs and an individual's business or home in a school zone, provided that such individual is licensed or permitted to possess such firearm;

(vi) used in an athletic or safety program approved by a school in a school zone, or by the police commissioner, or in accordance with a contract entered into between a school within the school zone and the individual or an employer of the individual, provided that such individual is licensed or permitted to possess such firearm for such purpose; or

(vii) used in accordance with a contract entered into between a business within the school zone and the individual or an employer of the individual, provided that such individual is licensed or permitted to possess such firearm for such purpose.

d. It shall be a crime for any person, knowingly or with reckless disregard for the safety of another, to discharge a firearm in a school zone.

e. Affirmative defenses to the crime established in subdivision d shall include discharge of a firearm:

(i) by an individual for self-defense, provided that such individual is licensed or permitted to possess such firearm for such purpose;

(ii) for use in a special event or safety program authorized by a school in a school zone or by the police commissioner;

(iii) by an individual in accordance with a contract entered into between a school in the school zone and the individual or an employer of the individual, provided that such individual is licensed or permitted to possess such firearm for such purpose; or

(iv) by an individual in accordance with a contract entered into between a business and the individual or an employer of the individual, provided that such individual is licensed or permitted to possess such firearm for such purpose.

f. Any person who violates this section shall be guilty of a misdemeanor, punishable by imprisonment of not more than one year or by a fine of not more than ten thousand dollars, or both.

g. In addition to the penalties prescribed in subdivision f of this section, any person who violates this section shall be liable for a civil penalty of not more than ten thousand dollars.

h. This section shall not apply to a police officer, as such term is defined in section 1.20 of the criminal procedure law, or a federal law enforcement officer, as such term is defined in section 2.15 of the criminal procedure law.

**JA91**

i. The police commissioner may promulgate rules implementing the provisions of this section. The police commissioner shall provide written notice of the requirements of this section to all persons who receive an official authorization to purchase a firearm and to all persons applying for a license or permit, or renewal of a license or permit. Failure to receive such notice shall not be a defense to any violation of this section.

j. The city of New York and its agencies, officers or employees shall not be liable to any party by reason of any incident or injury occurring in a gun-free school safety zone arising out of a violation of any provision of this section.

NEW YORK CITY CHARTER
CHAPTER 18-C: PUBLIC SAFETY*

*NYC Charter § 459*

§ 459 Definitions.

a. The term "school" means a public, private or parochial, day care center or nursery or pre-school, elementary, inter-mediate, junior high, vocational, or high school.

    b. The term "school zone" means in or on or within any building, structure, athletic playing field, playground or land contained within the real property boundary line of a public, private or parochial day care center or nursery or pre-school, elementary, intermediate, junior high, vocational, or high school, or within one thousand feet of the real property boundary line comprising any such school.

    c. The term "firearm" means a firearm, rifle, shotgun, or assault weapon, as such terms are defined in section 10-301 of the administrative code, or a machine gun, as defined in penal law section 265.00.

HISTORICAL NOTES:

    Section added at General Election, November 6, 2001 (Question 3 § 1) eff. immediately upon certification that electors have approved the amendments.

## TYPES OF LICENSES

**PREMISES LICENSE:** ISSUED FOR YOUR RESIDENCE OR BUSINESS, THIS IS A RESTRICTED TYPE OF LICENSE.  The Licensee may possess a handgun at the specific location indicated on the front of the license.  This license permits the transporting of an unloaded handgun directly to and from an authorized small arms range/shooting club, secured unloaded in a locked container.  Ammunition must be carried separately.

**CARRY BUSINESS LICENSE:** IS VALID FOR THE BUSINESS NAME, ADDRESS, AND FIREARM(S), LISTED ON THE FRONT OF THE LICENSE.  IT IS NOT TRANSFERABLE TO ANY OTHER PERSON, BUSINESS, OCCUPATION, OR ADDRESS, WITHOUT THE WRITTEN APPROVAL OF THE COMMANDING OFFICER, LICENSE DIVISION.

**LIMITED CARRY BUSINESS LICENSE:** IS A RESTRICTED LICENSE.  THE LICENSEE MAY ONLY CARRY THE FIREARM INDICATED ON THE LICENSE IN ACCORDANCE WITH THE SPECIFIC LIMITATIONS LISTED THEREON.  AT ALL OTHER TIMES THE WEAPON MAY BE POSSESSED ONLY WITHIN THE CONFINES OF THE BUSINESS ADDRESS LISTED ON THE FRONT OF THE LICENSE.

**SPECIAL CARRY LICENSE:** IS VALID FOR THE BUSINESS NAME, ADDRESS AND FIREARMS(S) LISTED ON THE FRONT OF THIS LICENSE ONLY WHILE THE LICENSEE HAS IN HIS POSSESSION HIS VALID BASIC COUNTY LICENSE ISSUED ACCORDING TO THE PROVISIONS OF ARTICLE 400 OF THE N.Y.S. PENAL LAW.  UPON THE REVOCATION, SUSPENSION, OR CANCELLATION OF THE BASIC LICENSE, THE SPECIAL LICENSE IS RENDERED VOID AND MUST BE IMMEDIATELY RETURNED TO THE LICENSE DIVISION.

**RESTRICTED CARRY LICENSE (SECURITY GUARDS, ETC.):** APPLICATIONS FOR THIS TYPE OF LICENSE MUST BE MADE WITH THE DOCUMENTATION PROVIDED BY THE COMPANY'S "GUN CUSTODIAN".  IT IS ISSUED ONLY FOR THE FIREARM LISTED ON THE LICENSE.  THE FIREARM MAY BE CARRIED ONLY WHILE THE LICENSEE IS ACTIVELY ENGAGED IN EMPLOYMENT.  AT ALL OTHER TIMES THE FIREARM MUST BE STORED UNLOADED IN A LOCKED CONTAINER AT EITHER THE ADDRESS ON THE LICENSE OR AT THE EMPLOYEE'S LEGAL RESIDENCE (WITHIN THE STATE OF NEW YORK).

For information concerning "Gun Custodian" licenses, "Dealers in Firearms" licenses, or "Gunsmith" licenses you may contact the License Division's Gun Custodian Section at 646-610-5936

**JA94**

# PERSONS PROHIBITED
# FROM POSSESSING FIREARMS

## TITLE 18, UNITED STATES CODE, SECTION 922g

❖ ANYONE UNDER INDICTMENT FOR A CRIME FOR WHICH THEY COULD
   BE IMPRISONED FOR MOR THAN ONE YEAR.

❖ ANYONE CONVICTED OF A CRIME FOR WHICH THEY COULD HAVE BEEN
   IMPRISONED FOR MORE THAN ONE YEAR.

❖ ANYONE WHO IS AN UNLAWFUL USER OF MARIJUANA, NARCOTICS OR
   ANY CONTROLLED SUBSTANCE.

❖ ANYONE WHO HAS BEEN ADJUDICATED MENTALLY DEFECTIVE OR
   INVOLUNTARILY COMMITTED TO A MENTAL INSTITUTION.

❖ ANYONE DISHONORABLY DISCHARGED FROM THE ARMED FORCES.

❖ ANYONE IN THE UNITED STATES ILLEGALLY.

❖ ANYONE SUBJECT TO A COURT ORDER RESTRAINING THEM FROM
   HARASSING, STALKING OR THREATENING AN INTIMATE PARTNER OR
   CHILD OF A PARTNER.

❖ ANYONE CONVICTED OF A <u>MISDEMEANOR</u> CRIME OF DOMESTIC
   VIOLENCE.

**A PROHIBITED PERSON CANNOT RECEIVE OR POSSESS A FIREARM.**

A LICENSED DEALER MAY NOT TRANSFER A FIREARM TO ANYONE THEY HAVE CAUSE TO

BELIEVE IS PROHIBITED.

THESE ARE VIOLATIONS OF FEDERAL LAW AND MAY RESULT IN FINES OR
IMPRISONMENT OF UP TO 10 YEARS.

**JA95**

## REQUEST FOR PRE-LICENSE EXEMPTION

Pistol License Applicant:

If you wish to request consideration for a pre-license exemption, you must complete this form and return it to the License Division at the time you file your application for a handgun license.

Your request will be reviewed after an investigation is conducted to determine if you have a previous criminal record. A determination to approve or disapprove your request will be made at that time. Approval of your request will authorize you to shoot at an appropriate range while your application for a handgun license is under investigation.

This exemption terminates if your application for a license is denied or at any earlier time based on information which would result in the denial of your application.

Commanding Officer
License Division

_____                    _____
Applicant's Name                                Application Control Number

_____
Applicant's Address

_____        _____         _____
Age                    Birth Date               Type of License

_____               _____
Name of Range, Address, Telephone Number        Name of Instructor

Instructor's Verified Statement:
_____
_____
_____
_____

_____                     _____
Applicant's Signature                           Instructor's Signature

### THIS FORM MUST BE TYPED AND NOTARIZED

**JA96**

AFFIDAVIT OF FAMILIARITY WITH RULES AND LAW
(38 RCNY 5-33)

State of New York
County of _____ ss.:

The undersigned, being duly sworn, deposes and says that he/she shall be responsible for
knowledge of and compliance with all laws, rules, regulations, standards and procedures
promulgated by federal, state, or local jurisdictions, and by federal, state or local law
enforcement agencies that are applicable to this license.

_____
Signature

Sworn to before me this
_____ day of _____, 200__

_____
Notary Public

**JA97**



**Affidavit of Co-Habitant**

State of New York

County of _____ ss.:

I, _____, residing at
(Name of person making affidavit)

_____
(Address, including zip code)

in the City of New York, do hereby affirm that the applicant,

_____,
(Name of applicant)
currently resides with me at the above address.

My relationship to the applicant is _____.
(Nature of relationship)

My telephone number is      (H)_____

(C)_____

(W)_____

I understand that the applicant has applied for a rifle/shotgun permit or handgun license
from the New York City Police Department, and I have no objection to him/her receiving
a permit or license and storing firearms in my home.

_____
(Signature)

Sworn to before me this

_____ day of _____

_____
Notary Public

Revised 9/25/2009

**JA98**

 **New York City Police Department**
**License Division**
One Police Plaza
New York, NY 10038
**(646) 610-5560** 

# Acknowledgement of Person Agreeing to Safeguard Firearm(s)

Name of Applicant / Licensee: _____

Application / License Number: _____

**Instruction to Applicant / Licensee:**   Please ask the person you have designated to safeguard
and surrender your firearm(s) in the event of your death or incapacity to complete the
information below and sign this acknowledgement before a witness.
**(The person you designate must be a New York State resident.)**

Print Name: _____ _____ _____
                          Last                          First              M.I.

Address: _____ _____ _____ __NY__ _____
                 Number & Street Name        Apt          City         State    Zip

Telephone Numbers: _____ _____ _____
                                    Home                  Cell              Business

I, _____
              (Print name of person agreeing to safeguard firearms)
understand that the above-named applicant/licensee has designated me to safeguard and
surrender his/her firearm(s) in the event that he/she dies or becomes incapacitated.  I agree that
upon learning of the death or incapacity of the licensee, I will immediately notify the New York
City Police Department's License Division at (646) 610-5871 or (646) 610-5560, or by calling
the local police precinct, and will follow their directions to safeguard and surrender his/her
firearm(s).

Signature of person agreeing
to safeguard firearm(s):  _____  Date:_____

Witnessed by (signature) _____

Witness' name (printed) _____

**Please retain a copy of this document for your records**

NYPD Safeguard Firearms letter May 2010

**JA99**

## NYS Firearms License Request for Public Records Exemption
### Pursuant to section 400.00 (5) (b) of the NYS Penal Law

I am:  [    ] **an applicant** for a firearms license  [    ] **currently licensed** to possess a firearm in NYS

Name _____   Date of Birth_____

Address_____   City_____   State_____

Firearms License # (if applicable) _____   Date Issued_____

Licensing Authority / County of Issuance or Application _____

---

**I hereby request that any information concerning my firearms license application or firearms license not be a public record.**  The grounds for which I believe my information should **NOT** be publicly disclosed are as follows: *(check all that are applicable)*

[    ] 1.  **My life or safety may be endangered by disclosure because:**

    [    ]  A.  I am an active or retired police officer, peace officer, probation officer, parole officer, or corrections officer;

    [    ]  B.  I am a protected person under a currently valid order of protection;

    [    ]  C  I am or was a witness in a criminal proceeding involving a criminal charge;

    [    ]  D.  I am participating or previously participated as a juror in a criminal proceeding, or am or was a member of a grand jury;

[    ] 2.  **My life or safety or that of my spouse, domestic partner or household member may be endangered by disclosure for some other reason explained below:** *(Must be explained in item 5 below)*

[    ] 3.  **I am a spouse, domestic partner or household member of a person identified in  A, B, C or D of question 1.**
    *(Please check any that apply)*

      A _____   B_____   C_____   D_____

[    ] 4.  **I have reason to believe that I may be subject to unwarranted harassment upon disclosure.**

    5.  *(Please provide any additional supportive information as necessary)*

    _____

    _____

    _____

**I understand that false statements made herein are punishable as a class A misdemeanor. I further understand that upon discovery that I knowingly provided any false information, I may be subject to criminal penalties and that this request for an exemption shall become null and void.**

_____          _____
Signature                                                                         Date

**JA100**

# EXHIBIT

# B

# PATROL GUIDE



| Section:   Command Operations | | Procedure No:   212-118 |
| --- | --- | --- |
| **INCIDENTS INVOLVING HOLDERS OF HANDGUN LICENSES OR RIFLE/SHOTGUN PERMITS** | | |
| DATE ISSUED:<br>08/01/13 | DATE EFFECTIVE:<br>08/01/13 | REVISION NUMBER: | PAGE:<br>1 of 4 |

**PURPOSE**     To report incidents involving holders of handgun licenses or rifle/shotgun permits.

**PROCEDURE**     When a holder of a handgun license or rifle/shotgun permit is involved in an incident coming to the attention of the Department:

**COMMANDING**     1.     Assign supervisor to conduct investigation and ascertain facts when a holder of a
**OFFICER/**              handgun license or rifle/shotgun permit is involved in an incident (see
**DUTY**                 *"ADDITIONAL DATA"* statement for incidents that require an investigation).
**CAPTAIN**

**DESK OFFICER**     2.     Make an immediate telephone notification in ALL incidents involving holders of
                          handgun licenses or rifle/shotgun permits to License Division, Incident Section.
      a.     Make notification directly to a License Division, Incident Section
             member or License Division supervisor, Monday though Friday
             0630 x 1700 hours.
      b.     All other hours, leave a detailed message on the License Division,
             Incident Section voicemail and include:
             (1)     Type of incident, date, time, location of incident and
                     identity of handgun licensee or rifle/shotgun permit holder
             (2)     Name and rank of investigating supervisor and/or reporting
                     officer
             (3)     Identify the Department reports prepared to document the
                     incident and include relevant Department report numbers,
                     if available.
     3.     Ensure all appropriate reports are prepared to document the incident,
            including but not limited to:
      a.     **PROPERTY CLERK INVOICE (PD521-141)**
      b.     **COMPLAINT REPORT (PD313-152)**
      c.     **ON LINE BOOKING SYSTEM ARREST WORKSHEET
             (PD244-159)**
      d.     *New York State Domestic Incident Report (DCJS 3221)*
      e.     **UNUSUAL OCCURRENCE REPORT (PD370-152)**
      f.     Other **Typed Letterhead**, as appropriate.
     4.     Direct holder of handgun license or rifle/shotgun permit reporting loss of a
            license/permit to report to the License Division for a new license/permit.
      a.     Direct the preparation of a **COMPLAINT REPORT**.
     5.     Direct the handgun licensee or rifle/shotgun permit holder to contact the
            License Division, Incident Section, when involved in any incident.

**INVESTIGATING**     6.     Investigate the circumstances surrounding the incident and ascertain the
**SUPERVISOR**             following information to be included in the Department report(s) prepared:
**ASSIGNED**          a.     If the licensee has a Carry Guard license, ascertain whether the handgun
                            was possessed while actually engaged in the security related employment

## NEW • YORK • CITY • POLICE • DEPARTMENT

**JA102**

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-118 | 08/01/13 | | 2 of 4 |

**INVESTIGATING
SUPERVISOR
ASSIGNED**
(continued)

that corresponds with the address listed on the license, or if possessed when traveling directly between that place of employment and residence

b.   If the licensee has a Carry Business or Special Carry license, ascertain whether the licensee is employed by, or operating a business that corresponds with the address listed on the license at the time of incident

c.   If the licensee has a Premise Residence or Premise Business license, ascertain whether the handgun was possessed at the premise listed on the license; or if licensee claims to have been traveling to or from an authorized range, ascertain whether the handgun was unloaded in a locked container with ammunition carried separately, and whether the licensee was traveling directly to and from the range

d.   If a licensee has a Limited Carry license, ascertain whether the handgun was possessed at the address listed on the license, or if carried elsewhere, whether the licensee was in compliance with time, day of week, and place restrictions listed on rear of the license

e.   If a firearm is reported lost or stolen, or for any other incident, ascertain whether or not the firearm was properly safeguarded.  Include statement as to whether any unauthorized person(s) had access to the handgun

f.   If an allegation exists that the licensee made threatening statements, improperly displayed a firearm, was involved in a firearms discharge or for any ongoing disputes, ascertain whether all relevant parties/witnesses have been identified and interviewed.

7.   Seize handgun license or rifle/shotgun permit and all firearms listed if:

a.   The licensee/permit holder is arrested, regardless of charge

b.   An Order of Protection exists against the licensee/permit holder

c.   The incident involves physical force or the threat of physical force

d.   Circumstances lead to the belief that continued presence of a firearm would create an unjustifiable risk of unlawful use or possession of the firearm, or injury to licensee/permit holder or another person

e.   Further investigation by the License Division is needed to determine whether the actions of the licensee/permit holder affect their qualifications for the license or permit

f.   Any other situation that may affect public safety.

   (1)   Members are reminded that public safety is the overriding concern when considering the removal of a licensed firearm.

8.   Invoice firearms only on **PROPERTY CLERK INVOICE**.

a.   Include the following statement in the "Remarks" section of the **PROPERTY CLERK INVOICE** "Firearms shall not be released without written authorization of the Commanding Officer, License Division."

9.   Prepare a **Typed Letterhead** to the Commanding Officer, License Division for all incidents unless a **COMPLAINT REPORT, ON LINE BOOKING SYSTEM ARREST WORKSHEET,** *New York State Domestic Incident Report*, **UNUSUAL OCCURRENCE REPORT,** or other **Typed Letterhead** was prepared detailing an explanation of the

**NEW • YORK • CITY • POLICE • DEPARTMENT**

**JA103**

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-118 | 08/01/13 | | 3 of 4 |

| | | |
|---|---|---|
| **INVESTIGATING SUPERVISOR ASSIGNED** (continued) | | licensee's/permit holder's actions and includes the information ascertained from the investigation of the incident. |
| | 10. | Prepare a **Typed Letterhead** to Commanding Officer, License Division upon a voluntary surrender of a firearm, <u>unless</u> the reason for the surrender is explained in either the "Remarks" section of the **PROPERTY CLERK INVOICE** or on another report, as appropriate. |
| | 11. | Forward the following to the License Division, Incident Section: |
| | | a.    Copy of all Department reports prepared in relation to incident |
| | | b.    Any seized license(s)/permit(s), if applicable |
| | | c.    **Typed Letterhead**, if applicable. |

**ADDITIONAL DATA**

<u>*INCIDENTS INVOLVING A HOLDER OF A HANDGUN LICENSE OR RIFLE/SHOTGUN PERMIT THAT REQUIRE AN INVESTIGATION TO BE CONDUCTED:*</u>

*Incidents involving a holder of a handgun license or rifle/shotgun permit that require an investigation to be conducted include:*
a.   *Lost firearms*
b.   *Stolen firearms (burglary or larceny)*
c.   *Voluntary surrender of firearms*
d.   *Allegations of improper display of firearm*
e.   *Violating terms, conditions, or rules relating to the license/permit (including but not limited to carrying a firearm in public with a premise license, transporting a firearm on a premise license for use at an authorized range that is not unloaded in locked box, and exceeding time or place restrictions on a Limited Carry license)*
f.   *All domestic incidents coming to the attention of the Department*
g.   *An Order of Protection in existence or being sought by or against the license/permit holder*
h.   *Ongoing or recurring disputes that have potential for violence or allegations of threatening statements*
i.   *Co-habitating with a known criminal or other dangerous person*
j.   *Eviction or damage to premise (such as fire) that affects ability to safeguard firearm at approved premise*
k.   *Suicide or other devastating incidents in the home*
l.   *Mental health issues*
m.   *Any firearm discharge (except target practice at an authorized range)*
n.   *Any arrest or criminal court summons*
o.   *Other incident or allegation that requires a follow-up investigation by the License Division.*

<u>*REMOVAL OF FIREARMS FROM LICENSEE/PERMIT HOLDER*</u>

*The Department has broad authority to remove firearms and temporarily suspend a license/permit during the investigation of an incident as outlined above. Prior conferral with the License Division, Incident Section is not required in order to remove firearms and a license/permit from a licensee or permit holder. Members are reminded that public safety is the overriding concern when considering the removal of a licensed firearm.*

## NEW • YORK • CITY • POLICE • DEPARTMENT

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-118 | 08/01/13 | | 4 of 4 |

**ADDITIONAL
DATA
(continued)**

*If the firearm cannot be readily obtained at the time the decision to remove firearm is made, the licensee or permit holder shall be advised that he or she must surrender said firearm(s) pursuant to License Division regulations, and shall be given an opportunity to surrender them voluntarily. In the case of an arrest, or an Order of Protection, or any assessment of imminent danger, if the firearm(s) cannot be obtained by consent, and there is probable cause to believe that they are in a particular location, a search warrant will be obtained prior to seizure of the firearm(s), unless exigent circumstances justify an immediate seizure. The supervisor assigned will make every effort to obtain the firearm(s) either by consent or with a search warrant.*

*In all cases, the investigating supervisor and reporting officer(s) must be made available upon request of the License Division investigators to discuss the incident and provide assistance during follow-up investigations and possible hearings at the License Division.*

*A check of the Automated License Permit System (ALPS) can be conducted to determine whether a person (or any person at a given address) has an active handgun license or rifle/shotgun permit. Members of the service can access the system through the Department's Intranet site under "NYPD Applications."*

**RELATED
PROCEDURES**

*Complaint Reporting System (P.G. 207-01)*
*Arrest-General Search Guidelines (P.G. 208-05)*
*Processing Firearms and Firearm-Related Evidence (P.G. 218-23)*

**FORMS AND
REPORTS**

**COMPLAINT REPORT (PD313-152)**
**PROPERTY CLERK INVOICE (PD521-141)**
**ON LINE BOOKING SYSTEM ARREST WORKSHEET (PD244-159)**
**UNUSUAL OCCURRENCE REPORT (PD370-152)**
**Typed Letterhead**
**New York State Domestic Incident Report (DCJS 3221)**

## NEW • YORK • CITY • POLICE • DEPARTMENT

**JA105**

# EXHIBIT

# C



LexisNexis®

In the Matter of Rafael Lugo, Petitioner, v. Howard Safir, as Police Commissioner of the City of New York, Respondent.

1203

### SUPREME COURT OF NEW YORK, APPELLATE DIVISION, FIRST DEPARTMENT

*272 A.D.2d 216; 708 N.Y.S.2d 618; 2000 N.Y. App. Div. LEXIS 5886*

**May 23, 2000, Decided
May 23, 2000, Entered**

**COUNSEL:** [**1] For Petitioner: Thomas C. Boutilier.

For Respondent: Cheryl Payer.

**JUDGES:** Concur--Rosenberger, J. P., Williams, Mazzarelli, Rubin and Friedman, JJ.

**OPINION**

[*216] Determination of respondent Police Department, dated November 13, 1998, which revoked petitioner's pistol license with target endorsement, unanimously confirmed, the petition denied and the proceeding brought pursuant to *CPLR article 78* (transferred to this Court by order of the Supreme Court, New York County [Phyllis Gangel-Jacob, J.], entered on or about June 2, 1999) dismissed, without costs.

No basis exists to disturb the Hearing Officer's findings discrediting petitioner's testimony that he was on his way to the shooting range when he was allegedly assaulted from behind on the street and robbed of the brief-case that contained his pistol. Rejection of such testimony necessarily requires a finding that petitioner violated *38 RCNY 5-01 (b)*, which allows target licensees, such as petitioner, to transport their handguns only "to and from an authorized range." Substantial evidence also supports the finding that petitioner, although able to do so [*217] sooner, waited three hours before reporting [**2] the alleged theft of his pistol to the police, and thereby violated *38 RCNY 5-22 (b) (1)*. We have considered and rejected petitioner's argument that the notice suspending his license for "failure to safeguard firearm," together with the notice of hearing stating that the purpose thereof was to examine the "circumstances of incident on [date of the alleged theft of petitioner's firearm]," did not give fair notice that petitioner's license was being revoked for violations of *38 RCNY 5-01 (b)* and *5-22 (b) (1)* and for lack of the character and fitness to possess a pistol license.

Concur--Rosenberger, J. P., Williams, Mazzarelli, Rubin and Friedman, JJ.

# EXHIBIT

# D

 LexisNexis®

The People of the State of New York, Appellant, v. Joseph Ocasio, Respondent

[NO NUMBER IN ORIGINAL]

Supreme Court of New York, Appellate Term, Second Department

*108 Misc. 2d 211; 441 N.Y.S.2d 148; 1981 N.Y. Misc. LEXIS 2182*

**February 11, 1981**

**PRIOR HISTORY:**   [**1]  Appeal from an order of the Criminal Court of the City of New York, Kings County (Patrick W. McGinley, J.), entered November 15, 1979, which dismissed the accusatory instrument.

**HEADNOTES**

Crimes -- Criminal Possession of Weapon -- "Target Permit"

Since defendant possessed a "target permit" he may not be prosecuted for criminal possession of a weapon in the fourth degree (*Penal Law, § 265.01*) even though he was found in possession of the pistol when he was neither at nor in transit to or from a range; where the gravamen of the charge is "naked possession", as opposed to possession coupled with an intent to use the weapon unlawfully against another, and the person has a license to possess the weapon, the offense is not cognizable under *section 265.01 of the Penal Law* but should instead be prosecuted as a violation of the terms and conditions of the license (*Penal Law, § 400.00, subd 15*).

**COUNSEL:** *Eugene Gold, District Attorney (Debra W. Petrover of counsel), for appellant.*

*Eagan & Rudnick (James E. Eagan of counsel), for respondent.*

**JUDGES:** Concur: Pino, P. J., Jones and Kunzeman, JJ.

**OPINION**

[*211] OPINION OF THE COURT

MEMORANDUM.

Order dismissing information [**2] affirmed.

Defendant was charged with criminal possession of a weapon in the fourth degree (*Penal Law, § 265.01*). Concededly, although defendant possessed only a "target permit", he was found in possession of the pistol when he was neither at nor in transit to or from a range. Defendant argues, however, that since he possessed a license, albeit limited in scope, he is immune from prosecution by virtue of subdivision 3 of *section 265.20 of the Penal Law*. The People, on the other hand, maintain that possession of a weapon in violation of the terms and conditions of the license is tantamount to possession without a license.

Where, as here, the gravamen of the charge is "naked possession" as opposed to possession coupled with an intent to use the weapon unlawfully against another, the offense [*212] is not cognizable under *section 265.01 of the Penal Law*, if the person had a license to possess the weapon. Rather, if the weapon was possessed in violation of the terms and conditions of the license the proper vehicle for prosecution is subdivision 15 of *section 400.00 of the Penal Law* [**3]  (see *People v Serrano, 71 AD2d 258*, lv to app granted *48 NY2d 987*).



The People of the State of New York, Plaintiff, v. Keung Li Lap, Defendant

Docket No. 90N087807

Criminal Court of the City of New York, New York County

*150 Misc. 2d 724; 570 N.Y.S.2d 258; 1991 N.Y. Misc. LEXIS 228*

March 26, 1991

**NOTICE:** [***1] [EDITED FOR PUBLICATION]

## HEADNOTES

**Crimes -- Possession of Weapon -- Violation of Target Pistol License Restrictions**

A violation of target pistol license restrictions requiring that the pistol be carried unloaded and in a locked container cannot support a criminal prosecution based upon defendant's possession of the loaded target pistol in his automobile, since there is nothing in the licensing statute that restricts either the geographical area or the manner in which a target pistol may be carried; therefore, a charge that defendant violated *Penal Law § 400.00* simply by carrying the subject pistol cannot be sustained. The target pistol license must be viewed not merely as a "possess" license with extended geographical boundaries, but as a "carry" license (*Penal Law § 400.00 [2] [f]*). Further, the license restrictions defendant is charged with violating are administratively promulgated by the Police Commissioner in his role as the licensing authority for the City of New York. Since such restrictions are neither mandated nor specifically authorized by *Penal Law § 400.00*, their violation, while warranting license revocation proceedings, will not support criminal prosecution.

**COUNSEL:** *Robin Wenzel* for defendant.

*Robert M. Morgenthau*, District Attorney (*Hester Herring* of counsel), for plaintiff.

**JUDGES:** Michael J. Obus, J.

**OPINION BY:** OBUS

## OPINION

[*724] [**259] OPINION OF THE COURT

Defendant Keung Li Lap stands charged in an information with violating subdivisions (6) and (7) of *Penal Law § 400.00*. The accusatory part of the instrument states that on October 3, 1990, defendant committed "criminal possession of a target pistol license" in that he "possessed a target pistol license [*725] which only authorized the defendant to use a gun for target practice but not to carry." The factual part reveals a bit more about the essence of this prosecution, alleging that defendant possessed a loaded .22 caliber handgun in his automobile while holding what is characterized as a "not for carry" target pistol license, a copy of which has been filed.

Defendant moves to dismiss this information contending that (1) a target pistol license is not one of the "types of licenses" defined in *subdivision (2) of Penal Law § 400.00*; (2) even if the license is one governed by *section 400.00*, the subdivisions he is [***2] accused of violating merely set forth the circumstances under which a license is valid and the form it must take; and (3) as the license restrictions in question are administrative in nature, their violation may not be prosecuted criminally.

In apparent contradiction to the theory of the accusatory instrument, the People, in their affidavit in opposition to this motion, seem to concede that as the holder of a target pistol license, defendant was entitled to transport the subject pistol. They argue instead that the manner in which he carried it violated purportedly applicable restrictions of *Penal Law § 400.00 (6) (a)* and *(b)* "in that he possessed [in his automobile] a gun that was both loaded and not locked in a container." The People are mistaken.

To begin, there is of course no such offense as "criminal possession of a target pistol license." Nor could subdivisions (6) and (7) of *Penal Law § 400.00*, respectively entitled "License: validity" and "License: form", be deemed to define any criminal offense in the absence of subdivision (15) of that section, not mentioned in the information, which renders a violation of any provision of *Penal Law § 400.00* a class A misdemeanor. [***3] But even if the information could be charitably construed to overcome these weaknesses, it must be dismissed for failing to allege sufficient facts to support any violation of the statute.

It is true that no reference to a "target pistol license" appears in *Penal Law § 400.00 (2)*, which defines the seven basic types of gun licenses issuable in this State, some affording the right to possess a firearm in limited geographical areas and others affording certain persons, depending on their employment or other proper cause, the right to carry one. Nevertheless, the target license in question here does purport on its face to be "issued under article 400 [of the] Penal Law." Moreover, given the restrictions set forth on the license itself -- that the subject pistol be carried unloaded and in a locked [*726] container -- it can hardly be disputed that the license holder is expected [**260] to carry the pistol to and from the target range. Thus, as was held in *People v Schumann (133 Misc 2d 499, 501* [Crim Ct, Bronx County 1986]), such a license must be viewed not merely as a "possess" license with extended geographical boundaries, but as a "carry" license issued under [***4] *Penal Law § 400.00 (2) (f)*, to "have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof". (See also, *Hochreich v Codd, 68 AD2d 424, 425* [1st Dept 1979]; *Federation of N. Y. State Rifle & Pistol Clubs v McGuire, 101 Misc 2d 104, 105* [Sup Ct, NY County 1979].) A charge that defendant violated *Penal Law § 400.00* simply by carrying the subject pistol could not therefore be sustained.

This is not to say that a license holder who possesses a firearm in a place not authorized by law, outside the scope of one of the statutory employment categories, or in violation of some other provision of *Penal Law § 400.00* may not be prosecuted under this section. (See, *Penal Law § 400.00 [15], [17]; People v Schumann, supra, at 502-503; cf., People v Parker, 52 NY2d 935* [1981], *revg on dissent of Birns, J., 70 AD2d 387, 391-394* [1st Dept 1979] [possession outside geographical limits of license not prosecutable under *Penal Law art*

*265*]; *People v Ocasio, 108 Misc 2d 211* [App Term, 2d Dept 1981] [possession of target pistol while not in transit to or from range not [***5] prosecutable under *Penal Law art 265*].) There is nothing in article 400, however, that restricts either the geographical area or the manner in which a target pistol may be carried.

Contrary to the People's argument, the requirements of *subdivision (6) of section 400.00* that certain firearms be transported in locked containers have nothing at all to do with the matter at bar. Those restrictions, which are silent as to whether or not such firearms may be loaded, apply only to the holders of gun licenses issued outside of New York City who, *in the absence of local permits*, transport firearms under limited circumstances out of or through this city.

The license restrictions here, on the other hand, are administratively promulgated by the Police Commissioner in his role as the licensing authority for New York City. (See, *Penal Law § 265.00 [10]; Administrative Code of City of New York § 10-131 [a] [1].*) They are neither mandated nor specifically authorized by *Penal Law § 400.00*. Accordingly, their violation, [*727] while warranting license revocation proceedings, will not support criminal prosecution. As the court stated in *People v Schumann (supra, at 503* [***6] [emphasis in original]):

"It should be equally clear that no '*Law*' (apart from department regulations) delimits the geographical area or specifically describes the 'terms and conditions' of possession by the holder of a target pistol license. As noted, *Penal Law § 400.00* describes no such license. It is of course true that the Police Commissioner as the issuer of pistol licenses may, in discretion, make reasonable rules to be obeyed by those to whom he issues licenses (*cf. Matter of Michaelson v New York City Police Dept., 53 AD2d 573* ['The commissioner in his discretion may limit the use of a pistol by a licensed pistol carrier']).

"*But the Police Commissioner cannot create new crimes.*"

It may well be preferable that the violation of gun license restrictions like the ones at issue here be treated as criminal offenses. Absent legislative action, however, such violations may not be incorporated into *Penal Law § 400.00* by judicial preference. Defendant's motion to dismiss the accusatory instrument is granted.

[Portions of opinion omitted for purposes of [***7] publication.]

 LexisNexis®

The People of the State of New York, Plaintiff, v. Kurt Schumann, Defendant

[NO NUMBER IN ORIGINAL]

Criminal Court of the City of New York, Bronx County

*133 Misc. 2d 499; 507 N.Y.S.2d 349; 1986 N.Y. Misc. LEXIS 2886*

September 5, 1986

**DISPOSITION:**   [***1] The accusatory instrument is dismissed.

**HEADNOTES**

### Crimes -- Possession of Weapon -- Target Pistol

The misdemeanor complaint charging defendant, the holder of a valid target pistol license, with violating *Penal Law § 400.00 (17)* by possessing his target pistol while in his vehicle is dismissed.  *Penal Law § 265.20 (a) (3)* exempts from weapons violation liability those who possess pistols or revolvers pursuant to a license issued as provided under *Penal Law § 400.00*, and the seven types of licenses described in that section do not include a target pistol license, which is issued to one who wants to engage in competitive or sport shooting at an authorized pistol range and obligates the holder to carry his weapon, unloaded and in a locked box, to and from the pistol range.  There is no law delimiting the geographical area or specifically describing the terms and conditions of possession by the holder of a target pistol license and although the Police Commissioner, as the issuer of pistol licenses, may make reasonable rules to be obeyed by those to whom he issues licenses, he cannot create new crimes.

**COUNSEL:** *Jules W. Santagata, Jr.*, for defendant.

*Mario Merola*, District Attorney [***2]   *(Robert Moore* of counsel), for plaintiff.

**JUDGES:** Eli Lazarus, J.

**OPINION BY:** LAZARUS

**OPINION**

**[\*499] OPINION OF THE COURT**

[\*\*350]  On July 3, 1985, the defendant was arrested and charged  [\*500] with violating *Penal Law § 400.00 (17)*.  Defendant, the holder of a valid target pistol license, was accused of possessing the "aforementioned pistol in his vehicle, in violation of said restricted license".

The defendant has moved to dismiss the misdemeanor complaint pursuant to *CPL 170.30 (1) (a)*; 170.35 (1) (a); and 100.40 (1) (b) on the ground that the factual recitation does not support the charge contained in the accusatory portion of the instrument.

A brief survey of the relevant statutes and police administrative procedures relating to weapons is necessary to understand the legal issues involved.

*Penal Law § 265.02* states that it is a class D felony to possess any loaded firearm in any place other than one's "home or place of business".  Here, the defendant was carrying a loaded gun in his vehicle, an offense which would seemingly be violative of *Penal Law § 265.02*.  However, the same statute, *Penal Law § 265.20 (a) (3)*, contains an almost total blanket exemption from [\*\*\*3] weapons violation liability (under *Penal Law art 265*) for those who possess pistols or revolvers and "to whom a license therefor has been issued as provided under *section 400.00*".

What licenses are provided for in *Penal Law article 400*?

*Penal Law § 400.00 (2)* describes seven types of pistol (or revolver) licenses; the basic distinction among them is the right to "have and *possess*" in a limited geographical area (e.g., in a dwelling or a place of business) as opposed to the right to "have and *carry* concealed"

Case 1:13-cv-02115-RWS   Document 35-2   Filed 06/05/14   Page 8 of 37

Page 2

133 Misc. 2d 499, *; 507 N.Y.S.2d 349, **;
1986 N.Y. Misc. LEXIS 2886, ***

(emphasis supplied), either in connection with one's specific employment or, as defined in *Penal Law § 400.00 (2) (f)*, "have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof". *The seven types of weapons described contain no mention of the type involved here, viz., a target pistol license.* That license is issued with specific restrictions by the Police Commissioner who is denoted licensing officer for the City of New York (*Penal Law § 265.00 [10]*). A target pistol license is issued to one who wants to engage in competitive or just-for-sport shooting at an authorized pistol [***4] range. The holder is obliged to carry his weapon, unloaded, and in a locked box, to and from the pistol range. It may be noted, parenthetically, that the accusatory instrument here is not only inartfully drawn but is probably facially insufficient. Clearly, it is not a [*501] violation of a target pistol license to carry a pistol in "his vehicle". There is no requirement that one walk to the pistol range! Nor does the complaint here allege that the weapon was loaded or carried in any container other than a locked box. But there are more weighty legal concerns here than facial insufficiency.

The target license is *not* a "possess" license with extended geographical boundaries. While not too germane here, it is in reality a modified type of carry license, enabling one to carry a weapon without regard to employment but with limitations as to place of possession and terms of possession. It may only be carried to and from a pistol range and then only unloaded and in a locked container. The People's memorandum of law (26 pages) while insisting [**351] that the target pistol license is essentially a hybrid between possession and carry types, realistically notes "left [***5] open is the question of how, without a carry privilege, one may lawfully transport a weapon to the range". The target license, is viewed by the court as a carry type or *Penal Law § 400.00 (2) (f)* license (*Federation of N.Y. State Rifle & Pistol Clubs v McGuire, 101 Misc 2d 104, 105*; *Hochreich v Codd, 68 AD2d 424*).

The major cases in this area of the law have dealt with the question of the exemption from criminal liability under *Penal Law article 265* for those who hold valid pistol licenses. In *People v Parker (91 Misc 2d 363)* Justice Milonas dismissed an indictment for violation of *Penal Law § 265.03* (possession of a loaded firearm with intent to use the same unlawfully against another) in the case of a holder of a possess-at-home license who threatened his woman friend with the gun, on a city street. The Judge, ruefully, noted that *Penal Law § 265.02 (a) (3)* listed *Penal Law § 265.03* as a section that did not apply to holders of pistol licenses. The Appellate Division reversed on the theory that one who violates the conditions of his pistol license is thereby transformed

into an unlicensed possessor (*People v Parker, 70 AD2d 387*). Justice Birns dissented, [***6] noting that the exemption statute was unequivocal and unambiguous and that the majority was ruling by "judicial fiat" and not in accordance with clear statutory requirements. The Court of Appeals reversed on the opinion by Justice Birns (*People v Parker, 52 NY2d 935*). In *People v Serrano (71 AD2d 258* [1st Dept]), the court now upholding Justice Milonas, dismissed an indictment for unlawful possession of a loaded gun in a car where the owner had a possess-on-premises license. The court theorized that this was naked possession (*Penal Law § 265.02* [*502] [4]) as opposed to the possession in *Parker* where the charge was *Penal Law § 265.03* or possession under circumstances evincing an intent to use unlawfully against another. *People v Serrano* preceded the holding of the Court of Appeals on the opinion by *People v Parker (52 NY2d 935, supra)* which renders *Penal Law article 265* unusable against a holder of a valid pistol license. *People v Serrano* was affirmed on the same dissenting opinion of *Justice Birns (52 NY2d 936)*. In *People v Ocasio (108 Misc 2d 211)*, the Appellate Term, Second Department, held that a charge of *Penal Law § 265.01* did not apply to a target [***7] pistol licensee who was found to possess his gun other than in transit to or from a pistol range, essentially a similar fact pattern to that presented in this case. The court suggested however that where the "terms and conditions" of a license were violated, a charge of violation of *Penal Law § 400.00 (15)* might be appropriate. Justice Birns in his *Parker* dissent (*People v Parker, 70 AD2d 387, 394, supra*) suggested that where the gun was possessed outside the geographical area of the license, a charge of *Penal Law § 400.00 (15)* might lie.

*Penal Law § 400.00* deals with the issuance of pistol licenses and describes the various types of licenses issued for *possession* in a given geographical location (home or place of business) or to be carried either in connection with one's employment or regardless of the nature of employment when proper cause exists for issuance. *Penal Law § 400.00 (15)* states that "[any] violation by any person of any provision of this section is a class A misdemeanor."

In 1980 (L 1980, ch 233, § 17, eff Aug. 13, 1980), the Legislature added subdivision (17) to *Penal Law § 400.00*. The first sentence of that new subdivision makes it clear [***8] that article 265 relating to illegal possession of a firearm shall not apply to an offense which also constitutes a violation of this section (viz., *Penal Law § 400.00*). Such offense is punishable only as a class A misdemeanor pursuant to this section. In effect, the Legislature was reversing the Appellate Division decision in *People v Parker (supra)* and codifying the Birns dissent in *Parker*, which the Court of Appeals subsequently ap-

133 Misc. 2d 499, *; 507 N.Y.S.2d 349, **;
1986 N.Y. Misc. LEXIS 2886, ***

proved in *People v Parker (52 NY2d 935, supra* [Feb. 1981]).

[**352] The second sentence of *Penal Law § 400.00 (17)* makes specific reference to another type of violation of *Penal Law article 400* that was *not* to be punishable under the general weapons violation section (*Penal Law art 265*). One who possesses a valid pistol license but possesses it in a place "*not* [*503] *authorized by law*" (emphasis supplied) is potentially guilty only of a class A misdemeanor under *Penal Law § 400.00*.

The cases previously cited deal only peripherally with the question of what penalties may be meted out to those who violate the terms and conditions of their pistol licenses apart from penalties contained in *Penal Law article 265*. Thus, [***9] in *People v Parker (91 Misc 2d 363, 365, supra* [Milonas, J.]), the court noted "The appropriate * * * remedy for the improper use of a weapon under the instant circumstances [i.e., possession of a weapon by a home-license possessor in a place other than his home] is the administrative procedure of license revocation". Justice Birns in his Appellate Division dissent in *People v Parker (70 AD2d 387, 391-394, supra)* suggested that the "outside the geographical area" offense might constitute a violation of *Penal Law § 400.00 (15)*, i.e., a class A misdemeanor. The Appellate Term, Second Department, in *People v Ocasio (supra)* suggested that *Penal Law § 400.00 (15)* might be the appropriate sanction for one who violated the "terms and conditions" of his license.

It seems clear from case law, statute and good sense that one who holds a license to possess in his dwelling or place of business but takes the weapon outside his home or place of business violates *Penal Law § 400.00 (17)*. He possesses it in a place "*not authorized by law*" (*Penal Law § 400.00 [17]*; emphasis supplied). The law specifically limits certain possession licenses to "dwelling" or "place [***10] of business" (*Penal Law § 400.00 [2] [a], [b]*).

It should be equally clear that no "*Law*" (apart from department regulations) delimits the geographical area or specifically describes the "terms and conditions" of possession by the holder of a target pistol license. As noted, *Penal Law § 400.00* describes no such license. It is of course true that the Police Commissioner as the issuer of pistol licenses may, in discretion, make reasonable rules to be obeyed by those to whom he issues licenses (*cf. Matter of Michaelson v New York City Police Dept., 53 AD2d 573* ["The commissioner in his discretion may limit the use of a pistol by a licensed pistol carrier"]).

*But the Police Commissioner cannot create new crimes.*

Justice Birns characterized as "judicial fiat" and unacceptable the holding by his colleagues in *People v Parker (supra)*. Here, by administrative fiat, the police department is attempting to engraft onto *Penal Law § 400.00* provisions that the law [*504] itself does not contain. Assuming (far-fetched, of course) the police department decided that a householder could only possess a weapon in a specific room of one's house (e.g., kitchen or bedroom). [***11] While such a provision could conceivably be warranted as within the power of the Police Commissioner to make reasonable regulations for house possession, the failure to obey such a regulation, while it might lead to a sustainable license revocation, could not be transformed into a violation of law, specifically of *Penal Law § 400.00 (17)*. The possibilities are endless in the case of target pistol licensees. Suppose a target licensee, on the way to the range, stopped off at his mother's house for a visit or a chat. Suppose he thereafter decided not to shoot that day at all and just went home. Would he be violating the law? Or suppose the lock of the target holder's box were broken. Would he violate the law? The Police Commissioner may regulate but he may not legislate. *

---

* To be distinguished are those instances in which heads of agencies, in accordance with specific enabling legislation, make regulations that have the force and effect of law (traffic, health, transit regulations).

The accusatory instrument [***12] is dismissed.

# EXHIBIT

# E

APPLICATION FOR
SMALL ARMS RANGE
P.D. 655-041 (Rev 3-63) Part

| | DATE | PRECINCT | DIVISION |

Check one:   ☐ Outdoor   ☐ Indoor

## APPLICANT

1. Name _____

    present name of individual, firm, club, association, organization, etc., to be designated to conduct range t

2. Residence of individual, or address of firm, club, association, organization, etc. _____

3. Is applicant a firm, club, association, organization, etc.? _____

4. If either  { When was it organized? _____   For what purpose? _____
             { Is it incorporated? _____   If so, when? _____

5. Reputation of individual, firm, club, association, organization, etc., to be designated _____

## PREMISES

6. Location of premises to be designated _____

7. Kind of building, if indoor range _____   8. In what part of building is range located? _____

9. General reputation of premises to be designated _____

10. Necessity for range _____

11. Kind of weapons and largest calibre to be used thereat _____

**Penalty for Falsification:** Falsification of any statement made herein is an offense punishable by a fine or imprisonment or both. (N. Y. C. Administrative Code Section 982-9.0).

Signed _____

(If a firm, club, association, organization, etc., to be signed by an officer of such.)

| **FIRST ENDORSEMENT** | **SECOND ENDORSEMENT** |
|---|---|
| Recommend { APPROVAL / DISAPPROVAL } If disapproved, state reasons briefly. | Recommend { APPROVAL / DISAPPROVAL } If recommendation differs from that of C.O. of Precinct, state reasons briefly. |

| DATE | PRECINCT COMMANDER | PRECINCT | DATE | BOROUGH COMMANDER | BORO |

## THIRD ENDORSEMENT

Recommend { APPROVAL / DISAPPROVAL } If disapproved, state reasons briefly. _____

| DATE | COMMANDING OFFICER, POLICE ACADEMY |

| **FOURTH ENDORSEMENT** | **FIFTH ENDORSEMENT** |
|---|---|
| Recommend { APPROVAL / DISAPPROVAL } | APPROVED / DISAPPROVED |

| DATE | CHIEF OF DEPARTMENT | DATE | POLICE COMMISSIONER |

(OVER)

**JA116**

U.F. 121

NOTES – Particular conditions to be observed in determining suitability of range, due consideration being given to the type of range inspected, to wit

Outdoor or indoor range; type and calibre of weapon to be used.

### INDOOR RANGE: (Pistol–Revolvers–Rifles)

1. Indoor range to be constructed with sound absorbing material or located in that part of the building where the noise of firing would not disturb other persons nearby.

2. A metal backstop or bullet catcher to be behind the target, so placed that bullets or fragments thereof could not ricochet toward firing point.

3. BOOTHS – If there is to be more than one firing point–that is: more than one person firing at any one time, the following specifications relative to partitions will be complied with:

   a. Small Arms – (Pistol, Revolvers and Rifles) – All firing points to be separated by metal partitions not less than 3/16 of an inch in thickness and covered with wood at least 2 inches in thickness on side or sides between firing points, or brick partitions covered with wood at least two inches in thickness

      Minimum width of booth: 2 feet, 6 inches.

      Maximum width of booth: 3 feet, 6 inches.

      Minimum height of booth: 6 feet.

      Minimum depth (length): 3 feet, 6 inches.

      All booths to be provided with a shelf at least 12 inches in width, extending from partition to partition, between firing points, at least three feet from the floor and allowing at least three feet from the rear edge of the separating partition.

   b. Rifles – Premises wherein rifles are discharged exclusively and having more than one firing point, the following specifications shall be complied with:

      All firing points to be separated by metal partitions not less than 3/16 of an inch in thickness and covered with wood at least 2 inches in thickness on side or sides between firing points, or brick partition covered with wood at least two inches in thickness.

      Booths – Minimum width of booth; 6 feet.

      Minimum height of booth: 6 feet.

      Minimum depth of booth; 6 feet.

### GENERAL:

4. Material in the ranges to be such as to reduce fire hazard. Electric wiring and fixtures to be protected from stray bullets.

5. Ranges to be so constructed that no person can walk across or into the line of fire between firing point and the target.

6. Careful consideration to be given to each range relative to proximity to buildings and dwellings and the likelihood of stray shots causing personal injury or property damage outside of the range.

7. A sign designating the largest calibre weapon to be discharged at the range to be conspicuously displayed thereat.

8. When firing is being conducted the firing line shall be in charge of a capable range officer.

9. OUTDOOR SMALL ARMS RANGE – (Rifle–Pistol–Revolver) – Applications for outdoor small arms ranges located within the city of New York will not be considered unless the proposed site is a sufficient distance from buildings and dwellings that the likelihood of stray shots causing personal injury or property damage outside of the range is eliminated.

10. OUTDOOR SMALL ARMS RANGE – (Shotgun) – "Trap" Shooting:

    a. Must be located in area on outskirts of city, or so located that the likelihood of stray pellets causing personal injury or property damage outside of the range is eliminated.

    b. A sketch of the proposed field must be submitted with the U. F. 121.

    c. Property must be leased or owned by applicant.

    d. Property must be fenced in with a wire fence at least six feet high.

    e. Property to be posted with no trespassing signs, marked:

       "No trespassing, Private Property, Trap Shooting."

    f. Firing points shall be so constructed that area in rear of firer is protected from accidental discharges.

    g. If manual traps are to be used the operator thereof shall be behind the firing line.

    h. No shotgun larger than 12 gauge to be used and shells used shall be restricted to the regular trap load, no heavier than 3 drams of powder behind 1 1/8 oz. 7½ or 8 shot.

    i. When firing is being conducted the firing line shall be in charge of a capable range officer.

11. OUTDOOR SMALL ARMS RANGE – (Shotgun "Skeet" Shooting) – Provisions for outdoor skeet field shall be governed by provisions as set forth in Paragraph 10, except:

    a. Shall be located in suburban sections of the city.

    b. If traps are to be manually operated the trap house will be so constructed to assure the maximum amount of safety to the operator.

    c. Shells to be used shall not be heavier than the regular skeet load, which is 3 drams of powder behind 1 1/8 oz. of No. 9 shot.

12. SUB-CALIBRE SKEET – .22 calibre – INDOORS and OUTDOOR – May be used on any range complying with the specifications as set forth above.

# EXHIBIT

# F

# ADMINISTRATIVE GUIDE

| Section: Licenses and Permits | | Procedure No: 321-09 | |
|---|---|---|---|
| **SMALL ARMS RANGE** | | | |
| DATE ISSUED:<br>06/01/2005 | DATE EFFECTIVE:<br>06/01/2005 | REVISION NUMBER: | PAGE:<br>1 of 2 |

**PURPOSE**   To process an application for designation as small arms range.

**PROCEDURE**   When an application is made for a small arms range designation:

**PRECINCT COMMANDING OFFICER**

1. Have applicant prepare **APPLICATION FOR SMALL ARMS RANGE DESIGNATION (PD655-041)**.
2. Fingerprint applicant and/or officers of the applicant's organization
3. Direct applicant to submit postal money order for $75.00, made out to New York State Division of Criminal Justice Services.
4. Have fingerprints, money order and copy of **APPLICATION** forwarded to Commanding Officer, License Division.

**LICENSE DIVISION**

5. Have fingerprints and money order forwarded to New York State Division of Criminal Justice Services.
6. Conduct investigation of **APPLICATION**, including:
   a. Records check of applicant and/or officers.
   b. Conferral with Department of Buildings regarding zoning and usage.
7. Forward a report on **Typed Letterhead** with recommendation regarding approval/disapproval to commanding officer of precinct concerned.

**PRECINCT COMMANDING OFFICER**

8. Investigate reputation of applicant and/or officers of applicant's organization, premises concerned and those associated with premises.
   a. **APPLICATION** will not be approved unless applicant and/or officers of applicant's organization and premises are of good reputation.
9. Indicate recommendation by endorsement and forward to borough commander.

**BOROUGH COMMANDER**

10. Conduct similar investigation of **APPLICATION** and indicate recommendation by endorsement.
    a. Have approved **APPLICATION** forwarded to Commanding Officer, Police Academy.

**COMMANDING OFFICER, POLICE ACADEMY**

11. Assign member of Firearms and Tactics Section to investigate suitability and safety of premises for use as a range.
12. Endorse **APPLICATION** with recommendation after the premises have been inspected.
    a. Have **APPLICATION** forwarded to Chief of Department.

**CHIEF OF DEPARTMENT**

13. Review **APPLICATION**, enter recommendation by endorsement and forward to Police Commissioner.

## NEW • YORK • CITY • POLICE • DEPARTMENT

**JA119**

## ADMINISTRATIVE GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 321-09 | 06/01/2005 | | 2 of 2 |

| | | |
|---|---|---|
| **POLICE COMMISSIONER** | 14. | Review **APPLICATION** and indicate approval or disapproval by endorsement. |
| | a. | Have **APPLICATION** forwarded to Deputy Commissioner, Legal Matters, if approved. |
| **DEPUTY COMMISSIONER, LEGAL MATTERS** | 15. | Cause list of designated premises to be filed with City Clerk and published in City Record. |
| | 16. | Prepare and forward report to commanding officer, precinct concerned, indicating Police Commissioner's approval of **APPLICATION**. |
| **PRECINCT COMMANDING OFFICER** | 17. | Prepare **OFFICIAL LETTERHEAD (PD158-151)** addressed to applicant, granting approval and listing the following regulations: |
| | a. | A complete list of names and addresses of all persons who have access to and use the range must be maintained at the range, showing date and hour each individual person used the range to discharge small arms. |
| | b. | Designees must comply with all laws and regulations of the Federal Government and the Fire Department relating to storage and possession of ammunition and powder. |
| | c. | No person will be permitted to discharge a pistol or revolver in a designated small arms range unless they possess a handgun license. |
| | d. | Records, books and a roster or membership will be available for inspection by authorized members of the Police Department during hours when range is open. |
| | e. | The designation will be prominently displayed within range when range is open. |
| | f. | Any violation of these regulations will be cause for suspension or revocation of designation. |

| | |
|---|---|
| *FORMS AND REPORTS* | *APPLICATION FOR SMALL ARMS RANGE DESIGNATION (PD655-041)* |
| | *OFFICIAL LETTERHEAD (PD158-151)* |
| | *Typed Letterhead* |

## NEW • YORK • CITY • POLICE • DEPARTMENT

## JA120

# EXHIBIT

# G

# AUTHORIZED RANGES IN NEW YORK CITY
## (NOT INCLUDING POLICE OR MILITARY RANGES)
### As of May 2014

| | |
|---|---|
| **Bay Ridge Rod & Gun Club, Inc.**<br>6716 Fort Hamilton Parkway<br>Brooklyn, NY  11213<br>718-745-1067 | **Tiro A Segno of NY, Inc.**<br>77 MacDougal Street<br>New York, NY  10012<br>212-254-2500 |
| **Olinville Arms Inc.**<br>3356 White Plains Road<br>Bronx, NY  10467<br>718-231-3000 | **Woodhaven Rifle & Pistol Range**<br>74-16 Jamaica Avenue<br>Woodhaven, NY  11421<br>718-296-8888 |
| **Seneca Sporting Range Inc.**<br>1716 Weirfield Street<br>Ridgewood, NY  11385<br>917-414-2186 | **Colonial Rifle & Pistol Club**<br>4484 Arthur Kill Road<br>Staten Island, NY<br>(718) 948-9531 |
| **Westside Rifle & Pistol Range Inc.**<br>20 West 20th Street<br>New York, NY  10011<br>212-243-9448 | **Richmond Borough Gun Club**<br>4775 Arthur Kill Road<br>Staten Island, NY<br>(718) 966-4306 |

JA122

# EXHIBIT

# H

Home | About Us | My Account | View Cart | Help

POLICE SUPPLY        HOLSTERS        TACTICAL EQUIPMENT        APPAREL



Important Notice: We are pleased to announce our shooting range is now open and available for use. Our Grand Opening will be announced soon! Stay Tuned

## Featured Items



Bates 5 inch Mens Ultra Lites Zipper Duty Boot

**Our Price:** $84.99



Bates 5162 Mens Zero Mass 6" Side Zip Boot

**Our Price:** $99.99



Nebo Tools Redline Flashlight

**Our Price:** $49.95



Bates 8 inch Mens Ultra Lites Zipper Duty
Boot

**Our Price:** $84.99



Cobra Tuffskin Double Slotted Leather
Pancake Holster

**Our Price:** $49.99



5.11 Tactical 44060 Black Polywool
Uniform Pants - Unhemmed

**Our Price:** $24.99

---

SIGN UP FOR OUR NEWSLETTER:

enter email address

COMPANY

About Us

Privacy & Security

Legal Statement

SHOPPING SERVICES

FAQ's

Product Index

Category Index

MY ACCOUNT

Track My Order

My Account

Shopping Cart

CUSTOMER SERVICE

Contact Us

Site Help

Become an Affiliate

Copyright © 2014 Olinville Arms. All Rights Reserved.Built with Volusion

# EXHIBIT

# I

Richmond Boro Gun Club

# Richmond Boro Gun Club

| Print | Email

Richmond Boro Gun Club is a private organization for shooting sports and firearms and sportsman associated education. Located just north of the Outerbridge Crossing in Staten Island, the 14 acre Richmond Boro facility includes a recently renovated meeting room and indoor space, outdoor 100-yard rifle range with 30 covered and enclosed stations for Benchrest, Prone, and Bench shooting, outdoor 24 station 50-yard pistol range with covered and enclosed shooting bench with turning targets at 25 yards, outdoor 65-yard archery range with raised shooting platform & pole for self climbing tree stands, and 2011 50-yard outdoor steel plate range for Steel Challenge/Static Steel matches and practice with covered and enclosed shooting area.

Various rifle and pistol matches are held each week all year. Members have full access to the range facilities from sunrise to sunset year round with the exception of scheduled matches and during facility maintenance. The range facilities are available to non-members for scheduled registered matches, for hunter sighting in days, and for education programs.

Hits: 69536

Home   Gun Laws NY/NJ   Web Links   Membership   Contact Us
2014 Shooting Schedule

You are here: Home

SEARCH

## Main Menu

Home

Upcoming Events at
Richmond Boro Gun Club

Membership Update Form

## Articles Most Read

Membership Update Form

History of the Richmond
Boro Gun Club

2014 Shooting Schedule
public

Who's Online

Richmond Boro Gun Club

## Who's Online

We have 2 guests and no
members online

## Login

If you are a member of
Richmond Boro Gun Club and
do not have a Web ID and
password, Please send an Email
to
webmaster@richmondborogc.o
with your name and member
number.

User Name

## Firearm Sports

|Print | Email

Firearms command a greater respect than most things encountered in our daily lives. Nearly all things have the ability to be misused and the potential to harm. Yet as with most of those things, with respect and proper use firearms are tools in many internationally participated sports. Attention to safety, maturity, understanding of applied physics, and one's physical condition and control of muscle, breathing, heart rate, and mental focus are all elements critical to basic marksmanship and firearms safety and awareness. As challenging as mastering the basic elements of marksmanship are, shooting sports can be a fun opportunity for participants of all ages for learning, focus, and comradery. Shooting sports are of the very few sports where age, gender, and physical ability are not factors in success and where great diversity often compete on the same line.

New York City has some of the most stringent firearms ownership and usage requirements in the nation. Legal and legitimate firearms use should not be confused or compared with illegal firearms ownership and use in criminal activity. Furthermore, firearms education and participation in sanctioned competions at bonafide ranges fosters safety, maturity, and respect not depicted in movies or video games.

Marksmanship skills have been supported by numerous organizations for over one hundred years in America. There are many shooting disciplines that are fun and exciting and are all based in firearms safety, respect, and focus. We encourage anyone interested in firearms use to get involved with a range, get as much education as you can, and participate in formal matches and competition.

Hits: 3041

## Welcome

|Print | Email

Welcome to the new Richmond Boro Gun Club website! A place to learn about the club, becoming a member, and reviewing the matches, and other details.
Members - please send me your name and member number so I can create a user ID for you.
Please send any suggestions for content, including other links to sites of interest and I will add them!
Check out the member forum, a place to trade gear, ideas, and general questions.
Tom  webmaster@richmondborogc.org

Hits: 45461

## NYPD Rules Interpretation

|Print | Email

**In 2001 NYPD no longer issued Target Handgun Licenses. Until recently the NYPD Premise License was valid within the address on the license and at any bonefide range for practice and competition including the NYS Empire State Games, the National Matches at Camp Perry, the Olympics, Civilian Marksmanship and NRA matches, and other sanctioned competitions. It is the determination of the NYPD License Division that the NYPD Premise Licenses are valid only at the address on the license and at ranges within New York City.**

**JA128**

Leaving the City boundaries with handguns, except for hunting (with the proper endorsements) within New York State is considered a violation of the conditions of the NYPD License and could result in revocation of your NYPD License. We are hopeful that NYPD will offer some authorization to permit travel to participate in bonefide competitions but at this time that is not an option. Please lobby for, and educate your elected officials regarding legal participation in legitimate and legal firearms sports.

Firearms education and participation in sanctioned firearms competitions fosters maturity and respect that promotes firearms safety and legal and safe use of firearms that is not depicted in movies and video games. Participation in longstanding sports such as Bullseye/NRA Conventional Pistol, Steel Challenge, USPSA, Sporter Rifle, Benchrest, Sporting Clays, Trap & Skeet, etc. are completely different and opposed to illegal firearms possession and use on the streets and need to be considered as such. As is any other illegal/improper use of any other item. Regardless of appearance or origin of a firearm's design, considering that all modern firearms have their foundations in military submission and support, and that advancements in military design and function also benefit sporting use and more humane hunting practicality, there is an acceptable and legitimate use for firearms for sport and education. Promoting education, awareness, firearms safety, and managing and minimizing the inherent risk should the focus of all of us, as challenging as that is.

This is the official responce regarding NYPD Premises validity outside NYC.

Password

Remember Me    Log in

Forgot your password?
Forgot your username?
The Webmaster will review the
request for access and update
each evening

Weblinks

Assoc of NJ rifle and pistol
clubs

Dr. Norman Wong Vision
and Shooting

International Practical
Shooting Confederation

National Rifle Association

New Jersey Pistol Bullseye
Competition

New York State Rifle and
Pistol Association

NRA Competitive Shooting
Programs

Steel Challenge Shooting
Association

The Brian Zins Site

The Encyclopedia of
Bullseye Pistol

Tony's Bullseye Blog

US Concealed Carry
Association

US Practical Shooting
Association

Website Stats:

Today           12
Yesterday       32
Week           111
Month          866
All          29697

Powered by Kubik-Rubik.de

12:09:20 P.M.

New York, NY 10038
Tel: (646) 610-5560
Fax: (646) 610-6399

January 12, 2012

This is in response to your inquiries regarding permissible acts by N Premise license holders. Please be advised that New York City stopped iss with target endorsement in 2001; presently no endorsement is required for a holder to attend an authorized range. The following sections from the Rule York regarding Premise licenses are instructive:

38 RCNY § 5-23 (a) (3) To maintain proficiency in the use handgun, the licensee may transport her/his handgun(s) directly from an authorized small arms range/shooting club, unloaded, in a container, the ammunition to be carried separately.

38 RCNY § 5-23 (a) (4) A licensee may transport her/his hand directly to and from an authorized area designated by the New Yor Fish and Wildlife Law and in compliance with all pertinent b regulations, unloaded, in a locked container, the ammunition to be separately, after the licensee has requested and received a Department -- City of New York Hunting Authorization" Amer attached to her/his license.

The Rules of the City of New York contemplate an authorized small club as being one authorized by the Police Commissioner. Thus ranges for matches are limited to those in New York City.

Premise license holders who have obtained the Hunting Authorizatio handgun to an area designated by the New York State Fish and Wildlife hunting; no areas outside of New York State are permissible.

I hope that this information is helpful to you.

Very truly yours,

Andrew Lunetta
Deputy Inspector

COURTESY  •  PROFESSIONALISM  •  RESPE

Hits: 6882

## Richmond Boro Gun Club

[ Print | Email

Richmond Boro Gun Club is a private organization for shooting sports and firearms and sportsman associated education. Located just north of the Outerbridge Crossing in Staten Island, the 14 acre Richmond Boro facility includes a recently renovated meeting room and indoor space, outdoor 100-yard rifle range with 30 covered and enclosed stations for Benchrest, Prone, and Bench shooting, outdoor 24 station 50-yard pistol range with covered and enclosed shooting bench with turning targets at 25 yards, outdoor 65-yard archery range with raised shooting platform & pole for self climbing tree stands, and 2011 50-yard outdoor steel plate range for Steel Challenge/Static Steel matches and practice with covered and enclosed shooting area.

Various rifle and pistol matches are held each week all year. Members have full access to the range facilities from sunrise to sunset year round with the exception of scheduled matches and during facility maintenance. The range facilities are available to non-members for scheduled registered matches, for hunter sighting in days, and for education programs.

Hits: 69536

Page 1 of 2

Start Prev 1 2 Next End

 **New York**
Fair
Humidity: 60%
Wind: ENE at 7 mph
56°F

| Friday | Saturday | Sunday | Monday |
|---|---|---|---|
| 58°F / 72°F | 55°F / 68°F | 56°F / 69°F | 64°F / 75°F |

**International Shooting News**

**ISSF Junior Cup (MQS Competition for YOG 2014) - Suhl, GER - ISSF Junior Cup in Suhl continues - Germany and Russia: head to head for the medals**
The first ISSF Junior Cup held in Suhl, Germany, from the 26 of May thorough the 1 of June, continued yesterday with four more medal events: 10m Air Pistol Junior Men and Junior Women, the 50m Rifle Prone Junior Men, and the 50m Rifle 3 Positions Junior Women competitions.

**Support your Rights - Click below !**





# 2014



# Shooting Schedule

## RICHMOND BORO GUN CLUB  2014  SHOOTING SCHEDULE

| | | | | |
|---|---|---|---|---|
| Jan 1 | Wed | | | **Happy New Year to All** |
| Jan 2 | Thur | SR-1 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| | | | | *Note: Sporter Rifle will be held every Thursday all year but subject to cancelation due to weather or other conflicts.* |
| Jan 5 | Sun | LAC-1 | 9:00 AM | **Lever Action Cowboy** *Standing 20 rounds, 50 yards Animal Targets* |
| | | HBR-1 | 10:00 AM | **Hunter Benchrest** *Five 5-shot targets for score* |
| | | PI-1 | 10:00 AM | **Pistol** *.22 cal. 600 - 60 rounds @ 25 yards* |
| Jan 8 | Wed | | 8:00PM | **REMINDER - Regular Monthly Meeting Tonight** |
| Jan 9 | Thur | SR-2 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Jan 11 | Sat | WP | 8:00 AM | **Work Party - All Ranges Closed** |
| Jan 15 | Wed | PI-2 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Jan 16 | Thur | SR-3 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Jan 18 | Sat | SC-1 | 9:00 AM | **Steel Challenge** *3 courses of fire, 5 targets each* |
| Jan 19 | Sun | ARA-1 | 9:00 AM | **Benchrest** *.22 cal. 25-shots @ ARA Target (Two Targets)* |
| | | BRB-1 | 10:00 AM | **Benchrest** *.22 cal. 25-shots @ IBS Rimfire Target* |
| | | BRG-1 | 11:00 AM | **Benchrest** *.22 cal. 5-shot groups @ USGSA Target* |
| | | PI-3 | 10:00 AM | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| Jan 22 | Wed | PR-1 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| Jan 23 | Thur | SR-4 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Jan 25 | Sat | PI-4 | 9:00AM | **Revolver 600 -** *Centerfire, 60 Rounds @ 25 yards, iron sights* |
| Jan 26 | Sun | PR-2 | 9:00 AM | **Plinker Rifle** *Standing, 20 rds., 50 yards at 100 yard A33 Target* |
| | | LR-1 | 10:00 AM | **Light Rifle** *Standing, 40 rounds, 50 yards @ 31X Target* |
| | | PI-5 | 9:00 AM | **Pistol 1200 -** *.22 cal. AND Centerfire 60 rounds each @ 25 yards* |
| Jan 29 | Wed | PI-6 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Jan 30 | Thur | SR-5 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Feb 1 | Sat | RT-1 | 9:00AM | **Running Target** *Pistol or Pistol Caliber Carbine/ S.C. Range* |
| Feb 2 | Sun | LA-1 | 9:00AM | **Lever Action (ANY)** *Offhand 20 rounds @ 100 yards Lg Animal Target* |
| | | HB-1 | 10:30 AM | **Heavy Benchrest** *Five 5-shot groups @ 100 yards* |
| | | PI-7 | 10:00 AM | **Pistol** *.45cal. 900 - 90 rounds @ 25 yards* |
| | | | | *NRA Approved Short course* |
| Feb 5 | Wed | | 8:00 PM | **REMINDER - Regular Monthly Meeting Tonight** |
| Feb 6 | Thur | SR-6 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Feb 8 | Sat | WP | 8:00 AM | **Work Party - All Ranges Closed** |
| Feb 9 | Sun | MS-1 | 9:00 AM | **Metallic Silhouette** *.22 cal., 20 rounds, 25 and 50 yards* |
| | | MG-1 | 10:30 AM | **Moving Plate Gallery & Metal Targets** *- Rifle Range* |
| | | | | *Rifle or Pistol, .22 cal., 30 shots, 25 yards (Rifle on Swinging Plates)* |
| | | PI-8 | 10:00 AM | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |

- 2 -

**JA132**

| Feb 12 | Wed | PI-9 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
|---|---|---|---|---|
| Feb 13 | Thur | SR-7 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Feb 15 | Sat | SC-2 | 9:00 AM | **Steel Challenge** *3 courses of fire, 5 targets each* |
| Feb 16 | Sun | BRR-1 | 9:00 AM | **Benchrest** *.22 cal, 25-shots @ Rimfire BR Target* |
| | | BRU-1 | 10:00 AM | **Benchrest** *.22 cal, 25-shots @ USBR Target* |
| | | BRI-1 | 11:00 AM | **Benchrest** *.22 cal, 25-shots @ USRA IR-50/50R Target* |
| | | PI-11 | 10:00 AM | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| Feb 19 | Wed | PR-3 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| Feb 20 | Thur | SR-8 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Feb 22 | Sat | PI-12 | 9:00 AM | **Revolver 600** *- Centerfire, 60 rounds @ 25 yards, iron sights* |
| Feb 23 | Sun | HBR-2 | 9:00 AM | **Hunter Benchrest** *Five 5-shot targets for score* |
| | | WB-1 | 10:30 AM | **Woodchuck Benchrest** *Five 5-shot for score @ 100 yards* |
| | | PI-13 | 9:00 AM | **Pistol** *1200 - .22 cal. AND Centerfire 60 rounds each @ 25 yards* |
| Feb 26 | Wed | PI-14 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Feb 27 | Thur | SR-9 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Mar 1 | Sat | RT-2 | 9:00AM | **Running Target** *Pistol or Pistol Caliber Carbine/ S.C. Range* |
| Mar 2 | Sun | HA-1 | 9:00 AM | **Hi-Power (ANY)** *Bi-Pod, Prone, 20 rounds @ 100 yards* |
| | | LA-2 | 10:00AM | **Lever Action (ANY)** *Offhand 20 rounds @ 50 yards A33 Target* |
| | | PI-15 | 10:00 AM | **Pistol** *.45 cal. 900 - 90 rounds @ 25 yards* |
| | | | | *NRA Approved Short Course* |
| Mar 5 | Wed | | 8:00 PM | **REMINDER - Regular Monthly Meeting Tonight** |
| Mar 6 | Thur | SR-10 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Mar 8 | Sat | WP | 8:00 AM | **Work Party - All Ranges Closed** |
| Mar 9 | Sun | HA-2 | 9:00 AM | **Hi-Power ( 223)** *Prone bi-pod, 40 rounds, 100 yards @ A-31 Target* |
| | | SR-11 | 10:00 AM | **Sporter Rifle** *Standing, 30 rds. @ 50 ft.* |
| | | LR-2 | 11:00 AM | **Light Rifle** *Standing, 50 yards @ Animal Targets* |
| | | PI-16 | 10:00 AM | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |
| | | | | *NRA Approved Short Course* |
| Mar 12 | Wed | PI-17 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Mar 13 | Thur | SR-12 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| | | | | **LAST SPORTER RIFLE LEAGUE MATCH UNTIL SEPT 5, 2013** |
| | | | | *Note: Sporter Rifle will continue every Thursday all year but subject to cancelation due to weather or other conflicts.* |
| Mar 15 | Sat | SC-3 | 9:00 AM | **Steel Challenge** *3 courses of fire, 5 targets each* |
| Mar 16 | Sun | PR-4 | 9:00 AM | **Plinker Rifle** *Standing, 20 rds., 50 yards @ Animal Targets* |
| | | LR-3 | 10:00 AM | **Light Rifle** *Standing, 50 yards @ 31X Target* |
| | | PI-18 | 10:00 AM | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| Mar 19 | Wed | PR-5 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| Mar 20 | Thur | SR-13 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |

**JA133**

| Mar 22 | Sat | PI-19 | 9:00 AM | **Revolver 600** - Centerfire, 60 Rounds @ 25 yards, iron sights |
| Mar 23 | Sun | PR-6 | 9:00AM | **Plinker Rifle** Standing, 20 rds., 50 yards @ SB Targets |
| | | HBR-3 | 10:00 AM | **Hunter Benchrest** Five 5-shot targets for score |
| | | HA-3 | 11:00 AM | **Hi-Power (ANY)** Bi-Pod, Prone, 20 rounds @ 100 yards |
| | | PI-20 | 9:00 AM | **Pistol 1200** - .22 cal. AND Centerfire 60 rounds each @ 25 yards |
| Mar 26 | Wed | PI-21 | 7:00 PM | **Pistol** .22 cal. 600 - 60 rounds @ 50 feet |
| Mar 27 | Thur | SR-14 | 7:30 PM | **Sporter Rifle** Standing, 30 rounds, 50 feet, .22 cal. |
| Mar 29 | Sat | MG-2 | 9:00AM | **Moving Plate Gallery** (Rifle Range) |
| | | | | Rifle or Pistol, .22 cal., 30 shots, 25 yards |
| Mar 30 | Sun | ARA-2 | 9:00 AM | **Benchrest** .22 cal. 25-shots @ ARA Target (Two Targets) |
| | | BRB-2 | 10:00 AM | **Benchrest** .22 cal. 25-shots @ IBS Rimfire Target |
| | | BRG-2 | 11:00 AM | **Benchrest** .22 cal. 5-Five 5-shot groups @ USGSA Target |
| | | PI-22 | 10:00 AM | **Pistol** .22 cal. 900 - 90 rounds @ 25 yards |
| Apr 2 | Wed | | 8:00 PM | **REMINDER - Regular Monthly Meeting Tonight** |
| Apr 3 | Thur | SR-15 | 7:30 PM | **Sporter Rifle** Standing, 30 rounds, 50 feet, .22 cal. |
| Apr 5 | Sat | WP | 8:00 AM | **Work Party - All Ranges Closed** |
| Apr 6 | Sun | LA-2 | 9:00 AM | **Lever Action Cowboy** Offhand 20 rounds @ 50 yards - A33 Target |
| | | HA-4 | 10:00 AM | **M-1 Carbine** Standing 30 rds @ SR-1 target |
| | | M1-1 | 11:00AM | **Hi-Power (308)** Bi-Pod, Prone, 20 rounds @ 100 yards |
| | | PI-23 | 10:00 AM | **Pistol** .22 cal. 900 - 90 rounds @ 25 yards |
| Apr 9 | Wed | PI-24 | 7:00 PM | **Pistol** .22 cal. 600 - 60 rounds @ 50 feet |
| Apr 10 | Thur | SR-16 | 7:30 PM | **Sporter Rifle** Standing, 30 rounds, 50 feet, .22 cal. |
| Apr 12 | Sat | SC-4 | 9:00 AM | **Steel Challenge** 3 courses of fire, 5 targets each |
| Apr 13 | Sun | HA-5 | 9:00 AM | **Hi-Power (ANY)** Bi-Pod, Prone, 20 rounds @ 100 yards |
| | | LA-3 | 10:00 AM | **Lever Action (ANY) - Buffalo Match** |
| | | | | Standing, 20 rounds, 50 Yds @ Buffalo Target |
| | | PI-25 | 9:00 AM | **Pistol 1800 - Joe Diliberti Memorial Match** |
| | | | | 2 gun; .45 cal. followed by .22 cal. |
| | | | | 90 rounds each, 50 yards Slow Fire/25 yards Timed & Rapid |
| | | | | NRA Approved Match |
| | | | | **Be on the line by 8:30 to set up your own targets** |
| Apr 16 | Wed | PR-7 | 7:30PM | **Plinker Rifle** Standing, 20-rounds @ 50-feet |
| Apr 17 | Thur | SR-17 | 7:30 PM | **Sporter Rifle** Standing, 30 rounds, 50 feet, .22 cal. |
| Apr 20 | Sun | | | **HAPPY EASTER - No Matches** |
| Apr 23 | Wed | PI-26 | 7:00 PM | **Pistol** .22 cal. 600 - 60 rounds @ 50 feet |
| Apr 24 | Thur | SR-18 | 7:30 PM | **Sporter Rifle** Standing, 30 rounds, 50 feet, .22 cal. |
| Apr 26 | Sat | PI-27 | 9:00 AM | **Revolver 600** - Centerfire, 60 rounds @ 25 yards, iron sights |
| Apr 27 | Sun | BRR-2 | 9:00 AM | **Benchrest** .22 cal, 25-shots @ Rimfire BR Target |
| | | BRU-2 | 10:00 AM | **Benchrest** .22 cal, 25-shots @ USBR Target |
| | | BRI-2 | 11:00 AM | **Benchrest** .22 cal, 25-shots @ USRA IR-50/50R Target |
| | | PI-28 | 9:00 AM | **Pistol** 1200 - .22 cal. AND Centerfire 60 rounds each @ 25 yards |

- 4 -

**JA134**

| | | | | |
|---|---|---|---|---|
| Apr 30 | Wed | PR-8 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| May 1 | Thur | SR-19 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| May 3 | Sat | RT-3 | 9:00AM | **Running Target** *Pistol or Pistol Caliber Carbine / S.C. Range* |
| May 4 | Sun | LR-4 | 9:00 AM | **Light Rifle** *40 rounds @ Animal Target* |
| | | MS-2 | 10:00 AM | **Metallic Silhouette** *.22 cal., 20 rounds, 25 and 50 yards* |
| | | PR-9 | 11:00AM | **Plinker Rifle** *Standing, 20 rds., 50 yards @ SB Targets* |
| | | PI-29 | 8:00 AM | **Pistol 2700** *3 gun; .22, Centerfire, AND .45 cal.* |
| | | | | *90 rounds each 50 yards Slow Fire / 25 yards Timed & Rapid* |
| | | | | *NRA Approved Match* |
| May 7 | Wed | | 8:00 PM | **REMINDER - Regular Monthly Meeting Tonight** |
| May 8 | Thur | SR-20 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| May 10 | Sat | WP | 8:00 AM | **Work Party  -  All Ranges Closed** |
| May 11 | Sun | | | **MOTHER'S DAY** |
| | | MG-3 | 9:00AM | **Moving Plate Swinging** *(Metal Targets on Rifle Range / rifle only)* |
| | | M1-2 | 10:00AM | **M-1 Carbine** *Standing 30 rds @ SR-1 target* |
| May 14 | Wed | PI-30 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| May 15 | Thur | SR-21 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| May 17 | Sat | SC-5 | 9:00 AM | **Steel Challenge** *3 courses of fire, 5 targets each* |
| May 18 | Sun | PR-10 | 9:00 AM | **Plinker Rifle** *Standing, 20 rds., 50 yards @ A33 Targets* |
| | | LR-5 | 10:00 AM | **Light Rifle** *Standing, 40 rounds, 50 yards @ 31X Target* |
| | | PI-31 | 10:00 AM | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |
| May 21 | Wed | PR-11 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| May 22 | Thur | SR-22 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| May 24 | Sat | PI-32 | 9:00 AM | **Revolver 600 -** *Centerfire, 60 rounds @ 25 yards, iron sights* |
| May 25 | Sun | BR50-1 | 8:00AM | **Benchrest** *.22 cal. @ 50 yards, 20 rounds @ Small Animal Targets* |
| | | HA-6 | 9:00 AM | **Hi-Power ( ANY)** *Prone bi-pod, 40 rounds, 100 yards @ A-31 Target* |
| | | HB-2 | 10:30 AM | **Heavy Benchrest** *Five 5-shot groups @ 100 yards* |
| | | PI-33 | 10:00 AM | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| May 26 | Mon | | | **MEMORIAL DAY** |
| May 28 | Wed | PI-34 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| May 29 | Thur | SR-23 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| May 31 | Sat | MG-4 | 9:00AM | **Moving Plate Gallery  - Rifle Range** |
| | | | | *Rifle or Pistol, .22 cal., 30 shots, 25 yards* |
| Jun 1 | Sun | BR50-2 | 9:00 AM | **Benchrest** *.22 cal. @ 50 yards, 20 rounds @ Small Animal Targets* |
| | | PR-12 | 10:00 AM | **Plinker Rifle** *Standing, 20 rds., 50 yards @ SB Targets* |
| | | LBM-1 | 11:00AM | **Lead Bullet Match** |
| | | | | *Bench, 20 rds., 100 yards at SR-21 Targets* |
| | | | | *Plus two shots at Steel Plates off Hand for Extra points.* |
| | | PI-35 | 9:00 AM | **Pistol** *1200 - .22 cal. AND Centerfire 60 rounds each @ 25 yards* |
| Jun 4 | Wed | | 8:00 PM | **REMINDER - Regular Monthly Meeting Tonight** |

| Jun 5 | Thur | SR-24 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
|---|---|---|---|---|
| Jun 7 | Sat | WP | 8:00 AM | **Work Party - All Ranges Closed** |
| Jun 8 | Sun | MS-3 | 9:00 AM | **Metallic Silhouette** *.22 cal., 20 rounds, 25 and 50 yards* |
|  |  | MG-5 | 10:30 AM | **Moving Plate Gallery - Rifle Range** |
|  |  |  |  | *Rifle or Pistol, .22 cal., 30 shots, 25 yards* |
|  |  | PI-36 | 9:00 AM | **Pistol** *.45 cal. 900* |
|  |  |  |  | *90 rounds 50 yards Slow Fire/25 yards Timed & Rapid* |
| Jun 11 | Wed | PR-13 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| Jun 12 | Thur | SR-25 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| June 14 | Sat | SC-6 | 9:00 AM | **Steel Challenge** *3 courses of fire, 5 targets each* |
| Jun 15 | Sun |  |  | **Happy Father's Day** |
|  |  | ARA-3 | 9:00 AM | **Benchrest** *.22 cal. 25-shots @ ARA Targets (Two Targets)* |
|  |  | BRB-3 | 10:00 AM | **Benchrest** *.22 cal. 25-shots @ IBS Rimfire Target* |
|  |  | BRG-3 | 11:00 AM | **Benchrest** *.22 cal. 5-Five 5-shot groups @ USGSA Target* |
|  |  | PI-37 | 10:00 AM | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |
| Jun 18 | Wed | PI-38 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Jun 19 | Thur | SR-26 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Jun 21 | Sat | PI-39 | 9:00AM | **Revolver 600 -** *Centerfire,  60 rounds @ 25 yards, iron sights* |
| Jun 22 | Sun | HBR-4 | 9:00 AM | **Hunter Benchrest** *Five 5-shot targets for score* |
|  |  | WB-2 | 10:30 AM | **Woodchuck Benchrest** *Five 5-shot groups @ 100 yards* |
|  |  | PI-40 | 10:00 AM | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| Jun 25 | Wed | PR-14 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| Jun 26 | Thur | SR-27 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Jun 28 | Sat | RT-4 | 9:00AM | **Running Target** *Pistol or Pistol Caliber Carbin/S.C. Range* |
| Jun 29 | Sun | HA-7 | 9:00 AM | **Hi-Power (308)** *Bi-Pod, Prone, 40 rounds @ 100 yards* |
|  |  | LA-4 | 10:00 AM | **Lever Action (ANY)** *20 Rounds @50 Yds A33 Target* |
|  |  | PI-41 | 10:00 AM | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |
| Jul 2 | Wed |  | 8:00 PM | **REMINDER - Regular Monthly Meeting Tonight** |
| Jul 4 | Fri |  |  | **FOURTH OF JULY - Happy Birthday America** |
| Jul 5 | Sat | WP | 8:00 AM | **Work Party - All Ranges Closed** |
| Jul 6 | Sun | BRR-3 | 8:00 AM | **Benchrest** *.22 cal, 25-shots @ Rimfire BR Target* |
|  |  | BRU-3 | 9:00 AM | **Benchrest** *.22 cal, 25-shots @ USBR Target* |
|  |  | BRI-3 | 10:00 AM | **Benchrest** *.22 cal, 25-shots @ USRA IR-50/50R Target* |
|  |  | LBM-2 | 11:00AM | **Lead Bullet Match** |
|  |  |  |  | *Bench, 20 rds., 100 yards at SR-21 Targets* |
|  |  |  |  | *Plus two shots at Steel Plates off Hand for Extra points.* |
|  |  | PI-42 | 9:00 AM | **Pistol** *1200 - .22 cal. AND Centerfire 60 rounds each @ 25 yards* |
| Jul 9 | Wed | PI-43 | 7:00PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Jul 10 | Thur | SR-28 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |

- 6 -

**JA136**

| Jul 12 | Sat | SC-7 | 9:00AM | **Steel Challenge** *3 courses of fire, 5 targets each* |
|---|---|---|---|---|
| Jul 13 | Sun | PR-15 | 8:00 AM | **Plinker Rifle** *Standing, 20 rds., 50 yards @ A33 Targets* |
| | | LR-6 | 9:00 AM | **Light Rifle** *Standing, 40 rounds, 50-yards @ 31X Target* |
| | | SR-29 | 10:00 AM | **Sporter Rifle** *Standing, .22 cal., 30 rounds @ 50 feet* |
| | | PI-44 | 10:00 AM | **Pistol** *.22 cal. 900* |
| | | | | *90 rounds 50 yards Slow Fire / 25 yards Timed & Rapid* |
| | | | | *NRA Approved Match* |
| Jul 16 | Wed | PR-16 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| Jul 17 | Thur | SR-30 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Jul 19 | Sat | PI-45 | 9:00AM | **Revolver 600 -** *Centerfire, 60 rounds @ 25 yards, iron sights* |
| Jul 20 | Sun | LAC-3 | 9:00 AM | **Lever Action Cowboy - Buffalo Match** |
| | | | | *Standing, 20 rounds @ 50 Yds Buffalo Target* |
| | | HB-3 | 10:00 AM | **Heavy Benchrest** *5-5 shot groups @ 100 yds* |
| | | PI-46 | 10:00 AM | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |
| Jul 23 | Wed | PI-48 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Jul 24 | Thur | SR-31 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Jul 26 | Sat | RT-5 | 9:00 AM | **Running Target** *Pistol or Pistol Caliber Carbine / S.C. Range* |
| Jul 27 | Sun | ARA-4 | 9:00 AM | **Benchrest** *.22 cal. 25-shots @ ARA Targets (Two Targets)* |
| | | BRB-4 | 10:00 AM | **Benchrest** *.22 cal. 25-shots @ IBS Rimfire Target* |
| | | BRG-4 | 11:00 AM | **Benchrest** *.22 cal. 5-Five 5 shot groups @ USGSA Target* |
| | | PI-47 | 10:00 AM | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| Jul 30 | Wed | PR-17 | 7:30 PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| Jul 31 | Thur | SR-32 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Aug 2 | Sat | | 9:00AM | **HOLD - Possible Club Event?** |
| Aug 3 | Sun | MS-4 | 9:00 AM | **Metallic Silhouette** *.22 cal., 20 rounds, 25 and 50 yards* |
| | | MG-6 | 10:30 AM | **Moving Plate Gallery - Rifle Range** |
| | | | | *Rifle or Pistol, .22 cal., 30 shots, 25 yards* |
| | | PI-49 | 9:00 AM | **Pistol** *1200 - .22 cal. AND Centerfire 60 rounds each @ 25 yards* |
| Jul 31 | Thur | SR-33 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Aug 6 | Wed | | 7:00 PM | **Scheduling Meeting for Chairpersons (No regular meeting)** |
| Aug 7 | Thur | SR-34 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Aug 9 | Sat | | | **Work Party - All Ranges Closed** |
| Aug 10 | Sun | PR-18 | 9:00 AM | **Plinker Rifle** *Standing, 20 rds., 50 yards @ 100 yard SB Target* |
| | | BR-4 | 10:00 AM | **Benchrest** *.22 cal. @ 50 yards, 20 rounds @ Small Animal Target* |
| | | PI-50 | 10:00 AM | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |
| | | | | *NRA Approved Match - NRA Short Course* |
| Aug 13 | Wed | PI-51 | 7:00 PM | **Pistol** *22 cal. 600 - 60 rounds @ 50 feet* |
| Aug 14 | Thur | SR-35 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Aug 16 | Sat | SC-8 | 9:00 AM | **Steel Challenge** *3 courses of fire, 5 targets each* |

**JA137**

| Aug 17 | Sun | LA-5 | 9:00 AM | **Lever Action (ANY)** *Offhand 20 rounds, 50 yds @A33 Target* |
| | | BR-50-2 | 10:00 AM | **Benchrest** *.22 cal @50 yds 20 rounds @ Small Animal Targets* |
| | | PI-52 | 10:00 AM | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| Aug 20 | Wed | PR-19 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @50-feet* |
| Aug 21 | Thur | SR-36 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Aug 23 | Sat | PI-53 | 9:00AM | **Revolver 600** - *Centerfire, 60 rounds @ 25 yards, iron sights* |
| Aug 24 | Sun | HA-8 | 8:00AM | **Hi-Power (223)** *Bi-Pod, Prone, 20 rounds @ 100 yards* |
| | | LA-6 | 9:00 AM | **Lever Action (ANY)** *20 rounds @ 50 yds  Animal Targets* |
| | | M1-3 | 10:00 AM | **M1 Carbine Match** *Standing, 30 rounds, 50 yards @ SR-1 Target* |
| | | PI-54 | 9:00 AM | **Pistol** *1200 - .22 cal. AND Centerfire 60 rounds each @ 25 yards* |
| Aug 27 | Wed | PI-55 | 7:00 PM | **Pistol** *22 cal. 600 - 60 rounds @ 50 feet* |
| Aug 28 | Thur | SR-37 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Aug 30 | Sat | RT-6 | 9:00AM | **Running Target** *Pistol or Pistol Caliber Carbine/S.C. Range* |
| Aug 31 | Sun | BRU-4 | 8:00 AM | **Benchrest** *.22 cal., 25-shots @ USBR Target* |
| | | BRR-4 | 9:00 AM | **Benchrest** *.22 cal., 25-shots @ Rimfire BR Target* |
| | | BRI-4 | 10:00 AM | **Benchrest** *.22 cal., 25-shots @ USRA IR-50/50R Target* |
| | | PI-56 | 9:00 AM | **Pistol 1200** - *.22 cal. AND Centerfire 60 rounds each 25 yards* |
| Sept 1 | Mon | | | *LABOR DAY* |
| Sept 3 | Wed | | 8:00 PM | *REMINDER - Regular Monthly Meeting Tonight* |
| Sept 4 | Thur | SR-38 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| | | | | ***League Matches Thursday Evenings through March 6, 2014*** |
| | | | | ***Note:** These matches subject to cancelation due to weather etc.* |
| Sept 6 | Sat | WP | 8:00 AM | **Work Party - All Ranges Closed** |
| Sept 7 | Sun | HA-9 | 9:00 AM | **Hi-Power (ANY)** *20 rounds, prone bi-pod @100 yds* |
| | | PR-20 | 10:00AM | **Plinker Rifle** *Standing, 20 rounds, 50 yards @ SB1 Target* |
| | | PI-57 | 9:00 AM | **Pistol  Championship Match** |
| | | | | *1200 - .22 cal. AND Centerfire 60 rounds each @ 25 yards* |
| Sept 10 | Wed | PI-58 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Sept 11 | Thur | SR-39 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Sept 13 | Sat | SC-9 | 9:00 AM | **Steel Challenge Championship Match** |
| | | | | *5 courses of fire, 5 targets each* |
| Sept 14 | Sun | MS-5 | 9:00 AM | **Metallic Silhouette** *.22 cal., 20 rounds, 25 and 50 yards* |
| | | MG-7 | 10:00 AM | **Moving Plate Gallery  - Rifle Range** |
| | | | | *Rifle and Pistol, .22 cal., 30 shots, 25 yards* |
| | | PI-59 | 10:00 AM | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |
| Sept 17 | Wed | PR-21 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @50-feet* |
| Sept 18 | Thur | SR-40 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Sept 20 | Sat | PI-60 | 9:00AM | **Revolver 600** - *Centerfire, 60 rounds @ 25 yards, iron sights* |

**JA138**

| Sept 21 | Sun | ARA-5 | 9:00 AM | **Benchrest** *.22 cal. 25-shots @ ARA Targets (Two Targets)* |
| | | BRB-5 | 10:00AM | **Benchrest Championship Match** <br> *.22 cal. 25-shots @ IBS Rimfire Target* |
| | | BRG-5 | 11:00AM | **Benchrest Championship Match** <br> *.22 cal. 5-Five 5-shot groups @ USGSA Target* |
| | | PI-61 | 10:00 AM | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| Sept 24 | Wed | PI-62 | 7:00 PM | **Pistol** *.22 cal. 60 rounds 50 feet* |
| Sept 25 | Thur | SR-41 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Sept 27 | Sat | ARA-6 | 9:30AM | **ARA Benchrest Championship Match** <br> *.22 cal. 25-shots @ ARA Targets (Five Targets)* |
| | | RT-8 | 9:00AM | **Running Target** *Pistol or Pistol Caliber Carbine  SC Range* |
| | | | 9:00AM | **Archery** *3-D Targets* |
| Sept 28 | Sun | PR-22 | 9:00 AM | **Plinker Rifle Championship Match** <br> *Standing, 20 rounds, 50 yards @ SB Target* |
| | | LR-7 | 10:00 AM | **Light Rifle Championship Match** <br> *Offhand 40 rounds, 50 yards @ 31X Target* |
| | | PI-63 | 9:00 AM | **Pistol** *1200 - .22 cal. AND Centerfire 60 rounds each @ 25 yards* |
| Oct 1 | Wed | | 8:00 PM | **REMINDER - Regular Monthly Meeting Tonight** |
| Oct 2 | Thur | SR-42 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Oct 4 | Sat | WP | 8:00 AM | **Work Party  -  All Ranges Closed** |
| Oct 5 | Sun | HA-10 | 8:30AM | **Hi-Power (ANY) Championship Match** <br> *Bi-Pod, Prone, 60 rounds @ 100 yards* |
| | | BR-50-3 | 10:30 AM | **Benchrest** *.22 cal @ 50 yds 20 rounds @ Small Animal Targets* |
| | | LBM-3 | 11:00AM | **Lead Bullet Match** <br> *Bench, 20 rds., 100 yards at SR-21 Targets* <br> *Plus two shots at Steel Plates off Hand for Extra points.* |
| | | PI-64 | 10:00 AM | **Pistol** *.45 cal. 900* <br> *90 rounds, 50 yards Slow Fire/ 25 yards Timed & Rapid* <br> *NRA Approved Match* |
| Oct 8 | Wed | PI-65 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Oct 9 | Thur | SR-43 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Oct 11 | Sat | PI-66 | 9:00 AM | **Revolver 600 -** *Centerfire, 60 rounds @ 25 yards, iron sights* |
| Oct 12 | Sun | MS-6 | 9:00 AM | **Metallic Silhouette Championship Match** <br> *.22 cal., 20 rounds, 25 and 50 yards* |
| | | MG-8 | 10:00 AM | **Moving Plate Gallery Championship Match - Rifle Range** <br> *Rifle and Pistol, .22 cal., 30 shots, 25 yards* |
| | | PI-67 | 10:00 AM | **Pistol** *.22 900 - 90 rounds @ 25 yards* |
| Oct 13 | Mon | | | **COLUMBUS DAY** |
| Oct 15 | Wed | PR-23 | 7:30 PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| Oct 16 | Thur | SR-44 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Oct 18 | Sat | SID-1 | 9 AM - 2 PM | **\*\*\*\*\*\*\*\*\*\*\*\*\*Saturday–Sighting-In Day\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** <br> **\*\*\*\*\*\*\*Rifle Range Open to the Public - Fee For Use\*\*\*\*\*** <br> **Members Are not Permitted Shoot Rifle During this Period** |

**JA139**

| Oct 19 | Sun | LA-7 | 9:00 AM | **Lever Action (ANY) Championship Match** |
| | | | | *20 rounds, 50 yds @ A33 Target* |
| | | LAC-4 | 10:00 AM | **Lever Action Cowboy Championship Match** |
| | | | | *Standing 20 rds., 50 yards - 100 yard A33 Target* |
| | | PI-68 | 9:00 AM | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| Oct 22 | Wed | PI-69 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Oct 23 | Thur | SR-45 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Oct 26 | Sun | BRR-5 | 9:00 AM | **Benchrest Championship Match** |
| | | | | *.22 cal., 25-shots @ Rimfire BR Target* |
| | | BRU-5 | 10:00 AM | **Benchrest Championship Match** |
| | | | | *.22 cal., 25-shots @ USBR Target* |
| | | BRI-5 | 11:00 AM | **Benchrest Championship Match** |
| | | | | *.22 cal., 25-shots @ USRA IR-50/50R Target* |
| | | PI-70 | 9:00 AM | **Pistol** *1200 - .22 cal AND Centerfire 60 rounds each @ 25 yards* |
| Oct 29 | Wed | PR-24 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| Oct 30 | Thur | SR-46 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Nov 1 | Sun | SID-2 | 10 AM - 2 PM | **Pre-Hunting Season** |
| | | | | **Sighting-In Days for Club Members** |
| | | | | **No Rifle Matches** |
| | | PI-71 | 10:00 AM | **Pistol** *.45 cal. 900 - 90 rounds @ 25 yards* |
| Nov 5 | Wed | | 8:00 PM | **REMINDER - Regular Monthly Meeting Tonight** |
| Nov 6 | Thur | SR-47 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Nov 8 | Sat | WP | 8:00 AM | **Work Party  -  All Ranges Closed** |
| Nov 9 | Sun | SID-3 | 10 AM - 2PM | **Pre-Hunting Season** |
| | | | | **Sighting-In Days for Club Members** |
| | | | | **No Rifle Matches** |
| | | PI-72 | 10:00 AM | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |
| Nov 12 | Wed | PI-73 | 7:00 PM | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| Nov 13 | Thur | SR-48 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| Nov 15 | Sat | PI-74 | 9:00 AM | **Revolver 600** *- Centerfire, 60 Rounds @ 25 yards, iron sights* |
| Nov 16 | Sun | LAC-5 | 9:00 AM | **Lever Action Cowboy - Buffalo Match** |
| | | | | *Standing, 20 rounds, 50 yards @ Buffalo Targets* |
| | | WB-3 | 10:00AM | **Woodchuck Benchrest Championship Match** |
| | | | | *Five 5-shot groups @ 100 yards* |
| | | PI-75 | 10:00 AM | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| Nov 19 | Wed | PR-25 | 7:30PM | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| Nov 20 | Thur | SR-49 | 7:30 PM | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |

**JA140**

| | | | | |
|---|---|---|---|---|
| **Nov 23** | **Sun** | *LAC-6* | **9:00 AM** | **Lever Action Cowboy** *20 rounds , 50 yds @ Animal Target* |
| | | *HBR-5* | **10:00 AM** | **Hunter Benchrest Championship Match** |
| | | | | *Five 5-shot targets for score* |
| | | *PI-76* | **9:00 AM** | **Pistol** *1200 - .22 cal. AND Centerfire 60 rounds each @ 25 yards* |
| **Nov 27** | **Thur** | | | THANKSGIVING DAY · No Matches |
| **Nov 30** | **Sun** | *M1-4* | **10:00 AM** | **M1 Carbine** *Standing, 30 rounds, 50 yards @ SR1 Target* |
| | | *PI-77* | **10:00 AM** | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |
| **Dec 3** | **Wed** | | **8:00 PM** | **REMINDER - Regular Monthly Meeting Tonight** |
| **Dec 4** | **Thur** | *SR-50* | **7:30 PM** | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| **Dec 6** | **Sat** | *WP* | **8:00 AM** | **Work Party · All Ranges Closed** |
| **Dec 7** | **Sun** | *ARA-7* | **9:00 AM** | **Benchrest** *.22 cal. 25-shots @ ARA Targets (Two Targets)* |
| | | *BRB-6* | **10:00 AM** | **Benchrest** *.22 cal. 25-shots @ IBS Rimfire Target* |
| | | *BRG-6* | **11:00 AM** | **Benchrest** *.22 cal. 5-Tive 5-shot groups @ USGSA Target* |
| | | *PI-78* | **10:00 AM** | **Pistol** *Centerfire 900 - 90 rounds @ 25 yards* |
| **Dec 10** | **Wed** | *PI-79* | **7:00 PM** | **Pistol** *.22 cal. 600 - 60 rounds @ 50 feet* |
| **Dec 11** | **Thur** | *SR-51* | **7:30 PM** | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| **Dec 13** | **Sat** | *PI-80* | **9:00 AM** | **Revolver 600 -** *Centerfire, 60 rounds @ 25 yards, iron sights* |
| **Dec 14** | **Sun** | *HB-4* | **10:30 AM** | **Heavy Benchrest Championship Match** |
| | | | | *Five 5-shot groups @ 100 yards* |
| | | *PI-81* | **9:00 AM** | **Pistol** *1200 - .22 cal. AND Centerfire 60 rounds each @ 25 yards* |
| **Dec 17** | **Wed** | *PR-26* | **7:30PM** | **Plinker Rifle** *Standing, 20-rounds @ 50-feet* |
| **Dec 18** | **Thur** | *SR-52* | **7:30 PM** | **Sporter Rifle** *Standing, 30 rounds, 50 feet, .22 cal.* |
| **Dec 21** | **Sun** | *BRU-6* | **9:00 AM** | **Benchrest** *.22 cal., 25-shots @ USBR Target* |
| | | *BRR-6* | **10:00 AM** | **Benchrest** *.22 cal. 25-shots @ Rimfire BR Target* |
| | | *BRI-6* | **11:00 AM** | **Benchrest** *.22 cal. 25-shots @ USRA IR-50/ 50R Target* |
| | | *PI-82* | **10:00 AM** | **Pistol** *.45 cal. 900 - 90 rounds @ 25 yards* |
| **Dec 25** | **Thur** | | | CHRISTMAS DAY · No Matches |
| **Dec 28** | **Sun** | *PR-9* | **9:00 AM** | **Plinker Rifle** *20 rounds, 50 yds @ A33 Targets* |
| | | *BR50-4* | **10:00 AM** | **Benchrest** *.22 cal. @ 50 yards* |
| | | | | *20 rounds @ Small Animal Targets* |
| | | *PI-83* | **10:00 AM** | **Pistol** *.22 cal. 900 - 90 rounds @ 25 yards* |
| **Jan 1** | **Thur** | | | NEW YEARS DAY · No Matches |

**JA141**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, ROMOLO COLANTONE, EFRAIN
ALVAREZ, and JOSE ANTHONY IRIZARRY,

                                  Plaintiffs,

              -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT LICENSE DIVISION,

                              Defendants.

------------------------------------------------------------------------ X

**DEFENDANTS'
STATEMENT OF
UNDISPUTED
MATERIAL FACTS
PURSUANT TO
LOCAL RULE 56.1**

13 CV 2115 (RWS)
ECF Case

## **DEFENDANTS' STATEMENT PURSUANT TO RULE 56.1**

       Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court

for the Southern District of New York, defendants the City of New York and the New York City

Police Department License Division (collectively "defendants"), though their attorney Zachary

W. Carter, Corporation Counsel of the City of New York, submit the following statement of

undisputed material facts as to which defendants contend there is no genuine issue to be tried:

**The Parties**

       1.  Defendant, the City of New York, is a domestic municipal corporation

organized and existing under the laws of the State of New York.  See New York City Charter §

1.

       2.  The New York City Police Department, License Division ("NYPD") reviews

applications for Premises Residence firearms licenses in the City of New York and issues said

licenses.  See Declaration of NYPD License Division Commanding Officer Andrew Lunetta,

dated May 29, 2014 ("Lunetta Dec."), ¶ 1, 15-27.

**JA143**

3.  The License Division issues licenses for Premises Residence firearms in the City of New York.  See Lunetta Dec., ¶¶ 1, 15-27.

4.  The License Division conducts an investigation of all applicants for firearms licenses in the City of New York.  See Lunetta Dec., ¶¶ 1, 15-27.

**The License Division and Premises Residences Handgun Licenses**

5.  In New York City, the License Division of the New York City Police Department is responsible for processing handgun license applications, including those for premises residence handgun licenses.  See Penal Law §§ 400.00; 265.00(10); Lunetta Dec., ¶¶ 1; 15-27.

6.  The different firearms licenses and permits issued by the License Division, along with a description of the license type are codified in title 38, chapter 5 of the Rules of the City of New York ("RCNY") (types of handgun licenses) and title 38, chapter 1 of the RCNY (rifle, shotgun, and longarm permits).   See  38  RCNY  §§  5-01;  1-02; http://www.nyc.gov/html/nypd/html/permits/handgun_licensing_information.shtml (last visited June 2, 2014).

7.  Holders of Premises Residence handgun licenses are restricted to possessing the licensed weapon at the specific home address designated on the licensee.  See 38 RCNY § 5-01(a).

8.  Premises Residence licensees are also authorized to transport the licensed handgun directly to and from an authorized small arms range/shooting club, secured and unloaded in a locked container.  See 38 RCNY §§ 5-01(a); 5-22(a)(14).

9.  Pursuant to Penal Law § 400.00(1), "[n]o license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true."

Article 400 of the Penal Law details the duties of the licensing officer which include, inter alia, determining whether the applicant meets the eligibility requirements set forth under Penal Law 400.00(1); inspecting mental hygiene records for previous or present mental illness; investigating the truthfulness of the statements in the application; and having the applicant's fingerprints forwarded for review against the records of the New York State Division of Criminal Justice Services ("DCJS") and the FBI "to ascertain any previous criminal record. See Penal Law § 400.00(1).

10. After an investigation, the licensing officer may not approve the application if, inter alia, "good cause exists for the denial of the license." Penal Law §400.00(1)(g).

11. In ensuring an applicant meets the requirements of Penal Law § 400.00, the License Division must conduct an investigation that requires an assessment of the applicant's mental hygiene records for previous and present mental illness, an investigation of criminal records, and documentation of the applicant's physical descriptive data. See Penal Law § 400.00(4).

12. There are currently over 40,000 active licenses that have been issued by the License Division for the possession of handguns in New York City; and over 20,000 active permits for the possession of rifles and shotguns. Lunetta Dec., ¶ 11.

13. The License Division currently processes an average of 3,200 new applications and over 9,000 renewal applications each year for the issuance and renewal of the various types of handgun licenses issued by the License Division. In addition, the License Division processes an average of 850 applications for rifle and shotgun permits and 5,000 renewal applications per year. Lunetta Dec., ¶ 12.

**JA145**

14.     Currently, the License Division has 79 employees.  The License Division is divided into several different sections and units, and is overseen by a five member Executive Staff, that includes a director, deputy inspector (as commanding officer), a captain (as executive officer), and a lieutenant and sergeant (as Integrity Control Officer and Assistant).  Lunetta Dec., ¶ 4.

15.     The License Division has an Incident Section that investigates on average 600 incidents pertaining to handgun licenses per year.  Lunetta Dec., ¶¶ 14; 23-26.

16.     The License Division receives reports from the New York State Division of Criminal Justice System ("DCJS") regarding all arrests made within the State of New York for which an arrestee is fingerprinted.  Lunetta Dec., ¶ 23.

17.     No formal report is forwarded to the License Division for summonses and other arrests and incidents for which a detainee is not fingerprinted.  Lunetta Dec., ¶ 24.

18.     The NYPD Department Manual includes a procedure for NYPD personnel to investigate incidents involving holders of handgun licenses and rife/shotgun permits to the License Division Incident Section.  Lunetta Dec., ¶ 25, Exhibit "B" (Patrol Guide Procedure 212-118).

19.     There is no such class of licenses known as a "target license" under New York State Penal Law.  Lunetta Dec., ¶ 27; Penal Law § 400.00.

20.     In 2001, the License Division eliminated its issuance of a target license that permitted the transport of a registered firearm, unloaded, to and from an authorized shooting range or club for regular target shooting purposes.  Declaration of Michelle Goldberg-Cahn, dated June 5, 2014 ("Goldberg-Cahn Dec."), Exhibits "A" and "B;" Lunetta Dec., ¶ 27.

21.    One of the primary reasons that the NYPD eliminated the target license in 2001, was based on the history of incidents reported to and investigated by the License Division of permit holders not complying with the limitations on the target license.  Goldberg-Cahn Dec., Exhibits "A" and "B;" Lunetta Dec., ¶¶ 28-31; Exhibits "C" and "D," annexed thereto.

**The License Division's Approval of New York City Authorized Ranges**

22.    The NYPD established a procedure for individuals or organizations to apply to the NYPD for special designation to operate a small arms range in New York City. Lunetta Dec., ¶ 32.

23.    The application process includes submission of an application for approval as a Small Arms Range in New York City.  Lunetta Dec., ¶ 13, Exhibit "E."

24.    The applicant for a license for approval as a Small Arms Range must provide a name and address for the applicant, location for the proposed range, information about whether the proposed range is outdoor or indoors, and if indoors, where in the building it would be located, information about any clubs or organizations the range is associated with, the types of weapons to be used at the range, and other information.  Lunetta Dec., ¶ 34; Exhibit "E."

25.    NYPD License Division conducts a background check on applicants for approval as Small Arms Ranges, including consulting with the New York City Department of Buildings for a review of the zoning, property, and land use designation for the proposed site. Lunetta Dec., ¶ 35, Exhibit "F."

26.    Approval letters for authorized Small Arms Ranges include requirements for the appropriate sound absorbent materials, fireproofing, and specifics on how targets and fire booths must be set up to ensure public safety, along with other rules.  Lunetta Dec., ¶ 37; Exhibits "E" and "F."

**Authorized Small Arms Ranges in New York City**

       27.    There are currently eight NYPD approved Small Arms Ranges in New York City, exclusive of police or military ranges.  Lunetta Dec., ¶ 39; Exhibit "G."

       28.    Seven of the eight ranges are open to any person possessing a valid NYPD license or permit for a firearm.  Lunetta Dec., ¶ 40.

       29.    There is at least one NYPD approved shooting range open to the public within City borders.  Am. Complaint, ¶ 35.

       30.    The Westside Rifle & Pistol Range on West 20th Street in Manhattan is open for use to anyone possessing a valid license or permit.  Lunetta Dec., ¶ 40.

       31.    The Woodhaven Rifle & Pistol Range in Woodhanven Queens is open for use to anyone possessing a valid license or permit.  Lunetta Dec., ¶ 40.

       32.    Bay Ridge Road and Gun Club, Inc., located in Bay Ridge, Brooklyn is open for use to anyone possessing a valid license or permit.  Lunetta Dec., ¶ 40.

       33.    Colonial Rifle & Pistol Club located in Staten Island is open for use to anyone possessing a valid license or permit.  Lunetta Dec., ¶ 40.

       34.    The Richmond Borough Gun Club located in Staten Island is open for use to anyone possessing a valid license or permit.  Lunetta Dec., ¶ 40.

       35.    Olinville Arms, located in the Bronx is available to the public for shooting.  Lunetta Dec., ¶ 40; Exhibit "H."

       36.    The Richmond Borough Gun Club holds regular shooting competitions and other events.  Lunetta Dec., ¶ 42; Exhibit "I."

       37.    Some of the ranges require patrons to pay a fee for use of their range. Lunetta Dec., ¶¶ 29; 40.

38.     Some of the ranges require patrons to be members; however, membership is determined by the individual range and is often about the method of payment, much like a gym membership.  Lunetta Dec., ¶ 41.

Dated:        New York, New York
              June 5, 2014

                                        ZACHARY W. CARTER
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for Defendants
                                        100 Church Street, 5th Floor
                                        New York, New York 10007
                                        (212) 356-2199


                                        By:    Michelle Goldberg-Cahn
                                               Assistant Corporation Counsel

7

**JA149**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NEW YORK STATE RIFLE AND PISTOL ASSOCIATION, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:13-cv-2115-RWS |
| v. | ) ) | |
| THE CITY OF NEW YORK, et al., | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' LOCAL RULE 56.1(a) STATEMENT
OF UNCONTESTED MATERIAL FACTS**

Plaintiffs**,** by and through counsel and pursuant to S.D.N.Y. L.Civ.R. 56.1(a), hereby sets forth the following statement of uncontested material facts as to which there is no genuine issue to be tried:

**A.       New York City's Licensing Regime**

1.       New York State law prohibits an individual from possessing a pistol or revolver anyplace without a license.  N.Y. Penal Law §§ 265.01, 265.20(a)(3).  Violation of this statute is a Class A Misdemeanor punishable by up to one year in prison, a $1,000 fine, or both.  N.Y. Penal Law §§ 265.01, 60.01(3), 70.15.

2.       In New York City, firearms licensing is controlled by the New York City Police Department ("NYCPD").  N.Y. Penal Law §§ 265.00(10).

3.       One of the licenses available for state residents to obtain is a Premises License—Residence, which allows an individual to keep a handgun in his or her home.  38 RCNY § 5-23.

**JA150**

4.      Applicants for any license issued by the NYCPD—including Premises Licenses—must complete a detailed application form and undergo an interview with a licensing officer.  38 RCNY § 5-23.

5.      Licenses are limited to persons over twenty-one years of age, of good moral character, without a serious criminal history or mental illness, and "concerning whom no good cause exists for the denial of the license." N.Y. Penal Law § 400.00(1)(a)-(d), (g).

6.      New York City firearms licenses are periodically reviewed and are subject to revocation for various reasons, including violations of the terms of the license itself.  38 RCNY § 5-23.

7.      It is the responsibility of the NYCPD's License Division to issue, renew, monitor, and revoke firearm permits for New York City residents.  N.Y. Penal Law § 400.00.

8.      Title 38 was amended in May 2001 to read as follows:

§ 5-23  Types of Handgun Licenses.

(a)   Premises License-Residence or Business. This is a restricted handgun license, issued for the protection of a business or residence premises.

(1) The handguns listed on this license may not be removed from the address specified on the license except as otherwise provided in this chapter.

(2) The possession of the handgun for protection is restricted to the inside of the premises which address is specified on the license.

(3) To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, and in a locked container, the ammunition to be carried separately.

(4) A licensee may transport his/her handgun(s) directly to and from an authorized area designated by the New York State Fish and Wildlife Law and in compliance with all pertinent hunting regulations, unloaded, in a locked container, the ammunition to be carried separately, after the licensee

has requested and received a "Police Department – City of New York Hunting Authorization" Amendment attached to her/his license.

38 RCNY § 5-23.

**B.     38 RCNY § 5-23 as applied to Plaintiffs**

9.      Plaintiffs Colantone, Alvarez, and Irizarry are all holders of Premises Residence Licenses issued by New York City and subject to the restrictions of 38 RCNY § 5-23. See Affidavit of Romolo Colantone, sworn to on April 30, 2013 (Docket No. 10-1)("Colantone Aff."), ¶ 3; Affidavit of Jose Anthony Irizarry, sworn to on April 26, 2013 (Docket No. 10-2)("Irizarry Aff."), ¶ 3; and Affidavit of Efrain Alvarez, sworn to on April 25, 2013 (Docket No. 10-3)("Alvarez Aff."), ¶ 3.

10.     Previously, Plaintiff Colantone regularly traveled outside of New York City and New York State to attend shooting competitions in an effort to maintain proficiency in using his handgun.  Colantone Aff., ¶¶ 4-5.

11.     On May 8, 2012, to confirm that his license allowed him to participate in a shooting competition held in New Jersey, Plaintiff Colantone wrote to Deputy Inspector Andrew Lunetta of the NYCPD License Division to inquire about the scope of 38 RCNY § 5-23's restrictions. Colantone Aff., ¶ 7; Ex. A.

12.     In a letter dated May 15, 2012, Deputy Inspector Lunetta advised Mr. Colantone that:

> The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner.  Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence License Holders are those located in New York City.

> Premises license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of City of New

York designated by the New York State Fish and Wildlife Law for the purpose of hunting: no areas outside of New York State are permissible for this purpose.

These rules do not apply to New York City issued long gun permits. Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried separately.

Colantone Aff., Ex B.

13.   Because of the restrictions 38 RCNY § 5-23 imposes, Plaintiff Colantone has refrained from engaging in target practice or participating in shooting competitions outside New York City.  Colantone Aff., ¶ 13.

14.   Similarly, Plaintiffs Alvarez and Irizarry have been told by out-of-state ranges that they were not permitted to engage in target practice or participate in shooting competitions at those ranges because of New York City's enforcement of 38 RCNY § 5-23.  Alvarez Aff., ¶ 7; Irizarry Aff., ¶ 7.

15.   Because of the restrictions 38 RCNY § 5-23 imposes, Plaintiff Colantone has refrained from transporting his handgun to his second home outside of the boundaries of New York City.  Colantone Aff., ¶¶ 12,14.

16.   Plaintiff Colantone's family has owned land in the Catskill region of New York for the past thirty-two years.  Colantone Aff., ¶ 11.  He built a second family home eight years ago in Hancock, New York.  Colantone Aff., ¶ 11.

17.   Colantone's Hancock house is located in a remote area and its location presents a threat to the safety of Plaintiff Colantone and his family while at the house.  Colantone Aff., ¶ 11.

18.   Plaintiff Colantone and his family visit the land and second home several times each year.  Colantone Aff., ¶ 11.

19.     In direct response to Deputy Inspector Lunetta's May 15, 2012 letter, Plaintiff Colantone has refrained from taking his handgun licensed in New York City to his house in Hancock, New York since May 15, 2012.  Colantone Aff., ¶ 12.

20.     Previously, Plaintiff Alvarez regularly traveled outside of New York City and New York State to attend shooting competitions in an effort to maintain proficiency in using his handgun.  Alvarez Aff., ¶¶ 4-5.

21.     On May 8, 2012, to confirm that his license allowed him to participate in a shooting competition held in New Jersey, Plaintiff Alvarez wrote to Deputy Inspector Andrew Lunetta of the NYCPD License Division to inquire about the scope of 38 RCNY § 5-23's restrictions.  Alvarez Aff., ¶ 7; Ex. A.

22.     In a letter dated May 15, 2012, Deputy Inspector Lunetta advised Mr. Alvarez that:

> The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner.  Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence License Holders are those located in New York City.

> Premises license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of City of New York designated by the New York State Fish and Wildlife Law for the purpose of hunting: no areas outside of New York State are permissible for this purpose.

> These rules do not apply to New York City issued long gun permits. Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried separately.

Alvarez Aff., Ex B.

23.     Because of the restrictions 38 RCNY § 5-23 imposes, Plaintiff Alvarez has refrained from engaging in target practice or participating in shooting competitions outside New York City.  Alvarez Aff., ¶ 10.

24.     Because of the restrictions 38 RCNY § 5-23 imposes, Plaintiff Irizarry has refrained

from engaging in target practice or participating in shooting competitions outside New York City

Irizarry Aff., ¶ 10.


Dated: July 15, 2014                                 Respectfully Submitted,

                                                     GOLDBERG SEGALLA, LLP

                                     By:   /s/   Brian T. Stapleton
                                           Brian T. Stapleton, Esq. (BS 5640)
                                           Christopher Bopst, Esq. (CB3168)
                                           11 Martine Avenue, 7th Floor
                                           White Plains, New York 10606-1934
                                           (914) 798-5400
                                           bstapleton@goldbergsegalla.com
                                           cbopst@goldbergsegalla.com
                                           *Counsel For Plaintiffs*

## CERTIFICATION

I hereby certify that on July 15, 2014, a copy of the foregoing Plaintiffs' Local Rule 56.1(a) Statement of Uncontested Material Facts was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing was will be sent by e-mail to the parties described below by operation of the Court's electronic filing system  or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

ZACHARY W. CARTER
Corporation Counsel of the City of New York
By Michelle Goldberg-Cahn, Esq. (MG 4490)
*Attorney for Defendants*
100 Church St., 5th Floor
New York, New York 10007
migoldbe@law.nyc.gov

By:    /s/    Christopher Bopst
Christopher Bopst, Esq. (CB 3168)

3010495.1

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

7

**JA156**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

NEW YORK STATE RIFLE AND PISTOL )
ASSOCIATION, INC., et al., )
  )
                    Plaintiffs, )      Case No.: 1:13-cv-2115-RWS
  )
      v. )
  )
THE CITY OF NEW YORK, et al., )
  )
                    Defendants. )
_____)

### PLAINTIFFS' LOCAL RULE 56.1(b) STATEMENT IN RESPONSE TO DEFENDANTS' RULE 56.1(a) STATEMENT

Plaintiffs, by and through counsel and pursuant to S.D.N.Y. L.Civ.R. 56.1(b), hereby submit their response to Defendants' Local Rule 56.1(a) Statement dated June 5, 2014 (Doc. No. 37).

## I.   RESPONSE TO DEFENDANT'S LOCAL RULE 56(a)1 STATEMENT

**Par. #**      **Defendants' Statement of "Material Fact"**

1.       Defendant, the City of New York, is a domestic municipal corporation organized and existing under the laws of the State of New York. See New York City Charter § 1.

   **Plaintiffs' Response:**

   Admitted.

**Par. #**      **Defendants' Statement of "Material Fact"**

2.       The New York City Police Department, License Division ("NYPD") reviews applications for Premises Residence firearms licenses in the City of New York and issues said licenses. See Declaration of NYPD License Division Commanding Officer Andrew Lunetta, dated May 29,2014 ("Lunetta Dec."), ¶ 1, 15-27.

   **Plaintiff's Response:**

   Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|
| 3. | The License Division issues licenses for Premises Residence firearms in the City of New York. See Lunetta Dec., ¶¶ l, 15-27. |

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|
| 4. | The License Division conducts an investigation of all applicants for firearms licenses in the City of New York. See Lunetta Dec., ¶¶ l, 15-27. |

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|
| 5. | In New York City, the License Division of the New York City Police Department is responsible for processing handgun license applications, including those for premises residence handgun licenses. See Penal Law §§ 400.00; 265.00(10); Lunetta Dec., ¶¶ l, 15-27 |

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|
| 6. | The different firearms licenses and permits issued by the License Division, along with a description of the license type are codified in title 38, chapter 5 of the Rules of the City of New York ("RCNY") (types of handgun licenses) and title 38, chapter 1 of the RCNY (rifle, shotgun, and longarm permits). See 38 RCNY §§ 5-01; l-02; http://www.nyc.gov/html/nypd/html/permits/handgun_licensing_information.shtml (last visited June 2, 2014). |

**Plaintiff's Response:**

Admitted.

**Par. #**          **Defendants' Statement of "Material Fact"**

7.          Holders of Premises Residence handgun licenses are restricted to possessing the
            licensed weapon at the specific home address designated on the licensee. See 38
            RCNY § 5-01(a).

            **Plaintiff's Response:**

            Disputed in Part.  Holders of Premises Residence licenses are authorized to

transport the licensed firearm but only under certain specified conditions.

**Par. #**          **Defendants' Statement of "Material Fact"**

8.          Premises Residence licensees are also authorized to transport the licensed
            handgun directly to and from an authorized small arms range/shooting club,
            secured and unloaded in a locked container. See 38 RCNY §§ 5-01(a); 5-
            22(a)(14).

            **Plaintiff's Response:**

            Admitted.

**Par. #**          **Defendants' Statement of "Material Fact"**

9.          Pursuant to Penal Law § 400.00(1), "[n]o license shall be issued or renewed
            pursuant to this section except by the licensing officer, and then only after
            investigation and finding that all statements in a proper application for a license
            are true." Article 400 of the Penal Law details the duties of the licensing officer
            which include, inter alia, determining whether the applicant meets the eligibility
            requirements set forth under Penal Law § 400.00(1); inspecting mental hygiene
            records for previous or present mental illness; investigating the truthfulness of the
            statements in the application; and having the applicant's fingerprints forwarded
            for review against the records of the New York State Division of Criminal Justice
            Services ("DCJS") and the FBI "to ascertain any previous criminal record. See
            Penal Law § 400.00(1).

            **Plaintiff's Response:**

            Admitted.

**Par. #**          **Defendants' Statement of "Material Fact"**

10.         After an investigation, the licensing officer may not approve the application if,
            inter alia, "good cause exists for the denial of the license." Penal Law §

400.00(1)(g).

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |

11.      In ensuring an applicant meets the requirements of Penal Law § 400.00, the License Division must conduct an investigation that requires an assessment of the applicant's mental hygiene records for previous and present mental illness, an investigation of criminal records, and documentation of the applicant's physical descriptive data. See Penal Law § 400.00(4).

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |

12.      There are currently over 40,000 active licenses that have been issued by the License Division for the possession of handguns in New York City; and over 20,000 active permits for the possession of rifles and shotguns. Lunetta Dec., ¶ 11.

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |

13.      The License Division currently processes an average of 3,200 new applications and over 9,000 renewal applications each year for the issuance and renewal of the various types of handgun licenses issued by the License Division. In addition, the License Division processes an average of 850 applications for rifle and shotgun permits and 5,000 renewal applications per year. Lunetta Dec., ¶ 12.

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |

14.      Currently, the License Division has 79 employees. The License Division is divided into several different sections and units, and is overseen by a five member

Executive Staff, that includes a director, deputy inspector (as commanding officer), a captain (as executive officer), and a lieutenant and sergeant (as Integrity Control Officer and Assistant). Lunetta Dec., ¶ 4.

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|

15.    The License Division has an Incident Section that investigates on average 600 incidents pertaining to handgun licenses per year. Lunetta Dec., ¶¶ 14; 23-26.

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|

16.    The License Division receives reports from the New York State Division of Criminal Justice System ("DCJS") regarding all arrests made within the State of New York for which an arrestee is fingerprinted. Lunetta Dec., ¶ 23.

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|

17.    No formal report is forwarded to the License Division for summonses and other arrests and incidents for which a detainee is not fingerprinted. Lunetta Dec., ¶ 24.

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|

18.    The NYPD Department Manual includes a procedure for NYPD personnel to investigate incidents involving holders of handgun licenses and rife/shotgun permits to the License Division Incident Section. Lunetta Dec., ¶ 25, Exhibit "B" (Patrol Guide Procedure 212-118)

**Plaintiff's Response:**

Admitted.

| Par. # | Defendants' Statement of "Material Fact" |
|---|---|

19.  There is no such class of licenses known as a "target license" under New York State Penal Law. Lunetta Dec., ¶ 27; Penal Law § 400.00.

**Plaintiff's Response:**

Admitted.

| Par. # | Defendants' Statement of "Material Fact" |
|---|---|

20.  In 2001, the License Division eliminated its issuance of a target license that permitted the transport of a registered firearm, unloaded, to and from an authorized shooting range or club for regular target shooting purposes. Declaration of Michelle Goldberg-Cahn, dated June 5, 2014 ("Goldberg-Cahn Dec."), Exhibits "A" and "B;" Lunetta Dec., ¶ 27.

**Plaintiff's Response:**

Admitted.

| Par. # | Defendants' Statement of "Material Fact" |
|---|---|

21.  One of the primary reasons that the NYPD eliminated the target license in 2001, was based on the history of incidents reported to and investigated by the License Division of permit holders not complying with the limitations on the target license, Goldberg-Cahn Dec., Exhibits "A" and "B;" Lunetta Dec., ¶¶ 28-31; Exhibits "C" and "D," annexed thereto.

**Plaintiff's Response:**

Admitted.

| Par. # | Defendants' Statement of "Material Fact" |
|---|---|

22.  The NYPD established a procedure for individuals or organizations to apply to the NYPD for special designation to operate a small arms range in New York City. Lunetta Dec., ¶ 32.

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|
| 23. | The application process includes submission of an application for approval as a Small Arms Range in New York City. Lunetta Dec., ¶ 13, Exhibit "E." |

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|
| 24. | The applicant for a license for approval as a Small Arms Range must provide a name and address for the applicant, location for the proposed range, information about whether the proposed range is outdoor or indoors, and if indoors, where in the building it would be located, information about any clubs or organizations the range is associated with, the types of weapons to be used at the range, and other information. Lunetta Dec., ¶ 34; Exhibit "E." |

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|
| 25. | NYPD License Division conducts a background check on applicants for approval as Small Arms Ranges, including consulting with the New York City Department of Buildings for a review of the zoning, property, and land use designation for the proposed site. Lunetta Dec., ¶ 35, Exhibit "F." |

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|
| 26. | Approval letters for authorized Small Arms Ranges include requirements for the appropriate sound absorbent materials, fireproofing, and specifics on how targets and fire booths must be set up to ensure public safety, along with other rules. Lunetta Dec., ¶ 37; Exhibits "E" and "F." |

**Plaintiff's Response:**

Admitted.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
|---|---|

**JA163**

27.         There are currently eight NYPD approved Small Arms Ranges in New York City,
            exclusive of police or military ranges. Lunetta Dec., ¶ 39; Exhibit "G."

**Plaintiff's Response:**

Admitted.

**Par. #**      **Defendants' Statement of "Material Fact"**

28.         Seven of the eight ranges are open to any person possessing a valid NYPD license
            or permit for a firearm. Lunetta Dec., ¶ 40.

**Plaintiff's Response:**

Disputed in Part.  The use of the term "open" implies that they are free to use

without joining as a member, which is disputed.

**Par. #**      **Defendants' Statement of "Material Fact"**

29.         There is at least one NYPD approved shooting range open to the public within
            City borders. Am. Complaint, ¶ 35.

**Plaintiff's Response:**

Disputed in Part.  There is only one NYPD-approved shooting range open to the

public within City borders.  The use of the term "at least one" creates a misleading impression

that there may be numerous such ranges.

**Par. #**      **Defendants' Statement of "Material Fact"**

30.         The Westside Rifle & Pistol Range on West 20th Street in Manhattan is open for
            use to anyone possessing a valid license or permit. Lunetta Dec., ¶ 40.

**Plaintiff's Response:**

Disputed in Part.  By defendants' own admission, this range requires a person to

become a member.  Lunetta Dec., ¶ 40.  Moreover, merely because the range is open for use does

not mean it is available or convenient.

**Par. #**      **Defendants' Statement of "Material Fact"**

31.             The Woodhaven Rifle & Pistol Range in Woodhaven Queens is open for use to anyone possessing a valid license or permit. Lunetta Dec., ¶ 40.

      **Plaintiff's Response:**

      <u>Disputed in Part</u>. By defendants' own admission, this range requires a person to become a member. Lunetta Dec., ¶ 40. Moreover, merely because the range is open for use does not mean it is available or convenient.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
| --- | --- |

32.             Bay Ridge Road and Gun Club, Inc., located in Bay Ridge, Brooklyn is open for use to anyone possessing a valid license or permit. Lunetta Dec., ¶ 40.

      **Plaintiff's Response:**

      <u>Disputed in Part</u>. By defendants' own admission, this range requires a person to become a member. Lunetta Dec., ¶ 40. Moreover, merely because the range is open for use does not mean it is available or convenient.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
| --- | --- |

33.             Colonial Rifle & Pistol Club located in Staten Island is open for use to anyone possessing a valid license or permit. Lunetta Dec., ¶ 40.

      **Plaintiff's Response:**

      <u>Disputed in Part</u>. By defendants' own admission, this range requires a person to become a member. Lunetta Dec., ¶ 40. Moreover, merely because the range is open for use does not mean it is available or convenient.

| **Par. #** | **Defendants' Statement of "Material Fact"** |
| --- | --- |

34.             The Richmond Borough Gun Club located in Staten Island is open for use to anyone possessing a valid license or permit. Lunetta Dec., ¶ 40.

      **Plaintiff's Response:**

      <u>Disputed in Part</u>. By defendants' own admission, this range requires a person to

become a member.  Lunetta Dec., ¶ 40.  Moreover, merely because the range is open for use does

not mean it is available or convenient.

| Par. # | Defendants' Statement of "Material Fact" |
|---|---|

35.        Olinville Arms, located in the Bronx is available to the public for shooting.
Lunetta Dec., ¶ 40; Exhibit "H."

**Plaintiff's Response:**

Disputed in Part.  The documents attached to Officer Lunetta's Affidavit do not

indicate that it does not require membership.  Moreover, merely because the range is open for

use does not mean it is available or convenient.

| Par. # | Defendants' Statement of "Material Fact" |
|---|---|

36.        The Richmond Borough Gun Club holds regular shooting competitions and other
events. Lunetta Dec., ¶ 42; Exhibit "I."

**Plaintiff's Response:**

Disputed in Part.  The Richmond Borough Gun Club requires membership so

regular shooting competitions and other events are only available for those members.

| Par. # | Defendants' Statement of "Material Fact" |
|---|---|

37.        Some of the ranges require patrons to pay a fee for use of their range. Lunetta
Dec., ¶¶ 29;40.

**Plaintiff's Response:**

Disputed in Part.  All of the ranges charge a fee for use of their range.  The use of

the term "some" creates a misleading impression that there may be certain ranges which do not

charge for the use of their range.

| Par. # | Defendants' Statement of "Material Fact" |
|---|---|

38.    Some of the ranges require patrons to be members; however, membership is determined by the individual range and is often about the method of payment, much like a gym membership. Lunetta Dec., ¶ 41.

**Plaintiff's Response:**

Disputed in Part.  This statement is vague, ambiguous, and misleading.  By defendants' own admission, all but one of the ranges require persons to be members.

Dated: July 15, 2014                    Respectfully Submitted,

                                        GOLDBERG SEGALLA, LLP

                                        By:   /s/   Brian T. Stapleton
                                             Brian T. Stapleton, Esq. (BS 5640)
                                             Christopher Bopst, Esq. (CB 3168)
                                             11 Martine Avenue, 7th Floor
                                             White Plains, New York 10606-1934
                                             (914) 798-5400
                                             bstapleton@goldbergsegalla.com
                                             cbopst@goldbergsegalla.com
                                             ***Counsel For Plaintiffs***

2992871.1

**JA167**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, ROMOLO COLANTONE, EFRAIN
ALVAREZ, and JOSE ANTHONY IRIZARRY,

                                   Plaintiffs,

                 -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT LICENSE DIVISION,

                               Defendants.

------------------------------------------------------------------------ X

**DEFENDANTS'**
**RESPONSES AND**
**OBJECTIONS TO**
**PLAINTIFFS'**
**STATEMENT**
**PURSUANT TO**
**LOCAL RULE 56.1**

13 CV 2115 (RWS)
ECF Case

           Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, defendants the City of New York and the New York City Police Department License Division, submit the following responses to plaintiffs' Statement of Material Facts in Support of Plaintiffs' Cross-Motion for Summary Judgment, dated July 15, 2014 (Plaintiffs' Rule 56.1 Statement):

**GENERAL STATEMENTS AND OBJECTIONS**

           Defendants' responses to Plaintiffs' Rule 56.1 Statement are provided herein. However, such disputed allegations do not raise any triable issue of fact that would require a denial of defendants' cross-motion for summary judgment.  Any statements that are not disputed are not disputed solely for purposes of this motion.

           Defendants respond to each of the paragraphs utilizing the numbering scheme set forth in Plaintiffs' Rule 56.1 Statement.

           1.      Defendant does not dispute the statements set forth in paragraph "1."

           2.      Defendant does not dispute the statements set forth in paragraph "2."

**JA168**

3.  Defendants dispute the statements set forth in paragraph "3" to the extent that New York State does not issue Premises Residence licenses.  The State of New York has a license set forth in Penal Law § 400.00(2)(a) and New York City issues Premises Residence licenses as set forth in 38 RCNY §§ 5-01; 5-23(a).

4.  Defendants do not dispute the statements set forth in paragraph "4."

5.  Defendants do not dispute the statements set forth in paragraph "5."

6.  Defendants do not dispute the statements set forth in paragraph "6."

7.  Defendants do not dispute the statements set forth in paragraph "7."

8.  Defendants do not dispute the statements set forth in paragraph "8."

9.  Defendants do not dispute the statements set forth in paragraph "9."

10.  Defendants dispute the statements set forth in paragraph "10" insofar as the evidence relied upon by plaintiffs does not support the statements set forth therein.

11.  Defendants dispute the statements set forth in paragraph "11" insofar as they mischaracterize the evidence cited in support; defendants nevertheless asserts that such a dispute is not material.

12.  Defendants do not dispute the statements set forth in paragraph "12."

13.  Defendants dispute the statements set forth in paragraph "13" insofar as the evidence relied upon by plaintiffs does not support the statements set forth therein and notes that the cited affidavit was signed well over one year ago so there is no support that the assertions remain as such today.

14.  Defendants do not dispute the statements set forth in paragraph "14."

15.  Defendants do not dispute the statements set forth in paragraph "15."

16.  Defendants do not dispute the statements set forth in paragraph "16."

17.  Defendants do not dispute the statements set forth in paragraph "17."

18.     Defendants do not dispute the statements set forth in paragraph "18."

19.     Defendants do not dispute the statements set forth in paragraph "19."

20.     Defendants dispute the statements set forth in paragraph "20" insofar as the evidence relied upon by plaintiffs does not support the statements set forth therein.

21.     Defendants dispute the statements set forth in paragraph "21" insofar as they mischaracterize the evidence cited in support; defendants nevertheless asserts that such a dispute is not material.

22.     Defendants do not dispute the statements set forth in paragraph "22."

23.     Defendants dispute the statements set forth in paragraph "23" insofar as the evidence relied upon by plaintiffs does not support the statements set forth therein and notes that the cited affidavit was signed well over one year ago so there is no support that the assertions remain as such today.

24.     Defendants dispute the statements set forth in paragraph "24" insofar as the evidence relied upon by plaintiffs does not support the statements set forth therein and notes that the cited affidavit was signed well over one year ago so there is no support that the assertions remain as such today.

Dated:      New York, New York
            August 15, 2014


                                    ZACHARY W. CARTER
                                    Corporation Counsel of the
                                      City of New York
                                    Attorney for Defendants
                                    100 Church Street, 5th Floor
                                    New York, New York 10007
                                    (212) 356-2199


                            By:     Michelle Goldberg-Cahn
                                    Assistant Corporation Counsel

3

**JA170**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2515

THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, ROMOLO COLANTONE, EFRAIN
ALVAREZ, and JOSE ANTHONY IRIZARRY,

                         Plaintiffs,                13 Civ. 2115 (RWS)

        -against-                                        OPINION

THE CITY OF NEW YORK and THE NEW YORK CITY
POLICE DEPARTMENT - LICENSE DIVISION,

                         Defendants.

---------------------------------------X

A P P E A R A N C E S:


<u>Attorneys for Plaintiffs</u>

GOLDBERG SEGALLA, LLP
170 Hamilton Avenue
White Plains, NY 10601
By:  Brian T. Stapleton, Esq.

GOLDBERG SEGALLA, LLP
665 Main Street, Suite 400
Buffalo, NY 14203
By:  Christopher Bopst, Esq.
     Matthew S. Lerner, Esq.

GOLDBERG SEGALLA, LLP
8 Southwoods Boulevard, Suite 300
Albany, NY 12211
By:  Frank J. Ciano, Esq.

Attorneys for Defendants

ZACHARY W. CARTER
CORPORATION COUNSEL OF THE CITY OF NEW YORK
100 Church Street, 5th Floor
New York, NY  10007
By:  Michelle Goldberg-Cahn, Esq.
     Sheryl Neufeld, Esq.
     Benjamin Hillengas, Esq.

**Sweet, D.J.**

Plaintiffs New York State Rifle & Pistol Association (the "Association"), Romolo Colantone ("Colantone"), Efrain Alvarez ("Alvarez") and Jose Anthony Irizarry ("Irizarry") (collectively, "Plaintiffs") have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiffs seek a declaration that restrictions on a Premises Residence license issued by Defendant the City of New York (the "City") through Defendant the New York City Police Department License Division (the "License Division") (collectively the "Defendants") are unconstitutional. Defendants have cross moved for summary judgment pursuant to Rule 56, seeking dismissal of Plaintiffs' complaint. Upon the facts and conclusions of law set forth below, the Defendants' cross motion is granted, and the complaint is dismissed.

These motions present the sensitive issue of gun control in our largest city, an issue critical to the public safety and the protection of significant constitutional rights. Handguns are unfortunately not exclusively used for the legitimate purposes of law enforcement, civilian self-

1

**JA173**

protection, or for sport.  Handguns in this and other large cities are also the instruments with which violent crimes are perpetuated, and whose improper use has led to numerous accidental deaths in public places.  Legislators and members of the executive branch at municipal, state, and federal levels of government have grappled with these problems, and promulgated and enforced laws in the hopes of reducing the deleterious effects of handguns while protecting citizens' constitutionally-protected rights to bear arms.  One such law is Title 38, Chapter Five, Section 23 of Rules of the City of New York ("RCNY").

Plaintiffs seek to partially invalidate 38 RCNY § 5-23, which limits transport of a handgun through the following provision: "To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, in a locked container, the ammunition to be carried separately." Plaintiffs contend that the decisions of the Supreme Court in District of Columbia v. Heller, 554 U.S. 570 (2008), and McDonald v. City of Chicago, Ill., 561 U.S. 742 (2010), render unconstitutional 38 RCNY § 5-23's limitations on transport, specifically, the prohibition against transporting a handgun to

2

**JA174**

a second residence outside the City, for target price, or for competitive shooting outside the City.

**Prior Proceedings**

Plaintiffs filed an initial complaint on March 29, 2013 and filed the operative amended complaint on May 1, 2013. On May 7, 2013, Plaintiffs filed a motion for a preliminary injunction, which was stayed by this Court on September 20, 2013 pending the Court of Appeals' decision in <u>Osterweil v. Bartlett</u>, 706 F.3d 139, 140 (2d Cir.), <u>certified question accepted</u>, 20 N.Y.3d 1058 (N.Y. 2013) and <u>certified question answered</u>, 21 N.Y.3d 580 (N.Y. 2013). <u>See generally</u>, <u>New York State Rifle & Pistol Ass'n v. City of New York</u>, 13 CIV. 2115, 2013 WL 5313438 (S.D.N.Y. Sept. 20, 2013). Plaintiffs renewed their motion for a preliminary injunction in February 2014, and the parties filed cross motions for summary judgment on June 6, 2014 and July 16, 2014. The instant motions were heard and marked fully submitted on October 8, 2014.

**Facts**

The facts have been set forth in Plaintiffs' Local Rule 56.1 Statement of Uncontested Facts, Defendants' Statement

3

**JA175**

of Undisputed Material Facts pursuant to Local Rule 56.1,
Plaintiffs' Local Rule 56.1 Statement in Response to the
Defendants' Rule 56.1 Statement, and Defendants' Responses and
Objections to Plaintiffs' Statement pursuant to Local Rule 56.1.
These facts are not in dispute except as noted below.

New York State law prohibits an individual from
possessing a pistol or revolver without a license.  N.Y. Penal
Law §§ 265.01, 265.20(a)(3).  Violation of this statute is a
Class A Misdemeanor punishable by up to one year in prison, a
$1,000 fine, or both.  N.Y. Penal Law §§ 265.01, 60.01(3),
70.15.  The State of New York specifies certain classes of gun
licenses under Penal Law § 400.00(2).

Defendant, the City of New York, is a domestic
municipal corporation organized and existing under the laws of
the State of New York.  See New York City Charter § 1.  The
License Division reviews applications for Premises Residence
firearms licenses and issues licenses following an investigation
of the applicant.  See Lunetta Dec., ¶¶ 1, 15-27; Penal Law §§
400.00, 265.00(10).

The different firearms licenses and permits issued by
the License Division, along with a description of the license

4

**JA176**

type are codified in 38 RCNY 5-23 (types of handgun licenses) and 38 RCNY 1-02 (rifle, shotgun, and longarm permits). One of the licenses available for New York City residents to obtain is a Premises License—Residence, which allows an individual to keep a handgun in his or her home. 38 RCNY §§ 5-01, 5-23.

Premises Residence handgun licensees are restricted to possessing the licensed weapon at the specific home address designated on the license. See 38 RCNY § 5-01(a). Premises Residence licensees are also authorized to transport the licensed handgun directly to and from an authorized small arms range/shooting club, secured and unloaded in a locked container. See 38 RCNY §§ 5-01(a); 5-22(a)(14). Title 38 was amended in May 2001 to read as follows:

> (a) Premises License-Residence or Business. This is a restricted handgun license, issued for the protection of a business or residence premises.
>
> (1) The handguns listed on this license may not be removed from the address specified on the license except as otherwise provided in this chapter.
>
> (2) The possession of the handgun for protection is restricted to the inside of the premises which address is specified on the license.

5

**JA177**

>    (3) To maintain proficiency in the use of the
>        handgun, the licensee may transport
>        her/his handgun(s) directly to and from
>        an authorized small arms range/shooting
>        club, unloaded, and in a locked
>        container, the ammunition to be carried
>        separately.
>
>    (4) A licensee may transport his/her
>        handgun(s) directly to and from an
>        authorized area designated by the New
>        York State Fish and Wildlife Law and in
>        compliance with all pertinent hunting
>        regulations, unloaded, in a locked
>        container, the ammunition to be carried
>        separately, after the licensee has
>        requested and received a "Police
>        Department – City of New York Hunting
>        Authorization" Amendment attached to
>        her/his license.

38 RCNY § 5-23.


        Pursuant to New York State Penal Law § 400.00(1),

"[n]o license shall be issued or renewed pursuant to this

section except by the licensing officer, and then only after

investigation and finding that all statements in a proper

application for a license are true."  New York's Penal Law

details the duties of the licensing officer which include, inter

alia, determining whether the applicant meets the eligibility

requirements set forth under Penal Law § 400.00(1); inspecting

mental hygiene records for previous or present mental illness;

investigating the truthfulness of the statements in the

application; and having the applicant's fingerprints forwarded

6

**JA178**

for review against the records of the New York State Division of Criminal Justice Services and the FBI to ascertain any previous criminal record.  See Penal Law §§ 400.00(1), 400.00(4).  After an investigation, the licensing officer may not approve the application if, inter alia, "good cause exists for the denial of the license."  Penal Law § 400.00(1)(g).

There are currently over 40,000 active licenses that have been issued by the License Division for the possession of handguns in New York City; and over 20,000 active permits for the possession of rifles and shotguns.  The License Division currently processes an average of 3,200 new applications and over 9,000 renewal applications each year for the issuance and renewal of the various types of handgun licenses issued by the License Division.  In addition, the License Division processes an average of 850 applications for rifle and shotgun permits and 5,000 renewal applications per year.  The License Division currently has 79 employees.  It is divided into several different sections and units, and is overseen by a five member Executive Staff, that includes a director, deputy inspector (serving as commanding officer), a captain (serving as executive officer), and a lieutenant and sergeant (serving as Integrity Control Officer and Assistant).  The License Division has an

Incident Section that investigates on average 600 incidents pertaining to handgun licenses per year.  The License Division receives reports from the New York State Division of Criminal Justice System regarding all arrests made within the State of New York for which an arrestee is fingerprinted.  No formal report is forwarded to the License Division for summonses and other arrests, and for incidents for which a detainee is not fingerprinted.  The NYPD Department Manual includes a procedure for NYPD personnel to investigate incidents involving holders of handgun licenses and rifle/shotgun permits to the License Division Incident Section.

Under current New York State Penal Law, there is no "target license" class permitting the transport of an unloaded registered firearm to and from an authorized shooting range or club for regular target shooting purposes.  This class was eliminated in 2001 due to repeated incidents of permit holders not complying with the limitations on the target license.

The NYPD established a procedure for individuals or organizations to apply to the NYPD for special designation to operate a small arms range in New York City.  The application process includes submission of an application for approval as a

8

Small Arms Range in New York City.  The applicant for a license

for approval as a Small Arms Range must provide a name and

address for the applicant, location for the proposed range,

information about whether the proposed range is outdoor or

indoors, and if indoors, where in the building it would be

located, information about any clubs or organizations the range

is associated with, the types of weapons to be used at the

range, and other information.  The License Division conducts a

background check on applicants for approval as Small Arms

Ranges, including consulting with the New York City Department

of Buildings for a review of the zoning, property, and land use

designation for the proposed site.  Approval letters for

authorized Small Arms Ranges include requirements for the

appropriate sound absorbent materials, fireproofing, and

specifics on how targets and fire booths must be set up to

ensure public safety, along with other rules.

There are currently eight NYPD-approved Small Arms

Ranges in New York City, exclusive of police or military ranges.

Defendants assert that seven of the eight ranges are open to any

person possessing a valid NYPD license or permit for a firearm,

but Plaintiffs dispute that those ranges are truly open as they

require users to become members in order to gain access.  These

9

ranges include the Westside Rifle & Pistol Range on West 20th Street in Manhattan, the Woodhaven Rifle & Pistol Range in Queens, the Bay Ridge Road and Gun Club, Inc. in Brooklyn, Colonial Rifle & Pistol Club in Staten Island, the Richmond Borough Gun Club in Staten Island, and the Olinville Arms in the Bronx. Defendants further assert that the Richmond Borough Gun Club holds regular shooting competitions and other events. Plaintiffs also dispute this assertion in part noting that the Richmond Borough Gun Club requires membership, thus shooting competitions and other events are available to those members only. The parties agree that there is at least one NYPD-approved shooting range open to the public within City borders, though Plaintiffs emphasize that only that one exists. Defendants assert that some of the ranges require patrons to pay a fee for use of their range while Plaintiffs contend that all of the ranges charge a fee for use.

Colantone, Alvarez, and Irizarry are all holders of Premises Residence Licenses issued by New York City and subject to the restrictions of 38 RCNY § 5-23. They each assert that they previously regularly traveled outside of New York City and New York State to attend shooting competitions in order to maintain proficiency in handgun use. The Defendants dispute the

10

**JA182**

contention that Colantone's, Alvarez's, and Irizarry's affidavits support these assertions.

On May 8, 2012, to confirm that their licenses allowed them to participate in a shooting competition held in New Jersey, Colantone and Alvarez wrote separately to Deputy Inspector Andrew Lunetta of the License Division to inquire about the scope of 38 RCNY § 5-23's restrictions.  Colantone Aff., ¶ 7, Ex. A; Alvarez Aff., ¶ 7, Ex. A.  The Defendants dispute the characterization of Colantone's and Alvarez's letters.  In letters dated May 15, 2012, Deputy Inspector Lunetta advised Colantone and Alvarez that:

> The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner.  Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence License Holders are those located in New York City.
> Premises license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of City of New York designated by the New York State Fish and Wildlife Law for the purpose of hunting: no areas outside of New York State are permissible for this purpose.
> These rules do not apply to New York City issued long gun permits.  Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried

11

**JA183**

separately.

Colantone Aff., Ex B; Alvarez Aff., Ex B.


Colantone's family has owned land in the Catskill region of New York for the past thirty-two years.  He built a second family home eight years ago in Hancock, New York. Colantone's Hancock house is located in a remote area and its location presents a threat to the safety of Colantone and his family when they stay at the house.  Colantone and his family visit the land and second home several times each year.  As a result of Deputy Inspector Lunetta's letter, Colantone has refrained from taking his handgun licensed in New York City to his house in Hancock, New York.


Alvarez and Irizarry have each been advised by out-of-state ranges that they were not permitted to engage in target practice or participate in shooting competitions at those ranges because of New York City's enforcement of 38 RCNY § 5-23. Consequently, Colantone, Alvarez, and Irizarry all assert that they have refrained from engaging in target practice or participating in shooting competitions outside New York City as a result of 38 RCNY § 5-23.  Defendants dispute the evidence submitted supports this assertion.

12

**JA184**

**Applicable Standards**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249).

A fact is "material" only if it will affect the outcome of the suit under applicable law, and such facts "properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Disputes over irrelevant facts will not preclude summary judgment. Id. The goal is to "isolate and

13

**JA185**

dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "[I]t ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the non-movant's claim . . . . [T]he nonmoving party must [then] come forward with admissible evidence sufficient to raise a genuine issue of fact for trial . . . ." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted); see also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (same). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

The general purpose of a preliminary injunction is to avoid irreparable injury to the movant and to preserve the court's power to render a meaningful decision after a trial on the merits. See WarnerVision Entm't Inc. v. Empire of Carolina, Inc., 101 F.3d 259, 261 (2d Cir. 1996); see also 11A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ., § 2947 (3d ed.). A party seeking a preliminary injunction typically must establish: (1) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance

14

**JA186**

of the hardships tipping decidedly in favor of the moving party;
(2) irreparable harm; and (3) that issuance of the injunction
would be in the public interest.  See Oneida Nation of N.Y. v.
Cuomo, 645 F.3d 154, 164 (2d Cir. 2011) (internal quotations and
citations omitted); Red Earth LLC v. United States, 657 F.3d
138, 143 (2d Cir. 2011).  Where "the moving party seeks to stay
governmental action taken in the public interest pursuant to a
statutory or regulatory scheme," as is the case here, a
preliminary injunction may only be granted if the moving party
meets the more rigorous likelihood of success on the merits of
its claim standard.  Plaza Health Labs., Inc. v. Perales, 878
F.2d 577, 580 (2d Cir. 1989).


The Second Circuit has held that "[v]iolations of
First Amendment rights are commonly considered irreparable
injuries for the purposes of a preliminary injunction."  Bery v.
City of New York, 97 F.3d 689, 693 (2d Cir. 1996), cert. denied,
520 U.S. 1251 (1997).  "In exercising their sound discretion,
courts of equity should pay particular regard for the public
consequences in employing the extraordinary remedy of
injunction."  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312
(1982); see also Million Youth March. Inc. v. Safir, 155 F.3d
124, 125-26 (2d Cir. 1998) (modifying injunction because

15

District Court failed to consider government's interest in public health, safety and convenience in balance against First Amendment rights).  In considering an injunction, the Court must balance the interests and possible injuries to both parties.  See Yakus v. U.S., 321 U.S. 414, 440 (1944).  Whether the relief sought is in the public interest is a factor to be considered.  Standard & Poor's Corp. v. Commodity Exchange, Inc., 683 F.2d 704, 711 (2d Cir. 1982).

In concluding that the District of Columbia's outright ban on the possession of handguns in the home violated the Second Amendment, the Supreme Court in Heller expressly provided that certain regulations are "presumptively valid," including prohibitions on possession by certain categories of people, such as felons or the mentally ill, prohibitions on possession in certain places (such as schools and other sensitive places), and the imposition of "conditions and qualifications on commercial sale."  554 U.S. at 626-27.  In McDonald v. City of Chicago, 561 U.S. 742, 787 (2010), the Court affirmed these presumptively lawful prohibitions.  These "presumptively valid" regulations, presume a licensing scheme.  Indeed, in McDonald, the Supreme Court emphasized that the Second Amendment "limits, but by no means eliminates," governmental discretion to regulate activity

16

falling within the scope of the right and that incorporation "does not imperil every law regulating firearms." 561 U.S. 742, 904.

As the Court of Appeals for the Second Circuit noted in Kachalsky v. County of Westchester, the Supreme Court in Heller stressed that while prohibiting handguns in the home is not permissible, "a variety of other regulatory options remain available, including categorical bans on firearm possession in certain public locations." 701 F.3d at 81, 94 (2d Cir. 2012) (citing Heller, 554 U.S. at 626-27 & n.26). Since Heller, several other courts have upheld registration and licensing requirements, along with certain prohibitions on firearms. See, e.g., Kachalsky, 701 F.3d 81, 97 (upholding New York State's "proper cause" requirement for license to carry a concealed firearm); United States v. DeCastro, 682 F.3d 160, 168 (2d Cir. 2012) (upholding statute prohibiting transportation into New York of firearm purchased in another state); Heller v. District of Columbia ("Heller II"), 670 F.3d 1244, 1261-64 (D.C. Cir. 2011) (upholding prohibition on possession of ammunition magazines in excess of certain capacity); United States v. Masciandaro, 638 F.3d 458, 473 (4th Cir. 2011), cert. denied, 132 S. Ct. 756 (2011) (upholding statute prohibiting carrying or

17

possession of weapon in motor vehicle in national park); <u>United States. V. Marzzarella</u>, 614 F.3d 85 (3d Cir. 2010), <u>cert. denied</u>, 131 S, Ct. 958 (2011) (upholding prohibition on possession of firearms with obliterated serial numbers because the law did not "severely limit the possession of firearms"); <u>United States v. Skoien</u>, 614 F.3d 638, 645 (7th Cir.2010) (en banc), <u>cert. denied</u>, 131 S. Ct. 1674 (2011) (upholding law prohibiting the possession of firearms by any person convicted of misdemeanor domestic violence crime).

A majority of courts, including the Second Circuit and courts in this Circuit, apply intermediate scrutiny to general challenges under the Second Amendment, even when reviewing statutes or laws that may restrict the possession of handguns in the home. <u>See, e.g.</u>, <u>Kwong v. Bloomberg</u>, 723 F.3d 160, 167–68 (2d Cir. 2013), <u>cert. denied</u>, <u>sub nom.</u>, <u>Kwong v. DeBlasio</u>, 134 S.Ct. 2696 (June 2, 2014) (applying intermediate scrutiny to fee governing New York City premises residence licenses); <u>Kachalsky</u>, 701 F.3d at 96 (applying intermediate scrutiny to New York's "proper cause" requirement for carry licenses); <u>United States v. Reese</u>, 627 F.3d 792, 800 (10th Cir. 2010), <u>cert. denied</u>, 131 S.Ct. 2476 (2011) (applying intermediate scrutiny to statute prohibiting gun possession – even in the home – for those who

18

have an outstanding order of protection as opposed to a criminal conviction); United States v. Skoien, 614 F.3d 638, 641-42 (7th Cir. 2010) (en banc) (applying intermediate scrutiny to law prohibiting the possession of firearms by any person convicted of misdemeanor domestic violence crime); United States v. Chester, 628 F.3d 673, 677 (4th Cir. 2010) (same); United States v. Marzzarella, 614 F.3d 85, 97 (3d Cir. 2010) (applying intermediate scrutiny to law limiting possession of firearms with obliterated serial number because the law did not "severely limit the possession of firearms"); United States. v. Oppedisano, 09-CR-0305, 2010 WL 4961663, at *2 (E.D.N.Y. Nov. 30, 2010) (applying intermediate scrutiny to challenge of federal statute prohibiting persons convicted of certain crimes from possessing firearms); New York State Rifle & Pistol Ass'n v. Cuomo, 990 F.Supp.2d 349, 366 (W.D.N.Y. Dec. 31, 2013) (applying intermediate scrutiny to New York SAFE Act and concluding that a mild form of intermediate scrutiny applies to restrictions posing modest burdens on the right to possess firearms).  As the Second Circuit recently noted, intermediate scrutiny is satisfied if the regulation "is substantially related to the achievement of an important governmental interest." Kachalsky, 701 F.3d at 96-97.

Plaintiffs contend that strict scrutiny is appropriate.  However, strict scrutiny does not apply here because the challenged rule does not impinge on the "core" of the Second Amendment, as it does not establish or purport to establish a prohibition or ban on the exercise of Plaintiffs' Second Amendment right to possess a handgun in the home for self-defense.  Cf. Heller (ban on guns in the home, weapons must be completely disassembled); Ezell, 651 F.3d 684, 708 (applying more rigorous scrutiny, "if not quite 'strict scrutiny,'" to Chicago's absolute prohibition on firing ranges in the context of law requiring training at a firing range to qualify for a premises gun license).

Plaintiffs contend that the challenged rule "categorically prohibits engaging in target practice or participating in shooting competitions," "effectively prohibits . . . the right to keep and bear arms," and otherwise makes it "impossible" to engage in target practice.  Pl. Mem. at 11-12, 14.  However, the rule does not prevent or prohibit anyone from engaging in target practice or shooting competitions, rather it prohibits transporting the handgun to a range not approved by the City.  The laws struck down in Heller and McDonald, by contrast, were laws that prohibited or banned firearms rather

20

**JA192**

than regulating them.  In Ezell the ordinance was impossible to
satisfy within City limits; a law requiring practice at a firing
range could not be reconciled with a law prohibiting any such
firing ranges from operating within city limits.  651 F.3d at
708 ("The City's firing-range ban is not merely regulatory; it
prohibits the 'law-abiding, responsible citizens' of Chicago
from engaging in target practice in the controlled environment
of a firing range").

     Here, there is no ban, prohibition or otherwise, on
firing ranges in New York City.  Although Plaintiffs state that
only one such range exists that is open to the public, there is
nothing in the challenged rule that prohibits public gun ranges
from operating in New York City.  Though Defendants strenuously
dispute Plaintiffs' claim that only one range open to the public
operates in New York City (Lunetta Dec., ¶¶ 39-40), the fact
that few, or even no, such ranges exist is not tantamount to a
ban; the number of firing ranges open to the public is a
function of the market, and not the challenged rule.  See, e.g.,
U.S. Smokeless Tobacco Mfg. Co, v. City of New York, 708 F.3d
428, 436 n.3 (2d Cir. 2013) ("Decision by owners of tobacco bars
not to sell the product is a commercial choice that does not
result from the ordinance itself.").

Unlike the ban on firing ranges which made compliance with the statute impossible in Ezell, the requirement that Premises Residence licensees only transport their firearms to approved ranges (located in New York City) is a regulatory measure which does not prevent people from going to a range to engage in target shooting practice or competitive shooting.  The rule "merely regulate[s] rather than restrict[s]" the right to possess a firearm in the home and is a minimal, or at most, modest burden on the right.  Ezell, 651 F.3d at 708-09. Premises Residence licensees are authorized to possess an assembled firearm in their home and to transport the weapon to a City-authorized firing range to engage in target practice in a controlled environment.  See 38 RCNY §§ 5-01(a), 5-22(a)(14). As such, strict scrutiny is not applied, and intermediate level scrutiny is appropriate in analyzing Second Amendment challenges - even those that touch upon the claimed "core" Second Amendment right to self-defense in the home.  See also, Kwong, 763 F.3d at 167-68.

**38 RCNY § 5-23(a)(3) Does Not Violate the Second Amendment**

The Plaintiffs' contention that the challenged rule deprives them of the ability to protect themselves in their

second homes outside of New York City does not present a Second
Amendment problem.   The Premises Residence license is only
issued to persons with residences in New York City, and it is
limited only to the specific premise for which it is issued.
See N.Y. Penal Law § 400.00(6); 38 RCNY §§ 5-01(a), 5-02(9), 5-
23(a)(1)-(2).   There is nothing in the Penal Law or RCNY
preventing such persons from obtaining an appropriate license to
possess or utilize a firearm, in the jurisdiction of their
second home.   Following this Court's stay opinion, the New York
Court of Appeals concluded that an applicant who owns a part-
time residence in New York, but is permanently domiciled
elsewhere is eligible for a New York handgun license under Penal
Law § 400.00(3)(a) where the applicant is a resident.   Osterweil
v. Bartlett, 21 N.Y.3d 580, 584 (N.Y. Ct. App. 2013).   Thus, the
Penal Law simply requires one to be a resident, not a
domiciliary, for purposes of eligibility of a firearms license.

According to Plaintiffs, Premises Residence license
statute violates the Second Amendment's right to bear arms in
two ways: (1) prohibiting transportation of the licensee's
handgun from the authorized residence in the City to another
out-of-City residence; and (2) barring transportation of the
licensee's handgun to neighboring municipalities or states to

23

participate in shooting competitions or for use in target
ranges.  Pls.' Mem. in Supp't 7.  However, these regulations are
reasonable and result from the substantial government interest
in public safety.

Plaintiffs argue that Defendants' reliance on
Osterweil does not alleviate the Second Amendment concern
because, in their view, it is an impermissible burden to have to
have separate firearms for each residence.  Pl. Mem. at 9-10.
However, nothing in the Second Amendment requires municipalities
or states to allow citizens to transport their firearms if they
are owned under a restricted license.  This Court has already
stated that if Plaintiffs are permitted to obtain a firearms
license both in New York City as well as other locations in the
State of New York where they may have other residences, then
"the cogency of Plaintiffs' second home argument suffers
considerably as their complaint could be met with a rejoinder to
simply acquire a handgun license from the county in which the
second home is located and keep a gun in that home for use when
it is being used as a residence."  New York State Rifle, 2013 WL
5313438, at *2.  The Premises Residence license is specific to
the New York City residence and the firearms listed on the
license must be connected to the license.  Those requirements do

24

not generate a constitutional issue.  A gun owner may apply for a different type of firearm license permitting transportation of a firearm throughout New York State should he or she qualify. See, e.g., 38 RCNY § 5-01.

Intermediate scrutiny requires that the government interest be important and that the fit between the regulation and the government's interest be reasonable.  "To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective," Clark v. Jeter, 486 U.S. 456, 461 (1988).  Our Circuit has found that "the fit between the challenged regulation need only be substantial, 'not perfect.'"  Kachalsky, 701 F.3d at 97 (quoting Marzzarella, 614 F.3d at 97).

The Circuit has held that "New York has substantial, indeed compelling, governmental interests in public safety and crime prevention."  Kachalsky, 701 F.3d at 97 (citing Schenck v. Pro-Choice Network, 519 U.S. 357, 376 (1997); Schall v. Martin, 467 U.S. 253, 264 (1984); Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 300 (1981); and Kuck v. Danaher, 600 F.3d 159, 166 (2d Cir. 2010)).  The City's interest here in limiting the permissible transport of dangerous firearms

25

outside of the home is vital.  Lunetta Dec., ¶¶ 2-7.  Indeed,
courts have found that "outside the home, firearms safety
interests often outweigh individual interests in self-defense."
Masciandaro, 638 F.3d at 470.  The Second Circuit in Kachalsky
noted that because of the "dangers posted to public safety,"
there "is a longstanding tradition of states regulating firearm
possession and use," 701 F.3d at 94-94 (collecting statutes from
Founding era), and that, "while the Second Amendment's core
concerns are strongest inside hearth and home, states have long
recognized a countervailing and competing set of concerns with
regard to handgun ownership and use in public."  Id. at 96.

     The restrictions on the transport of firearms for
practice or competition applicable to Premises Residence
licensees set forth in 38 RCNY § 5-23(a)(3) are substantially
related to the City's substantial interest in public safety and
crime prevention.  It is well-established that firearms in the
public present a greater public danger than firearms inside
one's home.  See Kachalsky, 701 F.3d at 94-99.  Permitting
Premises Residence licensees to travel with their firearms to
only approved ranges, or for regulated and approved hunting,
ensures that licensees are not travelling in the public with
their firearms to any place of their choosing.  If holders of

26

Premises Residence licenses believe that they may carry their firearms anywhere in New York State or across state lines, past experience indicates that many licensees will transport firearms in their vehicles, thus eviscerating the restrictions on Premises Residence licenses. The License Division's experience with the now-eliminated target license,[1] and the abuse by target licensees who were caught travelling with their firearms when not on their way to or from an authorized range, supports this interest. Here, by ensuring that Premises Residence licensees only travel with their firearms to authorized ranges in New York City, the City is able to ensure that licensees are only travelling to limited areas with their restricted licenses while affording them the opportunity to maintain their proficiency in the use of their firearms.

Further, the License Division is better able to investigate the credibility of licensees' assertions regarding the purpose for transporting their handguns when the incident

---

[1] There is no provision in the N.Y. Penal Law (§ 400.00(4)) for a target license, whereas the Penal Law expressly provides for a license to possess a firearm in the home. See Penal Law § 400.00(2)(a). The New York State Supreme Court, Appellate Division, First Department upheld the elimination of the target license. De Illy v. Kelly, 6 A.D.3d 217 (App. Div. 2004). There, the Court concluded that although a Premises Residence license is "limited to that licensee's dwelling, we do not view respondent's expansion of that right, to allow transport of such arms to authorized target ranges and hunting areas for proficiency enhancement, as supplanting the statue but merely supplementing it." 6 A.D.3d at 218.

27

was reported by an NYPD officer, as well as the ability to better police and monitor whether the person was, in fact travelling directly to or from an authorized range.  Practice at an authorized range that has been investigated by the NYPD and is required to adhere to certain safety requirements ensures the public safety.  The NYPD has the ability to monitor approved ranges, reviews the books of such ranges, and is aware of any incidents that occur at such ranges.

Plaintiffs have noted the exemption in 38 RCNY § 5-23(a)(4) authorizing Premises Residence licensees to transport their handgun directly to or from an area authorized by N.Y. State Fish & Wildlife Law.  Pl. Mem. at 16.  However, a Premises Residence licensee with a hunting authorization is not permitted to unregulated travel around New York State with their firearms. Pursuant to Article 11, Title 7 of the New York State Environmental Conservation Law ("ECL"), authorization to hunt may be exercised only at the times, places, manner and to the extent as permitted by specific licenses and stamps to hunt specific species.  See, e.g., ECL §§ 11-0701, 11-0703.  The state law further sets out limitations on the use and possession of firearms.  See, e.g., ECL §§ 11-0931, 11-1321.  Hunting authorizations only allow the transport of a firearm for hunting

28

**JA200**

that is authorized pursuant to the New York State Fish and

Wildlife Law.  As such, any licensee observed by law enforcement

in New York State to be travelling with a firearm stating that

they were on a direct route to hunting would be required to

produce a copy of the New York City Premises Residence license,

a City hunting authorization, a valid hunting license for the

specific season and area at issue, and have knowledge of many

other rules specific to the game and area (such as weapon types,

ammunition restrictions, time and day restrictions, and game

gender and size restrictions).  An officer anywhere in the state

may ask a person with a weapon about game tags, or many other

specific questions to evaluate the credibility of the assertion

that the person was en route to an area covered by the Fish and

Wildlife Law.  In short, it would be a far more elaborate lie to

justify the illegal transport of firearms under the N.Y. State

Fish & Wildlife Law, than by falsely stating that the gun holder

is en route to a range or shooting competition located anywhere

in the state.


## 38 RCNY § 5-23(a)(3) Does Not Violate Plaintiffs' Right to Travel

Plaintiffs contend that the restriction on Premises

29

**JA201**

Residence licenses impedes their fundamental right to travel.
See Pl. Mem. 20-32.  It is well-settled that the "constitutional
right to travel from one State to another . . . occupies a
position fundamental to the concept of our Federal Union."
Shapiro v. Thompson, 394 U.S. 618 (1969).  This constitutional
protection for interstate travel has been extended, in the
Second Circuit, to intrastate travel as well.  King v. New
Rochelle Municipal Housing Auth., 442 F.2d 646, 648 (2d Cir.)
(1971), cert. denied, 404 U.S. 863 (1971).

Here, however, Plaintiffs point to nothing that
requires New York City to allow its licensees to transport their
restricted firearms to other states, or to other locales within
New York State.  Limiting restricted Premises Residence
licensees to keep their firearms in their residences, or to and
from an authorized small arms range, does not impede on
Plaintiffs' right to travel.  Courts have found that "'travelers
do not have a constitutional right to the most convenient form
of travel [, and] minor restrictions on travel do not amount to
the denial of a fundamental right.'"  Town of Southhold v. Town
of East Hampton, 477 F.3d 38, 53 (2d Cir. 2 2007) (citations
omitted).  "When a statute or regulation has merely . . . an
effect on travel, it does not raise an issue of constitutional

30

**JA202**

dimension.  A statute implicates the constitutional right to
travel when it actually deters such travel, or when the
impedance of travel is its primary objective, or when it uses
any classification which serves to penalize the exercise of that
right."  Five Borough Bicycle Club v. City of New York, 483 F.
Supp.2d 351, 362-63 (S.D.N.Y. 2007) (quoting Soto-Lopez v. New
York City Civil Serv. Comm'n, 755 F.2d 266, 278 (2d Cir. 1985))
(internal quotations omitted).  Nothing in the rules pertaining
to Premises Residence licenses impedes, deters, or punishes
travel.  While the rule admittedly does not allow for
unrestricted travel with a firearm outside New York City, the
rule does not prevent Premises Residence licensees from
travelling outside of New York City - it simply prevents them
from travelling with their firearm.  In Town of Southhold, the
Second Circuit held that "[t]he fact that the [law] may make
travel less direct for some passengers does not meet the
threshold required for strict scrutiny review . . . something
more than a negligible or minimal impact on the right to travel
is required before strict scrutiny is applied."  477 F.3d at 54
(internal quotations and citations omitted).  The Second Circuit
has recognized that minor restrictions on travel "simply do not
amount to the denial of a fundamental right."  Selevan v. New
York Thruway Auth., 71 F.3d 253, 257-58 (2d Cir. 2013); see also

31

**JA203**

Joseph v. Hyman, 659 F.3d 215, 279 (2d Cir. 2011).  Moreover, in Turley v. New York City Police Dep't, the plaintiff street musician challenged certain City regulations as violating the First Amendment, and raised a right to travel allegation arguing that he cannot afford to buy multiple permits for each day of performing for different locations.  93 CIV. 8748, 1996 WL 93726, at *1 (S.D.N.Y. Mar. 5, 1996), aff'd in part. rev'd in part, after trial on other issues, 167 F.3d 757 (2d Cir. 1999).  In Turley, the Court found that "the right to travel is not violated by police power regulations that impose reasonable restrictions on the use of streets and sidewalks."  Id. at *7; see also Lutz v. City of New York, 899 F.2d 255, 270 (3d Cir. 1990) (finding state ordinance outlawing "cruising" was a reasonable time, place and manner restriction on right to local travel).

Here, like the regulations discussed above requiring sound permits for speech in Turley and Lutz, or the requirement to pay tolls to commute to work in Selevan, the requirement that Premises Residence licensees not travel unrestricted with their firearms throughout or outside of the state does not infringe on any fundamental right.  Such restrictions are reasonable in time, place, and manner restrictions on the possession and use

32

**JA204**

of a firearm.

Plaintiffs' argument that 38 RCNY § 5-23(a)(3) conflicts with the Firearms Owners' Protection Act ("FOPA"), 18 U.S.C. § 9264, is similarly unconvincing.  See Pl. Mem. at 27. FOPA protects individuals from prosecution for illegally transporting firearms when the origin or destination of the transfer is a place where the individual "may lawfully possess and carry such firearm."  18 U.S.C. § 926A.  In Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010), the Second Circuit held that FOPA does not create a presumption that gun owners may travel interstate with their guns to places that do not permit unlicensed firearm possession.  Similarly, in a state court challenge invoking FOPA, the Appellate Division held that "[w]here the licensee is not permitted by the terms of the license to lawfully carry the firearm at the time he embarks on a trip to another state, FOPA is inapplicable."  Beach v. Kelly, 52 A.D.3d 436, 437 (App. Div. 2008).  Here, Premises Residence licensees are not authorized to carry firearms under the terms of their restricted license, other than in the limited exception of travel to a New York City authorized range.  Thus, Plaintiffs do not meet the lawful carry requirement set forth in 18 U.S.C. § 926A.

33

## 38 RCNY § 5-23(a)(3) Does Not Violate The First Amendment

The First Amendment protects the right of individuals to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for redress of grievances, and the exercise of religion.  Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984); Sanitation Recycling Indus. v. City of New York, 107 F.3d 985, 996-97 (2d Cir. 1997).  However, government regulation or conduct that makes it "more difficult for individuals to exercise their freedom of association . . . does not, without more, result in a First Amendment violation."  Fiehting Finest. Inc. v. Bratton, 95 F.3d 224, 228 (1996).  Rather, "[t]o be cognizable, the interference with associational rights must be direct and substantial or significant."  Id. quoting Lyng v. UAW, 485 U.S. 360, 366-67 n. 5 (1988) (internal quotations omitted).  Moreover, the existence of a "chilling effect even in the area of First Amendment rights" does not support a freedom of expressive association claim.  Id. quoting Younger v. Harris, 401 U.S. 37, 57 (1971) (internal quotations omitted).

Plaintiffs have not alleged how engaging in target practice and competitive shooting outside of New York City

34

**JA206**

constitutes expressive matter or free association protected by the First Amendment. In order for an activity to fall within the ambit of the First Amendment's protection of expressive association, "a group must engage in some form of expression, whether it be public or private." Boy Scouts of Am. v. Dale, 530 U.S. 640, 648 (2000). Plaintiffs have asserted that practicing at ranges and participating in shooting competitions is protected expressive or associational conduct. See Pl. Mem. at 17-19. However, asserting that gathering to practice and use what Plaintiffs deem to be their constitutional rights protected under the Second Amendment does not serve to create a right to expression and association protected under the First Amendment. Courts have viewed with care the implication of First Amendment rights in the context of the Second Amendment. See, e.g., Kachalsky, 701 F.3d at 91-92 ("it would be . . . imprudent to assume that the principles and doctrines developed in connection with the First Amendment apply equally to the Second [Amendment]."); Plastino v. Koster, 12-CV-1316, 2013 WL 1769088, at *3 (E.D. Mo. Apr. 24, 2013), appeal dismissed (Oct. 11, 2013); Woolard v. Sheridan, 863 F. Supp.2d 462, 472 (D. Md. 2012), rev'd on other grounds, sub. nom, Woolard v. Gallagher, 712 F.3d 865, 883 fn. 11 (4th Cir. Mar. 21, 2013); Piszczatoski v. Filko, 840 F. Supp.2d 813, 832 (D.N.J. 2012) (declining to

35

apply the First Amendment's prior restraint doctrine to a Second
Amendment case).

The requirement that Premises Residence licensees only
utilize New York City authorized small arms ranges for purposes
of practicing with their restricted firearm does not directly
and substantially interfere with the rights of Plaintiffs to
exercise their right to freely associate.  The requirement
simply affects the place and manner in which Plaintiffs may
engage in target shooting - an activity that is elective.
Although Plaintiffs argue that 38 RCNY § 5-23(a)(3) sets forth a
requirement that Premises Residence licensees practice "[t]o
maintain proficiency in the use of the handgun," nothing in that
rule is compulsory, requiring licensees to practice at a range,
it simply permits it.  Nothing prevents Plaintiffs from
associating with other handgun licensees at ranges in New York
City, or any shooting competitions held therein.  The City's
rule does not prevent any of the Plaintiffs from obtaining a
license to utilize, possess, or carry a handgun in the states or
localities where Plaintiffs seek to engage in target practice or
shooting competitions outside of New York City.

36

**38 RCNY § 5-23(a)(3) Does Not Violate The Dormant Commerce
Clause**

Article I, Section 8, Clause 3 of the United States
Constitution provides that Congress shall have power "[t]o
regulate Commerce with foreign Nations, and among several
States, and with the Indian Tribes."  In addition to this
express grant of power to Congress, the Commerce Clause contains
a negative implication – commonly referred to as the dormant
Commerce Clause – "which limits the power of local governments
to enact laws affecting interstate commerce."  Town of Southold,
477 F.3d at 47.  The chief concern of the dormant Commerce
Clause is economic protectionism – "regulatory measures designed
to benefit in-state economic interests by burdening out-of-state
competitors."  McBurney v. Young, 133 S. Ct. 1709, 1719 (Apr.
20, 2013) (internal quotations omitted).[2]  However, this
restriction is not absolute, and "the States retain authority
under their general police powers to regulate matters of
legitimate local concern, even though interstate commerce may be

---

[2] The U.S. Supreme Court recently expressed some misgivings about the Dormant
Commerce Clause framework, but nevertheless continued to apply it.  McBurney,
133 S. Ct. at 1719-1720; see also id. at 1721 (J. Thomas, concurrence)  ("I
continue to adhere to my view that 'the negative Commerce Clause has no basis
in the text of the Constitution, makes little sense, and has proved virtually
unworkable in application, and, consequently, cannot serve as a basis for
striking down a state statute.'") (quoting Hillside Dairy Inc. v. Lyons, 539
U.S. 59, 68 (2003)).

37

**JA209**

affected." <u>Maine v. Taylor</u>, 477 U.S. 131, 138 (1986); <u>see also</u> <u>McBurney</u>, 133 S. Ct. at 1719-20.  Plaintiffs have contended that 38 RCNY § 5-23(a)(3) is unconstitutional because it: (1) amounts to extraterritorial control of commerce; and (2) imposes a burden on interstate commerce outweighed by local benefits.

A law may violate the dormant Commerce Clause in three ways.  First, if a statute clearly discriminates against interstate commerce on its face or in effect, it is virtually invalid per se.  <u>See Town of Southold</u>, 477 F.3d at 47.  Such a law can withstand judicial scrutiny only if the purpose is unrelated to economic protectionism.  <u>See McBurney</u>, 133 S. Ct. at 1719-20; <u>Town of Southhold</u>, 477 F.3d at 47; <u>Selevan</u>, 584 F.3d at 94-95.  Second, when a law regulates evenhandedly to effectuate a legitimate public interest, and burdens interstate commerce only incidentally, the balancing test articulated in <u>Pike v. Bruce Church. Inc.</u>, 397 U.S. 137, 142 (1970) is applied. Under <u>Pike</u>, the statute will be upheld unless the burden on interstate Commerce:

> is clearly excessive in relation to the putative local
> benefits.  If a legitimate local purpose is found,
> then the question becomes one of degree.  And the
> extent of the burden that will be tolerated will of
> course depend on the nature of the local interest
> involved, and on whether it could be promoted as well

38

with a lesser impact on interstate activities.

Id.  A party challenging a law on either of these two grounds
must first demonstrate that the statute has a "disparate impact"
on interstate commerce.  See Town of Southold, 477 F.3d at 47.
In other words, the statute "must impose a burden on interstate
commerce that is qualitatively or quantitatively different from
that imposed on intrastate commerce."  National Elec. Mfrs.'
Ass'n v. Sorrell, 272 F.3d 104, 109 (2d Cir. 2001).  Third, a
statute is invalid per se "if it has the practical effect of
'extraterritorial' control of commerce occurring entirely
outside the boundaries of the state in question."  Freedom
Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004).[3]


        The extraterritorial aspect of dormant Commerce Clause
jurisprudence emerged from Supreme Court price-regulation cases.
See Freedom Holdings, 357 F.3d at 219.  The last in this line of
cases, Healy v. The Beer Inst., 491 U.S. 324 (1989), sets forth
the following three principles to guide an extraterritoriality
analysis:

---

[3] The extraterritorial reach of a statute is sometimes analyzed as a type of
"disparate impact" under the Pike balancing test rather than as an
independent basis for invalidity.  See Freedom Holdings, 357 F.3d at 216,
fn.11.  The outcome here is the same under both approaches.

First, the Commerce Clause precludes the application
of a state statute that takes place wholly outside of
the State's borders, whether or not the commerce has
effects within the State, and specifically, a State
may not adopt legislation that has the practical
effect of establishing a scale of prices for use in
other states.  Second, a statute that directly
controls commerce occurring wholly outside the
boundaries of a State exceeds the inherent limits of
the enacting State's authority and is invalid
regardless of whether the statute's extraterritorial
reach was intended by the legislature . . . .  Third,
the practical effect of the statute must be evaluated
not only by considering the consequences of the
statute itself, but also by considering how the
challenged statute may interact with the legitimate
regulatory regimes of other States and what effect
would arise if not one, but many or every, State
adopted similar legislation.

Id. at 336 (internal quotations and citations omitted).


38 RCNY § 5-23(a) differs markedly from the laws at

issue in the price regulation cases.  First, the rule does not

"establish a scale of prices" or affect interstate pricing

decisions.  Second, the Connecticut price affirmation statute

struck down in Healy constituted economic protectionism.  Here,

the rule regarding where restricted licensees may carry their

firearms has nothing to do with economic interests.  Third, the

rule does not directly control commercial activity occurring

wholly outside New York State.  The price regulation statutes

made specific reference to the conduct of out-of-state actors.

Unlike those regulations, the challenged rule does not mention

40

**JA212**

other states for any purpose.  See <u>National Elec. Mfrs.' Ass'n</u> <u>v. Sorrell</u>, 272 F.3d at 110.  The rule simply provides that restricted licensees may only deviate from the restriction of using their firearm in their home in the limited circumstance of carrying their firearms to authorized ranges, in order to protect the public safety.[4]  The rule does not prohibit persons from purchasing firearms or attending shooting competitions.  Like the statute challenged in <u>Brown & Williamson Tobacco Com.</u> <u>v. Pataki</u>, 320 F.3d 200, 214 (2d Cir. 2003), the rule "neither impedes nor obstructs the flow of" firearms in interstate commerce, it regulates the manner in which licensees transport their firearms.

At most, Plaintiffs have demonstrated that 38 RCNY § 5-23(a)(3) is a municipal regulation that has minor, indirect ripple effects outside the City's boundaries.  However, such effects are without constitutional significance where, as here, the challenged law does not directly control commerce and out-of-state entities "remain free to conduct commerce on their own terms. . . ."  <u>Freedom Holdings</u>, 357 F.3d at 221; <u>see also</u>

---

[4] Plaintiffs' entire extraterritoriality argument rests upon the notion that Premises Residence licensees are "lawfully licensed to <u>carry</u> firearms," which, according to the terms of such license, they are not.  Pl. Mem. at 22 (emphasis added).  Indeed, City residents bearing carry license can certainly travel with their license outside of the state if they are lawfully permitted to carry and possess a license in the other jurisdiction.

41

Instructional Sys., Inc. v. Computer Curriculum Corp., 35 F.3d
813, 825 (3d Cir. 1994) ("[I]t is inevitable that a state's law
. . . will have extraterritorial effects.  The Supreme Court has
never suggested that the dormant Commerce Clause requires
Balkanization, with each state's law stopping at the border.").

          In the alternative, Plaintiffs argue that the rule
imposes a burden on commerce incommensurate with the local
benefits, or the Pike balancing test.  See Pl. Mem., at 23.
However, before the balancing test is applied, Plaintiffs must
make a threshold showing of disparate impact.  Town of Southold
v. Town of East Hampton, 477 F.3d 38, 50 (2d Cir. 2007).
Plaintiffs have not met their burden of establishing that the
rule has an impact on commerce.  Further, any purportedly unique
burden on commerce is outweighed by the strength of the local
benefits, and thus, the Pike balancing test is satisfied.
Because the important local interests at stake outweigh any
negligible burden on interstate commerce, and nondiscriminatory
alternatives are not available, 38 RCNY § 5-23(a)(3) is not
unconstitutional under the Pike balancing test.

          Plaintiffs contend that the rule's effect on commerce
outweighs its local benefits.  However, the rule is narrowly

drawn and reasonably constructed to accomplish the City's stated public safety goals.  Local laws promoting public safety have a presumption of validity.  See Bibb v. Navajo Freight Lines, 359 U.S. 520, 524 (1959).  Courts have also found that "[c]onsiderable deference must be given to the legislature's policy determinations as to the local benefits of the challenged legislation."  Eric M. Berman, P.C. v. City of New York, 895 F. Supp. 2d 453, 492 (E.D.N.Y. 2012).  These factors militate against partial invalidation of 38 RCNY § 5-23.

## Conclusion

Based on the conclusions set forth above, the Plaintiffs' motions for summary judgment and preliminary injunction are denied and the Defendants' cross motions for summary judgment dismissing the Amended Complaint is granted.

It is so ordered.

**New York, NY**
**February    , 2015**

————————————————————
**ROBERT W. SWEET**
**U.S.D.J.**

43

public safety goals.  Local laws promoting public safety have a presumption of validity.  See Bibb v. Navajo Freight Lines, 359 U.S. 520, 524 (1959).  Courts have also found that "[c]onsiderable deference must be given to the legislature's policy determinations as to the local benefits of the challenged legislation." Eric M. Berman, P.C. v. City of New York, 895 F. Supp. 2d 453, 492 (E.D.N.Y. 2012).  These factors militate against partial invalidation of 38 RCNY § 5-23.

**Conclusion**

Based on the conclusions set forth above, the Plaintiffs' motions for summary judgment and preliminary injunction are denied and the Defendants' cross motions for summary judgment dismissing the Amended Complaint is granted.

It is so ordered.

**New York, NY**
**February 4, 2015**

ROBERT W. SWEET
U.S.D.J.

43

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NEW YORK STATE RIFLE AND PISTOL ASSOCIATION, INC., et al., | ) ) ) | |
| Plaintiffs, | ) | Case No.: 1:13-cv-2115-RWS |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF NEW YORK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## NOTICE OF APPEAL

**NOTICE IS HEREBY GIVEN** that The New York State Rifle and Pistol Association, Romolo Colantone, Efrain Alvarez, and Jose Anthony Irizarry, plaintiffs in the above-captioned case, hereby appeal to the United States Court of Appeals for the Second Circuit from the District Court Memorandum & Opinion, entered February 5, 2015 (ECF Doc. No. 56), and Judgment, entered February 9, 2015 (ECF Doc. No.: 57), that denied Plaintiffs' Motions for Summary Judgment and Preliminary Injunction and granted Defendant The City of New York's and The New York City Police Department – License Division's Cross Motions for Summary Judgment Dismissing the Amended Complaint.

Dated: February 3, 2015                Respectfully Submitted,

GOLDBERG SEGALLA, LLP

By: /s/  Brian T. Stapleton
Brian T. Stapleton, Esq. (BS 5640)
11 Martine Avenue, 7th Floor
White Plains, New York 10606-1934
(914) 798-5400
bstapleton@goldbergsegalla.com
*Counsel For Plaintiffs*

## <u>CERTIFICATION</u>

I hereby certify that on February 3, 2015, a copy of the foregoing Plaintiffs' Notice of

Appeal was filed electronically and served by mail upon anyone unable to accept electronic

filing. Notice of this filing was will be sent by e-mail to the parties described below by operation

of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as

indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's

CM/ECF System.

ZACHARY W. CARTER
Corporation Counsel of the City of New York
By Michelle Goldberg-Cahn, Esq. (MG 4490)
***Attorney for Defendants***
100 Church St., 5th Floor
New York, New York 10007
migoldbe@law.nyc.gov


By: ___/s/___ Matthew S. Lerner_____
Matthew S. Lerner, Esq. (ML 2020)

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 16, 2015, an electronic copy of the foregoing Joint Appendix was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.

s/Paul D. Clement
Paul D. Clement